**Docket No. 24-3367**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

JEFFREY B. SEDLIK, an individual,

*Plaintiff-Appellant,*

v.

KATHERINE VON DRACHENBERG, an individual, AKA Kat Von D,
KAT VON D, INC., a California corporation and
HIGH VOLTAGE TATTOO, INC., a California corporation,

*Defendants-Appellees.*

_____

*Appeal from a Decision of the United States District Court for the Central District of California,
No. 2:21-cv-01102-DSF-MRW · Honorable Dale S. Fischer*

## *AMICUS CURIAE* BRIEF OF THE COPYRIGHT ALLIANCE IN SUPPORT OF APPELLANT

NANCY E. WOLFF, ESQ.
COWAN DEBAETS ABRAHAMS
& SHEPPARD LLP
60 Broad Street, 30th Floor
New York, New York 10004
(212) 974-7474 Telephone
nwolff@cdas.com

*Counsel for Amicus Curiae
The Copyright Alliance*

 

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* the Copyright Alliance states that it does not have a parent corporation, and that no publicly held corporation owns 10% or more of *amicus*' stock.

Dated: October 22, 2024

**COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP**

By: <u>/s/ Nancy E. Wolff</u>
Nancy E. Wolff
60 Broad Street, 30th Floor
New York, NY 10004
Telephone: (212) 974-7474
Facsimile: (212) 974-8474

*Counsel for Amicus Curiae*
*The Copyright Alliance*

# TABLE OF CONTENTS

**Page(s)**

CORPORATE DISCLOSURE STATEMENT ......................................................C-1

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES ................................................................................. ii

INTEREST OF *AMICUS CURIAE*............................................................................1

SUMMARY OF ARGUMENT ................................................................................3

ARGUMENT .............................................................................................................5

I.    THE IMPORTANCE TO ARTISTIC CREATORS
      OF ROBUSTLY APPLYING RULE 56 AND
      GRANTING SUMMARY JUDGMENT IN
      ONE-SIDED COPYRIGHT CASES...............................................................5

II.   THE DISTRICT COUT SHOULD HAVE GRANTED
      SEDLIK SUMMARY JUDGMENT ON TWO
      ISSUES THAT WERE OVERWHELMINGLY
      ONE-SIDED IN HIS FAVOR..........................................................................9

      A.    The Evidence Overwhelmingly Established
            Sedlik's Entitlement To Summary Judgment
            On Substantial Similarity ......................................................................9

      B.    The District Court's Own Rulings And The
            Evidence Established Sedlik's Entitlement
            To Summary Judgment On Commercial Use .....................................15

CONCLUSION.......................................................................................................19

CERTIFICATE OF COMPLIANCE ......................................................................21

CERTIFICATE OF SERVICE ...............................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                        **Page(s)**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    143 S. Ct. 1258 (2023) ............................................................16

*Bell v. Wilmott Storage Servs., LLC*,
    12 F.4th 1065 (9th Cir. 2021) ...............................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................6

*Children's Health Def. v. Meta Platforms, Inc.*,
    112 F.4th 742 (9th Cir. 2024) .................................................17

*DZ Rsrv. v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024) .................................................17

*Express, LLC v. Fetish Grp., Inc.*,
    424 F. Supp. 2d 1211 (C.D. Cal. 2006) ..................................15

*Fodor v. Los Angeles Unified Sch. Dist.*,
    2014 WL 12235424 (C.D. Cal. June 3, 2014) ...................... 9-10

*GoPro, Inc. v. 360Heros, Inc.*,
    291 F. Supp. 3d 1060 (N.D. Cal. 2017)............................. 10-11

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985) ................................................................18

*Leadsinger, Inc. v. BMG Music Pub.*,
    512 F.3d 522 (9th Cir. 2008) .............................................. 16-17

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*,
    2018 WL 5310831 (N.D. Cal. June 29, 2018)...................... 11

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ...................................................14

*Matlow v. Solomon*,
   2005 WL 309976 (D. Or. Feb. 7, 2005) ............................................................11

*McGucken v. Pub Ocean Ltd.*,
   42 F.4th 1149 (9th Cir. 2022) ......................................................... 6-7

*Mosher v. Saalfeld*,
   589 F.2d 438 (9th Cir. 1978) .............................................................7

*Northland Family Plan. Clinic v. Ctr. for Bio-Ethical Reform*,
   868 F. Supp. 2d 962 (N.D. Cal. 2012)...............................................19

*Quirk v. Sony Pictures Ent. Inc.*,
   2013 WL 1345075 (N.D. Cal. Apr. 2, 2013)......................................10

*Severin Montres Ltd. v. Yidah Watch Co.*,
   997 F. Supp. 1262 (C.D. Cal. 1997) ........................................... 14-15

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
   715 F.2d 1327 (9th Cir. 1983) ...........................................................15

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
   2015 WL 12733470 (C.D. Cal. Feb. 17, 2015) .......................... 13-14

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ........................................... 10-11, 13, 15

*Weissmann v. Freeman*,
   868 F.2d 1313 (2d. Cir 1989) .................................................... 17-18

*Worldwide Church of God v. Phil. Church of God, Inc.*,
   227 F.3d 1110 (9th Cir. 2000) .....................................................17, 19

## Constitutional Provisions, Statutes, and Rules

17 U.S.C. § 107 ................................................................................. 15-16

Fed. R. Civ. P. 56(a)..............................................................................7

**Legislative History**

H.R. Rep. No. 116-252 (2019)....................................................................5

**Other Sources**

Brief for Appellant, *Sedlik v. Von Drachenberg*,
    No. 24-3367 (9th Cir. Oct. 15, 2024)......................................... passim

Christopher Robertson & Michael Shammas, *The Jury Trial Reinvented*,
    9 Tex. A&M L. Rev. 109 (2021) ...........................................................8

*Federal Judicial Caseload Statistics 2023*, U.S. Courts,
    https://www.uscourts.gov/statistics-reports/federal-
    judicial-caseload-statistics-2023 ..........................................................6

*Get Your Business Started on Instagram*,
    https://business.instagram.com/getting-started..................................18

Letter from Lamar Smith, Chairman, H. Comm. on the Judiciary, to Maria
    A. Pallante, Register of Copyrights and Director, U.S. Copyright Office
    (Oct. 11, 2011), *included in* U.S. Copyright Office, *Copyright Small
    Claims: A Report of the Register of Copyrights (2013)*,
    https://www.copyright.gov/docs/smallclaims/usco-
    smallcopyrightclaims.pdf ............................................................... 5-6

Maia Spoto, *Kat Von D Wins Copyright Case Over Miles Davis Photo*,
    Bloomberg Law (Jan. 26, 2024),
    https://news.bloomberglaw.com/litigation/kat-von-d-tattoo-of-miles-
    davis-isnt-infringement-jury-rules ................................................... 8-9

Richard Gabriel et. al., *Reforms to Revive the Dying Jury Trial*,
    98 The Advoc. (Texas) 18 (2022).........................................................8

*Turn Connections into Customers on Any Budget*,
    https://www.facebook.com/business ..................................................18

*Understanding The Cost Of Copyright Infringement Lawsuits*, IPISC
(June 28, 2024),
https://ipisc.com/understanding-the-cost-of-copyright-infringement-lawsuits/#:~:text=The%20average%20cost%2C%20per%20side,
Potential%20Damages%20and%20Penalties ......................................................5

Valerie P. Hans & Theodore Eisenberg, *The Predictability of Juries*,
60 DePaul L. Rev. 375 (2011) ...........................................................................8

*What is the Average Cost of a Copyright Infringement Lawsuit?*,
Copyrighted (June 14, 2024),
https://www.copyrighted.com/blog/average-cost-of-copyright-infringement-lawsuit#:~:text=Copyright%20infringement%20lawsuits%
20can%20be%20complex%20legal%20endeavours%20that%20come,to
%20several%20hundred%20thousand%20dollars ..............................................5

Pursuant to Federal Rule of Appellate Procedure 29(a) and Federal Rules of Appellate Procedure Ninth Circuit Rule 29, *amicus curiae* the Copyright Alliance respectfully submits this brief in support of Plaintiff-Appellant Jeffrey B. Sedlik ("Sedlik" or "Appellant"). This brief is submitted with consent of all parties.[1]

## INTEREST OF *AMICUS CURIAE*

The Copyright Alliance is dedicated to promoting and protecting the ability of creative professionals to earn a living from their creativity. It is a nonprofit, nonpartisan 501(c)(4) public interest and educational organization and represents the copyright interests of over two million individual creators and over 15,000 industry leading organizations across the entire spectrum of creative industries, including authors, songwriters, musical composers and recording artists, graphic and visual artists, photographers, journalists, filmmakers, and software developers. The Copyright Alliance's membership encompasses these individual creators and innovators, creative union workers, and small businesses, as well as the organizations and corporations that support and invest in them. The livelihoods of this diverse array of creators and companies depend on the exclusive rights

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no counsel for any party authored this brief in whole or in part, and no party or counsel for any party made a monetary contribution intended to fund the preparation or submission of this brief. Only *amicus curiae* or their counsel made such a monetary contribution that was intended to fund preparing or submitting this brief. Pursuant to Fed. R. App. P. 29(a) and Ninth Circuit Rule 29-3, all parties consented to the filing of this amicus curiae brief. Sedlik serves as a volunteer Director at Large at the Copyright Alliance.

guaranteed by copyright law.

The Copyright Alliance's members rely heavily on copyright law to protect and commercialize their works, which in turn incentivizes the creation of new works and promotes the progress of the arts. The Copyright Alliance and its members have a strong interest in ensuring the proper application of copyright law, which includes ensuring that copyright cases are decided correctly. When cases, such as this one, are incorrectly or unclearly decided, creators, copyright owners, and the public are unable to understand and appreciate the scope of what acts are and are not permissible under copyright law and the expense of enforcing one's rights needlessly escalates.

The Copyright Alliance submits this amicus brief in support of Appellant to address the broad-reaching legal and practical consequences of the District Court's incorrect refusal to grant Appellant summary judgment on several issues that were appropriate for resolution as a matter of law, including: (1) substantial similarity, when the parties' works are virtually identical to one another and Defendant-Appellee Katharine Von Drachenberg ("Von D") admitted that the infringing tattoo (the "Tattoo") was "100% exactly the same as" and "match[ed] up exactly" with Sedlik's photograph of Miles Davis at issue (the "Photograph"); and (2) the first fair use factor, when the District Court held that Von D's Tattoo was not transformative and that using it to market Von D's business on social media was clearly a

2

commercial use.

It is a district court's responsibility under Federal Rule 56 to serve as gatekeeper at summary judgment and resolve one-sided cases or at least narrow the issues for trial. Copyright Alliance members—artistic creators who can serve as either plaintiffs or defendants in copyright litigation—are harmed when district courts fail to rigorously rule on dispositive motions, since unwarranted or overly expansive trials can cause significant expense and as occurred here, lead to plainly incorrect jury verdicts.

## SUMMARY OF ARGUMENT

The Copyright Alliance believes the District Court erred in not granting Sedlik summary judgment on substantial similarity and Appellees'[2] fair use defense.[3] It is the Copyright Alliance's goal here to emphasize how problematic and damaging it is for artistic creators when trial courts fail to robustly rule at summary judgment on issues that are far too one-sided to see trial.

Regardless of whether creators enter a courtroom to enforce their rights or defend against claimed wrongdoing, shouldering the expense of federal litigation is an overwhelming burden. It requires creators, often already struggling to make ends

---

[2] "Appellees" here are Von D and High Voltage Tattoo, Inc. ("HVT").

[3] The Copyright Alliance writes only to address several issues that are particularly notable and important to its members and does not take a position on other issues in the appeal.

meet, to expend significant financial resources as they devote time away from their livelihoods. Summary judgment, then, fulfills a crucial role. By streamlining—or even resolving cases before trial—it allows parties to avoid trying obvious, unreasonable, or frivolous claims. Without it, they are forced to undertake the most notoriously expensive and unpredictable phase of a case—trial—or cut their losses and settle. The latter may appear less prejudicial, particularly in the face of turning over the interpretation of nuanced copyright doctrines to an unversed, insufficiently instructed, and potentially star-struck jury, but it is unjust for creators to feel forced to settle as opposed to heading to trial when Rule 56 exists to obviate this false dichotomy when appropriate.

In light of these principles, in the present matter, it was clear error for the District Court to fail to undertake a complete and thorough analysis of the substantial similarity between the Photograph and the Tattoo at summary judgment, as well as defer the question of whether Appellees' social media posts featuring the Tattoo were commercial in nature as part of their fair use defense to the jury. Not only did this failure result in a confused jury that was unversed in the nuances of copyright law deciding issues determinable as a matter of law, it squandered Sedlik's, Appellees', and the Court's resources and led to the wrong outcome. The dispute over the strikingly similar Photograph and Tattoo—which Von D openly admitted to copying and posting about on social media in order to bolster Appellees'

commercial ventures—should have been decided at summary judgment.

## ARGUMENT

**I. THE IMPORTANCE TO ARTISTIC CREATORS OF ROBUSTLY APPLYING RULE 56 AND GRANTING SUMMARY JUDGMENT IN ONE-SIDED COPYRIGHT CASES**

Granting summary judgment is particularly important in copyright cases, which often feature artists and creators (on either side of the "v") who typically cannot afford the prohibitive costs of federal litigation. Additionally, copyright law's nuanced and sometimes complicated doctrines can confuse jurors, risking anomalous trial outcomes that contravene the underlying copyright principles, not to mention creators' interests, at issue.

Facing the costs of copyright litigation, which number tends to be in the tens to hundreds of thousands of dollars, and, if litigating to trial, possibly into the millions,[4] creators should be able to rely upon efficacious, robust summary judgment

---

[4] *See, e.g.*, *Understanding The Cost Of Copyright Infringement Lawsuits*, IPISC (June 28, 2024), https://ipisc.com/understanding-the-cost-of-copyright-infringement-lawsuits/#:~:text=The%20average%20cost%2C%20per%20side, Potential%20Damages%20and%20Penalties; *What is the Average Cost of a Copyright Infringement Lawsuit?*, Copyrighted (June 14, 2024), https://www.copyrighted.com/blog/average-cost-of-copyright-infringement-lawsuit#:~:text=Copyright%20infringement%20lawsuits%20can%20be%20compl ex%20legal%20endeavours%20that%20come,to%20several%20hundred%20thous and%20dollars. For years, scholars, lawmakers, and creators have lamented the "increasingly prohibitive" costs of litigating copyright claims in federal court. *See, e.g.*, H.R. Rep. No. 116-252 at 18 (2019); Letter from Lamar Smith, Chairman, H. Comm. on the Judiciary, to Maria A. Pallante, Register of Copyrights and Director,

as intended by the Federal Rules. Allowing the District Court's procedure and resulting outcome to stand will force creators already straining to protect their rights in court to litigate claims that are frivolous, obvious, and not truly disputed. This cannot be.

Summary judgment is not "a disfavored procedural shortcut, but rather [i]s an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is in fact the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.*; *see McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1158 (9th Cir. 2022) ("Although

---

U.S. Copyright Office (Oct. 11, 2011), *included in* U.S. Copyright Office, *Copyright Small Claims: A Report of the Register of Copyrights (2013)*, https://www.copyright.gov/docs/smallclaims/usco-smallcopyrightclaims.pdf (describing a 2006 intellectual property hearing before the U.S. House of Representatives where witnesses testified that "the costs of obtaining counsel and maintaining and action in federal court effectively preclude[] many authors whose works were clearly infringed from being able to vindicate their rights and deter continuing violations"). Although recent Congressional efforts have sought to remedy this issue via, for example, creation of the voluntary alternative forum, the Copyright Claims Board ("CCB"), federal litigation remains the only option for creators involved in disputes over $30,000 or where an injunction is the desired result. Moreover, notwithstanding efforts like the CCB, federal litigation involving intellectual property rights has *increased* in recent years, up 10 percent generally, with copyright cases "jump[ing] 25 percent," according to a 2023 report from the Administrative Office of the United States Courts. *See Federal Judicial Caseload Statistics 2023*, U.S. Courts, https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023 (last visited Oct. 22, 2024).

factual questions can arise, the parties in fair use cases often dispute only the legal significance to be drawn from facts. Fair use is thus often resolved at summary judgment, and 'we may reweigh on appeal the inferences to be drawn from the record.'") (cleaned up). As this Court has explained, summary judgment "is intended to eliminate the waste of the time and the resources of litigants and the courts where it is shown there are no material issues of fact." *Mosher v. Saalfeld*, 589 F.2d 438, 442 (9th Cir. 1978). This purpose extends to granting summary judgment on claim elements that are too one-sided to see a courtroom. *See* Fed. R. Civ. P. 56(a) (authorizing summary judgment on any "part of [a] claim or defense").

As noted above, the Copyright Alliance's artistic creator members can be either plaintiffs or defendants in litigation, and the efficacy and reliability of summary judgment is crucial regardless. Creator plaintiffs benefit when courts narrow the issues that must be proven at trial, leading to more streamlined trials that are less expensive and more manageable for the parties and jurors. On the flip side, creator defendants clearly benefit when courts correctly gatekeep to prevent meritless copyright claims and legally untenable theories (such as commonly alleged "idea infringement" claims) to reach trial. Refusing to gatekeep at summary judgment, as the District Court did here, also runs the high risk of denying creator plaintiffs the ability to enforce their copyrights by making it prohibitively expensive to do so.

Summary judgment serves to mitigate against the inequitable outcomes that may result from sending issues easily resolvable by a knowledgeable court to an inherently unpredictable, typically unversed, jury. *See, e.g.*, Richard Gabriel et. al., *Reforms to Revive the Dying Jury Trial*, 98 The Advoc. (Texas) 18, 18 (2022) (noting the "significant drop in jury trials in recent years," owing largely to the "unpredictability of jury trials and their outcomes"); Christopher Robertson & Michael Shammas, *The Jury Trial Reinvented*, 9 Tex. A&M L. Rev. 109, 114 (2021) ("Given the small number of jurors on any panel, their decisions can be fairly criticized as being almost as unpredictable as a lottery."); Valerie P. Hans & Theodore Eisenberg, *The Predictability of Juries*, 60 DePaul L. Rev. 375, 375 (2011) ("The jury is said to be the least predictable of the decision makers in the legal system."). Especially with challenging copyright doctrines, such as substantial similarity, which requires separating the protectible and unprotectible elements of a work, requiring a jury determination may be especially fraught. This is particularly so in the photography context as a photograph's protectable elements—such as lighting, shading, and camera angles—may be less obviously protectable to a jury, but no less so under the law. In the presence of a celebrity, and a jury may also be more likely to succumb to bias than a practiced judge, rushing its deliberations over dry, encumbering legal doctrines, as apparently happened here, where, after its brief three-hour recess, jury members delivered their verdict and proceeded to chat with

and hug Von D in the courtroom after trial. *See* Maia Spoto, *Kat Von D Wins Copyright Case Over Miles Davis Photo*, Bloomberg Law (Jan. 26, 2024), https://news.bloomberglaw.com/litigation/kat-von-d-tattoo-of-miles-davis-isnt-infringement-jury-rules. It is expensive, wasteful, and unpredictable for a court that has been fully briefed about a clearly one-sided issue and may decide it efficiently, to still send it to the jury.

## II. THE DISTRICT COURT SHOULD HAVE GRANTED SEDLIK SUMMARY JUDGMENT ON TWO ISSUES THAT WERE OVERWHELMINGLY ONE-SIDED IN HIS FAVOR.

In light of the importance of a robust summary judgment process as shown above, we believe the District Court here erred in refusing to grant him summary judgment on at least two issues that should never have gone to a jury: substantial similarity and the first fair use factor.

### A. The Evidence Overwhelmingly Established Sedlik's Entitlement To Summary Judgement On Substantial Similarity.

The issue of substantial similarity in this case is completely one-sided, such that Sedlik should have been granted summary judgment. As a threshold issue, since the copying of Sedlik's artistic expression is objectively evident from the face of the two works and corroborated by direct testimony from Von. D., substantial similarity should have been swiftly resolved in Sedlik's favor without the need for a detailed comparative analysis. *See Fodor v. Los Angeles Unified Sch. Dist.*, 2014 WL 12235424, at *9 (C.D. Cal. June 3, 2014) ("Where there is direct evidence of

9

copying, the Ninth Circuit has held that the substantial similarity analysis is 'irrelevant.'" (quoting *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1154 (9th Cir. 2012))); *Quirk v. Sony Pictures Ent. Inc.*, 2013 WL 1345075, at *3 (N.D. Cal. Apr. 2, 2013) (noting that "in cases with direct evidence of copying" plaintiffs need not proffer circumstantial evidence of access or substantial similarity); *cf. Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 984-85 (9th Cir. 2017) (noting that plaintiffs need only prove copying through circumstantial evidence of access and substantial similarity between the works, "[i]f there is no direct evidence of copying").

Illustrating this, courts considering certain types of copyright cases—particularly for photograph infringements—have commonly dispatched with the substantial similarity analysis, where the copied work was identical or overwhelmingly similar to the original. In such cases, the obvious, overwhelming similarities between the works resolve the question of substantial similarity as a matter of course. *See, e.g.*, *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1074 (9th Cir. 2021) (where "the 'degree of copying [a photograph]' was total—the infringing work was an identical copy . . . . [t]here is thus no place for an inquiry as to whether there was de minimis copying. . . . '[i]f such duplication is literal or verbatim, then clearly substantial similarity exists"); *GoPro, Inc. v. 360Heros, Inc.*, 291 F. Supp. 3d 1060, 1072-73 (N.D. Cal. 2017), *on reconsideration*, 2018 WL

574930 (N.D. Cal. Jan. 26, 2018) (refraining from "delv[ing] into [the] complex subjective analysis of the works to assess the[ir] substantial similarity" where defendant had access to plaintiff's images and agreed to having copied the images to produce "identical or, at the very least . . . 'overwhelmingly similar'" images); *Matlow v. Solomon*, 2005 WL 309976, at *1 (D. Or. Feb. 7, 2005) (not discussing substantial similarity where side-by-side comparison of images demonstrated that they were "virtually identical"); *accord Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, 2018 WL 5310831, at *2 (N.D. Cal. June 29, 2018) (refraining from substantial similarity analysis in the face of "'works [images and text lifted from *Star Wars* film and television episode] [that] are so overwhelmingly identical that the possibility of independent creation is precluded'"). Indeed, in such cases, courts regularly instruct that all that is needed is a "side-by-side comparison" of the images to ascertain whether or not they are identical or "overwhelmingly similar." *GoPro, Inc.*, 291 F. Supp. 3d. at 1073. The Ninth Circuit has stressed that this approach, which allows "district courts to grant summary judgment for plaintiffs in copyright cases . . . [w]hen the works are 'so overwhelmingly identical that the possibility of independent creation is precluded,'" plays an important role in upholding Rule 56. *Unicolors, Inc.*, 853 F.3d at 987.

Even if a more involved substantial similarity analysis were necessary here, the only reasonable result would be to grant Sedlik summary judgment. A simple

comparison of the Photograph and Tattoo demonstrates that they are overwhelmingly identical, with any differences attributable to the fact that Von D replicated the Photograph as a tattoo, necessitating certain minor modifications due to the "ink and arm" materials and medium. (Brief for Appellant, *Sedlik v. Von Drachenberg*, No. 24-3367 (9th Cir. Oct. 15, 2024) (Dkt 14.1) ("Sedlik Br.") at 19-20 (citing 2-ER-218).) The Tattoo replicates virtually all of the Photograph's protectable original expression, based on Sedlik's selection, arrangement, and combination of discrete elements, including Davis's pose, posture, positioning, expression, lighting, shading, highlighting, background, wardrobe, makeup, and camera angle. (2-ER-347–349; 2-ER-363–367.) In both the Photograph and the Tattoo, Davis adopts a unique pose, index finger hovered before pursed lips, his remaining fingers splaying outward below his chin, as manually placed by Sedlik; Davis faces the camera, slightly tilting his head, making visible only his right ear, mildly furrowing his brow, a vein prominent above his right eye; he is dressed in dark clothing before a dark background. These expressive elements—deliberate and studied choices by Sedlik to capture his subject—render the Photograph copyrightable. All of these elements are present in the Tattoo because of Von D's aim to directly copy this particular Photograph for these particular, and copyrightable, elements, which she did, and openly admitted she did throughout the case. As the District Court explained, "[t]o ink the Tattoo, Kat Von D first created a

line drawing on tracing paper, the purpose of which was to map out the image so that she could ink the Tattoo by a freehand method and to show [the Tattoo recipient] the size of the tattoo. Kat Von D created the line drawing by placing both the [Photograph] and the tracing paper on a light box, and then tracing the outlines and contours. She then created a stencil using a thermal-fax machine…Kat Von D used the stencil to temporarily transfer the drawing onto [the Tattoo recipient's] skin, after which she began inking the Tattoo." (1-ER-110–111.)

Considering the overwhelming similarities between the Photograph and Tattoo, the District Court should have decided the extrinsic test[5] in Sedlik's favor at summary judgment, particularly given that Ninth Circuit courts routinely do so when facing largely identical works. In such cases, the extrinsic test may be easily dispatched with in a plaintiff's favor, without the need for a jury's duplicative, potentially confused, analysis. *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 2015 WL 12733470, at *7 (C.D. Cal. Feb. 17, 2015), *aff'd*, 853 F.3d 980, 985-86 (9th Cir. 2017) (comparing fabric designs and finding that they featured "nearly identical" arrangements and presentations, absent minor differences attributable to "imperfect

---

[5] Within substantial similarity, "[t]he extrinsic test requires plaintiffs to show overlap of 'concrete elements based on objective criteria,' while the intrinsic test is subjective and asks 'whether the ordinary, reasonable person would find 'the total concept and feel of the works' to be substantially similar.'" *Unicolors, Inc.*, 853 F.3d at 984-85.

copying" or "minor modification"); *Severin Montres Ltd. v. Yidah Watch Co.*, 997 F. Supp. 1262, 1266 (C.D. Cal. 1997), *aff'd*, 165 F.3d 917 (9th Cir. 1998) (deciding extrinsic test at summary judgment by comparing watch with "directly copie[d]" design); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019). Undertaking the extrinsic test merely involves "'compar[ing] the objective similarities of expressive elements in the two works,' distinguishing between the protected and unprotected material," as the District Court itself acknowledged. (1-ER-116.) Yet it ultimately punted on the issue, based on perceived minor differences, that a host of courts within this Circuit, as above, would not have allowed sway. These differences were primarily attributable, in any event, to the limitations of replicating Sedlik's Photograph as a tattoo. Notwithstanding Von D's after-the-fact, self-serving claims of infusing the Tattoo with aspects of her personal artistry, there is no doubt that she both sought to—and did exactly—recreate Sedlik's Photograph, making minor alterations merely where circumscribed by the nature of the tattooing process, such as the limited space on her client's arm. The District Court's failure to offer a robust, thorough analysis of the extrinsic test was thus clear error and should be reconsidered by this Court upon its de novo review, considering the overwhelmingly identical works and mere "minor modifications" present in Von D's Tattoo.

In the face of the works' overwhelming similarities, the District Court should

have also granted summary judgment as to the intrinsic test, which compares the protectable elements of two works to determine whether a reasonable audience would find them substantially similar in "total concept and feel." The Ninth Circuit has affirmed that where two "works are so overwhelmingly identical that the possibility of independent creation is precluded," it is appropriate to resolve both the extrinsic and intrinsic tests at summary judgment. *Unicolors, Inc.*, 853 F.3d at 985; *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983); *Express, LLC v. Fetish Grp., Inc.*, 424 F. Supp. 2d 1211, 1228 (C.D. Cal. 2006); *Severin*, 997 F. Supp. at 1266-67. This is such a case. As in *Unicolors*, here, "the extrinsic similarity is so strong that the works are near duplicates save for superficial differences," such that the District Court should have "conclude[d] that no reasonable jury could find that the works [we]re not substantially similar in their overall concept and feel." *Unicolors, Inc.*, 853 F.3d at 987. Rather than prolonging litigation by sending this analysis to a jury likely confused by the standard, the court—facing virtually identical works bolstered by Appellees' admission that replication was her aim—should have decided the intrinsic test in Sedlik's favor.

### B. The District Court's Own Rulings And The Evidence Established Sedlik's Entitlement To Summary Judgment On Commercial Use.

In its fair use analysis, the District Court erred when it found a triable issue of fact as to the commerciality of the social media posts of the Tattoo, which by their nature, are used to promote and cross-promote Von D's and HVT's business

15

ventures.[6] As a threshold matter, the District Court only needed to consider "whether such use is of a commercial nature or is for nonprofit educational purposes." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1274 (2023) (quoting 17 U.S.C. § 107(1)). In response to this binary question, the District Court should have found Appellees' social media posts of the Tattoo as "commercial in nature" since there is no way they could be considered as having "nonprofit educational purposes."

Here, Von D and HVT "posted the Tattoo about 15 times to their millions of followers on Twitter, Instagram, and Facebook," in order "to engage with [Von D's] fans and followers." (Sedlik Br. at 50 (citing 2-ER-223; 2-ER-229; 3-ER-468–79, 3-ER-481–82, 3-ER-484, 3-ER-510–12).) Not only did Appellees post the Tattoo to their social media pages, but they also posted about their other product lines, including "tattoos, cosmetics, books, footwear, eyewear, and concert tickets" and also "provid[ed] links to their websites" where followers can purchase these goods and services. (*Id*. at 51-52 (citing 3-ER-513–21, 2-ER-224).) Appellees' social media pages serve as their business portfolios and are inherently for the purpose of generating profit. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530–531

---

[6] For purposes of this brief, the Copyright Alliance focuses on analyzing the District Court's oversights regarding the commerciality of the social media posts of the Tattoo; however, the Copyright Alliance agrees with Appellant that the Tattoo itself is also not fair use under the circumstances, as explained in Appellant's brief. (*See* Sedlik Br. at 43-59.)

(9th Cir. 2008) (rejecting defendant's argument that the purpose of using song lyrics in the context of karaoke was for "teaching" and finding the use commercial); *see also Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 770 (9th Cir. 2024) (Collins, J., concurring) (observing Facebook's unprecedented reach to "214 million users in the United States and 2.2 billion worldwide"); *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1242 (9th Cir. 2024) (Forrest, J., dissenting) (noting how Meta's large user base attracts potential advertisers, from Fortune 500 companies to government agencies, small businesses, and individual proprietors).

As the District Court previously explained, "[g]enerating traffic to one's social media page using copyrighted material is 'within the type of profit' contemplated by Worldwide Church." (1-ER-94-106 (the "Reconsideration Order") at ER-105); *Worldwide Church of God v. Phil. Church of God, Inc.*, 227 F.3d 1110, 1117–18 (9th Cir. 2000) (holding that when "weighing whether the purpose was for 'profit,' 'monetary gain is not the sole criterion'" and acknowledging that "profit" includes "gaining recognition among [ones] peers") (cleaned up). And even though Von D "testified that the social media posts were not for the purpose of generating profit or customers for High Voltage Tattoo," the District Court acknowledged the possibility that "Von D 'stood to gain recognition among [her] peers in the profession' and increase the value of her brand," which should not have been left for a jury to decide. (1-ER-105 (citing *Weissmann v. Freeman*, 868 F.2d 1313, 1324

17

(2d. Cir 1989).) The District Court should have followed the Supreme Court's instruction that "[t]he crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price" and ruled that the social media posts were commercial in nature. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985) (cited at Reconsideration Order at *5).

And as a practical matter, HVT maintains a business profile—as opposed to a personal account—on Facebook and Instagram and posted the images of the Tattoo as an example of its services. (Sedlik Br. at 53 (citing 3-ER-477).) Having a business account on Instagram or Facebook is *de facto* for commercial purposes as these account models allow the account holder to, for example, track business analytics, engagement statistics, and sell directly to users, which all directly tie into the business's commercial impression. *See Get Your  Business Started on Instagram*, https://business.instagram.com/getting-started (last visited Oct. 22, 2024); *Turn Connections into Customers on Any Budget*, https://www.facebook.com/business (last visited Oct. 22, 2024). So while every Instagram or Facebook post may not be for the direct goal of generating revenue, the promotion and exhibition of Von D's talents, including the posts of Von D inking the Tattoo, make it more likely that Appellees' social media followers will purchase goods and services advertised and

promoted on Appellees' platforms. *See Worldwide Church*, 227 F.3d at 1117-18;

*Northland Family Plan. Clinic v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962,

979 (N.D. Cal. 2012) (holding that "Defendants appropriated the copyrighted

material to advance their own message, and therefore derived a benefit from their

use" and noting the fact "that users on [defendants'] website could make donations

through a link on the same page where the Videos were posted is further evidence

that the Defendants profited from the Videos").

For these reasons, the District Court erred in sending the commerciality

question to the jury when no reasonable juror could have viewed Appellees' social

media posts featuring the Tattoo as being for nonprofit educational purposes.

## CONCLUSION

There is a crucial need to robustly apply Rule 56 and grant summary judgment

when appropriate in copyright litigation, which will prevent unduly expensive and

unwarranted trials, or at least streamline trial. All artistic creators benefit when

district courts correctly serve as gatekeepers against meritless claims and claim

elements at summary judgment. Importantly, district courts also bear the

responsibility of granting summary judgment when the evidence so clearly entitles a

party—here, Sedlik—to a ruling on the law. Due to these pressing concerns and the

errors fulsomely identified in Appellant's brief, the Copyright Alliance, as *amicus*

*curiae*, respectfully requests that the Court reverse the judgment below and reaffirm

the importance of robust summary judgment.

Dated: October 22, 2024

COWAN DEBAETS ABRAHAMS & SHEPPARD LLP

/s/ Nancy E. Wolff
Nancy E. Wolff
60 Broad Street, 30th Floor
New York, New York 10010
Tel.: (212) 974-7474
Fax: (212) 974-8474
nwolff@cdas.com

*Counsel for Amicus Curiae*
*The Copyright Alliance*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5) and Circuit Rule 32-1 because it contains 4,699 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as counted by Microsoft® Word for Windows (Version 2402), the word processing software used to prepare this brief.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft® Word for Windows (Version 2402) in in a proportionally spaced typeface, 14-point Times New Roman font.

Dated: October 22, 2024

/s/ Nancy E. Wolff
Nancy E. Wolff

*Counsel for Amicus Curiae*
*The Copyright Alliance*

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy E. Wolff, hereby certify that on October 22, 2024, a true and correct complete copy of the foregoing Brief for The Copyright Alliance as *Amicus Curiae* in Support of Plaintiff-Appellant Jeffrey B. Sedlik was timely filed in with the Clerk of Court using the appellate CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

<u>/s/ Nancy E. Wolff</u>
Nancy E. Wolff

*Counsel for Amicus Curiae*
*The Copyright Alliance*