# No. 24-3367

# In the United States Court of Appeals for the Ninth Circuit

———————————————

JEFFREY B. SEDLIK, an individual,

*Plaintiff-Appellant,*

-v-

KATHERINE VON DRACHENBERG, an individual;
AKA Kat Von D; KAT VON D, INC., a California corporation;
HIGH VOLTAGE TATOO, INC., a California corporation,

*Defendants-Appellees.*

———————————————

On Appeal from the U.S. District Court for the Central District of California
D.C. No. 2:21-CV-01102, Hon. Dale S. Fischer

═══════════════════════════════

**BRIEF OF AMICI CURIAE
AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS,
NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION,
AMERICAN PHOTOGRAPHIC ARTISTS,
AMERICAN SOCIETY FOR COLLECTIVE RIGHTS LICENSING,
DIGITAL MEDIA LICENSING ASSOCIATION,
PROFESSIONAL PHOTOGRAPHERS OF AMERICA,
AND NORTH AMERICAN NATURE PHOTOGRAPHY ASSOCIATION
IN SUPPORT OF PLAINTIFF-APPELLANT**

═══════════════════════════════

Mickey H. Osterreicher
    *General Counsel*
Alicia Wagner Calzada
    *Deputy General Counsel*
National Press Photographers Association
120 Hooper St.
Athens, GA 30602
(716) 983-7800
lawyer@nppa.org
advocacy@nppa.org
*Counsel for National Press
Photographers Association*

Thomas B. Maddrey
    *Counsel of Record*
American Society of Media Photographers
Chief Legal Officer
4 Embarcadero Ctr., Ste. 1400
San Francisco, CA 94111
(214) 701-1875
maddrey@asmp.org
*Counsel for American Society
of Media Photographers*

Stephen M. Doniger
Doniger / Burroughs PC
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com
*Counsel for American Photographic Artists*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and local rules 29(4)(A) and 26.1, American Society of Media Photographers, National Press Photographers Association, American Photographic Artists, American Society for Collective Rights Licensing, Digital Media Licensing Association, Professional Photographers of America, and North American Nature Photography Association are non-profit organizations. None of these *amici* have a parent corporation and no publicly held corporation owns 10% or more of any of their respective stock.

Respectfully submitted,

/s/ THOMAS B. MADDREY
Thomas B. Maddrey
*Counsel for Amici Curiae*

Dated: October 22, 2024

i

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT............................................................i

TABLE OF AUTHORITIES .................................................................... iii

INTEREST OF THE AMICI CURIAE  ..................................................1

INTRODUCTION ........................................................................4

ARGUMENT ..............................................................................7

    I.   A Substantial Similarity Examination Must Take into Account the Full Array of Circumstances Surrounding the Infringement, and When the Overwhelming Weight of Evidence Shows Such Similarity, Judgment as a Matter of Law Is Appropriate to Protect the Underlying Works.................7

    II.  The Fourth "Fair Use" Factor Only Requires the Copyright Holder to Show a Potential Licensing Market That Would Be Adversely Impacted If the Type of Use at Issue Were Widespread.................................................9

CONCLUSION ..........................................................................14

CERTIFICATE OF COMPLIANCE....................................................16

CERTIFICATE OF SERVICE .........................................................17

# TABLE OF AUTHORITIES

Page

## CASES

*Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith*,
11 F.4th 26 (2nd Cir. 2021) .................................................8

*Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith*,
143 S. Ct. 1258 (2023) .......................................................8

*BackGrid USA, Inc. v. Haute Living Inc. et al.*,
Case No. 2:21-cv-06543-FWS-SK, 18 (2021) ..................11

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) ...................................... 10, 11

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*,
122 F.3d 1211 (9th Cir. 1997) ...........................................9

*Funky Films, Inc. v. Time Warner Entertainment Co.*,
462 F.3d 1072 (9th Cir. 2006) ...........................................7

*Google LLC v. Oracle Am., Inc.*,
141 S. Ct. 1183 (2021) .....................................................10

*Gray v. Hudson*,
2823 F.4th 87 (9th Cir. 2022) ...........................................7

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023) .............................................7

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) ...........................................11

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) ...........................................10

*McGucken v. Pub Ocean Limited*,
42 F.4th 1149 (9th Cir. 2022) ...................................... 10, 11

*Monge v. Maya Magazines, Inc.*,
688 F.3d 1182 (9th Cir. 2012) .........................................11

*Rentmeester v. Nike*,
883 F.3d 1111 (9th Cir. 2018) ...........................................7

*Sicre De Fontbrune v. Wofsy*,
39 F.4th 1226 (9th Cir. 2022) .........................................11

iii

## TABLE OF AUTHORITIES—Continued

Page

*Twentieth Century-Fox Film Corporation v. McA Inc.*,
   715 F.2d 1330 (9th Cir. 1983) ........................................................................8

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
   853 F.3d 980 (9th Cir. 2017) ...................................................................5, 8

**STATUTES**

17 U.S.C. § 107(4) ...........................................................................................10

**JUDICIAL RULES**

9th Cir. R. 29-2(a) .............................................................................................1

Fed. R. App. P. 29(a)(4)(E) ..............................................................................1

**OTHER AUTHORITIES**

American Society of Media Photographers,
   *Professional Business Practices in Photography* 3 (7th Edition, 2008) ............10



## INTEREST OF THE AMICI CURIAE[1]

**The AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS ("ASMP")** is a 501(c)(6) not-for-profit trade association, established in 1944 to protect and promote the interests of professional photographers who earn their living by making photographs intended for publication, licensing fees, and other compensation derived from the bundle of rights arising under the Copyright Act. With nearly 7,000 members nationwide working in every genre of photography, ASMP is a leading trade organization representing professional photographers' interests.

**The NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION ("NPPA")** is a 501(c)(6) non-profit organization dedicated to the advancement of visual journalism in its creation, editing and distribution of copyrighted works. NPPA's members include television and still photographers, editors, students, and representatives of businesses that serve the visual journalism industry. Since its founding in 1946, NPPA has vigorously promoted and defended the rights of photographers and

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici curiae states that no counsel for a party authored this brief in whole or in part, no party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person other than amici, their members, or counsel, contributed money intended to fund preparation or submission of this brief. Pursuant to Local Rule 29-2(a), all parties consented to the filing of this amici curiae brief.

journalists, including intellectual property rights and freedom of the press in all its forms, especially as it relates to visual journalism.

**AMERICAN PHOTOGRAPHIC ARTISTS ("APA")** is 501(c)(6) not-for-profit organization run by, and for, professional photographers since 1981. Recognized for its broad industry reach, APA works to champion the rights of photographers and image-makers worldwide.

The **AMERICAN SOCIETY FOR COLLECTIVE RIGHTS LICENSING ("ASCRL")** is the largest not-for-profit trade association in the United States for photographers and illustrators with over 50,000 members and is the largest collective management society in the United States for this constituency. ASCRL distributes millions of dollars each year in collective rights revenue to U.S. and foreign authors with works published in the United States. ASCRL is a zealous defender of the primary rights of photographers and illustrators and promotes the collective administration of secondary rights as a means of advancing and preserving the marketplace for its photographer and illustrator members.

**DIGITAL MEDIA LICENSING ASSOCIATION ("DMLA")** founded in 1951 is a not-for-profit trade association that represents the interests of entities in North America and internationally that are engaged in licensing millions of images, illustrations, film clips, and other content on behalf of thousands of individuals to

editorial and commercial users. As part of its mission DMLA has been advocating to protect copyright and to ensure fair licensing standards exist.

**PROFESSIONAL PHOTOGRAPHERS OF AMERICA ("PPA")**, the world's largest photographic trade association, represents over 33,000 photographers and photographic artists from dozens of specialty areas including portrait, wedding, commercial, advertising, and art. The professional photographers represented by the PPA have been the primary caretakers of world events and family histories for the last 150 years and have shared their creative works with the public secure in the knowledge that their rights in those works would be protected.

The **NORTH AMERICAN NATURE PHOTOGRAPHY ASSOCIATION ("NANPA")** is a 501(c)(6) non-profit organization founded in 1994. NANPA promotes responsible nature photography (both stills and video) as an artistic medium for the documentation, celebration, and protection of the natural world. NANPA is a critical advocate for the rights of nature photographers on a wide range of issues, from intellectual property to public land access.

## INTRODUCTION

Amici, and indeed all visual artists the Copyright Act seeks to promote, have a significant interest in ensuring that creative works are fairly protected from unauthorized copying—even by likeable celebrities. Yet in this case a clear copy—one that the Defendants admitted was "100% the same"—went without remedy based on incomprehensible claims that they lacked substantial similarity and/or were fair use. Without relief from this Court, a grave miscarriage of justice in this case will threaten the ability of copyright owners to enforce their rights against other copycat works in countless cases to come.

When an infringer adapts a copyrighted work, and usurps the exclusive right to create derivative works, as the tattoo artist at issue here did to Appellant's copyrighted work, a fundamental right underlying all artists' interactions is destroyed. More importantly, however, actions of the Appellee before, during, and after the creation of the work at issue evince both a plan and design to capitalize on a copyright worked for commercial gain. No person, celebrity or not, has a right to so use another's work without license or permission.

Amici, membership organizations comprised of the very visual creators whose works and livelihoods are impacted by the decisions of this Court, write in this matter for two primary reasons. First, although substantial similarity analysis may be a

4

nuanced affair in some cases, there are other cases where the similarity is so clear, so unambiguous, that "there is simply no genuine dispute as to any material fact" and the Court can and should dispense with the finding of substantial similarity as a matter of law.[2] This is unquestionably one of those cases.

Secondly, it is critical for this Court to understand that widespread infringement of this specific type will significantly affect the markets that photographers and visual creators rely upon to make a living in the creative economy. As organizations whose members rely on these licensing markets each day, amici are uniquely positioned to help the Court understand why, were these types of uses given the judicial "green light", it would result in significant detriment to the artists in these markets. And with that understanding, it becomes clear that the trial court erred in both its fair use analysis and its instructions to the jury.

Among the myriad issues presented in this case, the two addressed in this brief pose the gravest concerns to the scores of artists whose rights stand to be affected by the trial court's rulings. Copyright holders should not have to face what essentially amounts to jury nullification of the Copyright Act when attempting to enforce their rights against popular celebrities using infringed works for their own commercial purposes, and courts should recognize potential markets where they clearly exist.

---

[2] *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 987 (9th Cir. 2017).

Amici therefore respectfully requests this Court to correct the errors of the trial court so that professional artists can create without fear that their ability to enforce their rights will depend on how popular and likeable the infringer may be.



# ARGUMENT

## I. A Substantial Similarity Examination Must Take into Account the Full Array of Circumstances Surrounding the Infringement, and When the Overwhelming Weight of Evidence Shows Such Similarity, Judgment as a Matter of Law Is Appropriate to Protect the Underlying Works.

In any copyright infringement analysis, the claimant must establish both copying and unlawful appropriation.[3] Here, copying was documented at each step by the Appellee and admitted at multiple times and in various channels. As such, unlawful appropriation—which encompasses the concept of "substantial similarity"—was the only real issue for Appellant to establish his prima facie case of infringement.

In this circuit, the Court has established a two-part test consisting of both an extrinsic and intrinsic analysis.[4] The extrinsic test examines the objective similarities of the works at issue, with an eye specifically towards the protectable elements, and is generally appropriate for courts to determine as a matter of law.[5] The intrinsic test evaluates whether the works are similar in "total concept and feel,"[6] and is generally

---

[3] *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 940 (9th Cir. 2023).

[4] *Funky Films, Inc. v. Time Warner Entertainment Co.*, 462 F.3d 1072, 1077 (9th Cir. 2006).

[5] *Gray v. Hudson*, 2823 F.4th 87, 97 (9th Cir. 2022).

[6] *Rentmeester v. Nike,* 883 F.3d 1111, 1118 (9th Cir. 2018).

a matter for the jury. The court not only has the power to determine substantial similarity in its entirety as a matter of law but has that responsibility when the circumstances are so overwhelming as to leave no doubt.[7] As this Court recently held, "[b]ecause of the decisive objective overlap between the works, no reasonable juror could conclude under the intrinsic test that the works are not substantially similar in total concept and feel."[8] When that is the case, as is shown here, judgement as a matter of law is proper.

Ultimately, substantial similarity analysis must conform to common sense and not be treated as some hyper-technical analysis. As the 2nd Circuit held in 2021, and the U.S. Supreme Court recently further opined upon in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, if the original work "remains recognizable" within the new work, "there can be no reasonable debate that the works are substantially similar."[9] This statement remains a truism regardless of whether the copy is a slavish reproduction or a derivative work. Especially with works that begin in one medium and end in another, exactness is not a requirement and cannot excuse unauthorized

---

[7] *Unicolors,* 853 F.3d at 986*; Twentieth Century–Fox*, 715 F.2d at 1330.

[8] *Unicolors*, 853 F.3d at 987.

[9] *Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith*, 11 F.4th 26, 53 (2nd Cir. 2021); *See Also Andy Warhol Found. for the Visual Arts Inc. v. Goldsmith*, 143 S. Ct. 1258 (2023).

copying where "no reasonable trier of fact would see anything but a direct replica of the underlying characters."[10]

In a case like this one, where there is articulable evidence of near exact copying or tracing, a finding of substantial similarity as a matter of law is fully warranted. No reasonable trier of fact could have seen anything other than a direct replica of the photograph and in fact they were presented with testimony admitting and exhibits showing the tracing and copying of Sedlik's work to a near verbatim copy. In denying a finding of substantial similarity as a matter of law, the trial court turned a blind eye to precedent of both this Court and the U.S. Supreme Court and hollowed out the rights of copyright holder to control copies and derivatives of their original works. That ruling should be reversed.

## II. THE FOURTH "FAIR USE" FACTOR ONLY REQUIRES THE COPYRIGHT HOLDER TO SHOW A POTENTIAL LICENSING MARKET THAT WOULD BE ADVERSELY IMPACTED IF THE TYPE OF USE AT ISSUE WERE WIDESPREAD.

The trial court also erroneously determined that there were triable issues of fact as to "fair use" regarding the fourth fair use factor, the effect of the use on the actual and potential markets for the underlying work. For professional photographers and other visual artists, a primary source of revenue is the ability to market and license their works to other individuals, publications, companies, and institutions for a set

---

[10] *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc*., 122 F.3d 1211, 1224 (9th Cir. 1997).

period and with specific usage restrictions. This "rights-managed" licensing model is an industry standard for photographers like Appellant.[11] As such it is important to examine the effect on both the existing, and future, markets for licensing the work at issue.

Fair use is a mixed question of law and fact.[12] Where, as here, the only dispute is over the legal significance to be drawn from the facts, it is appropriate to adjudicate a fair use defense on summary judgment.[13]

With regard to the fourth fair use factor, which considers "the effect of the use upon the potential market for or value of the copyrighted work" (s*ee* 17 U.S.C. § 107(4)), courts must consider "'whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original" and "the market for derivative works."[14] Importantly, an aggrieved copyright holder "need only show that if the challenged

---

[11] *See e.g.*, American Society of Media Photographers, *Professional Business Practices in Photography* 3 (7th Edition, 2008).

[12] *See Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1199.

[13] *See Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 800 (9th Cir. 2003); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 461 (9th Cir. 2020).

[14] *McGucken v. Pub Ocean Limited*, 42 F.4th 1149, 1163 (9th Cir. 2022); *Dr. Seuss*, 983 F.3d at 458.

uses should become widespread, it would adversely affect the potential market for the copyrighted work."[15]

Members of amici organizations spend a large portion of their time finding licensees for their work across the world. These licensing markets are the backbone of professional photography often requiring specific and detailed usage limitations in exchange for the permission to use the images. As this Court has noted, the fourth factor not only examines existing market harm, but also evaluates the harm on markets for derivative works.[16]

In this matter, there was significant and ample evidence presented supporting the assertion that the use by Appellee, if widespread, would have that exact deleterious effect on the markets discussed, a consideration this court has time and time again found to be vital.[17] Through the production of documents and testimony showing past licenses for both the photograph at issue and the types of uses at issue, Appellant

---

[15] *McGucken,* 42 F.4th at 1163 (emphasis added); *Monge*, 688 F.3d at 1182; *Sicre de Fontbrune,* 39 F.4th at 1226; *See also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 531 (9th Cir. 2008); *BackGrid USA*, Case No. 2:21-cv-06543-FWS-SK, Dkt. 47 at 18 ("[W]hen the intended use is for commercial gain, the likelihood of market harm may be presumed."); *Monge,* 688 F.3d at 1176 ("[E]very commercial use of copyrighted material is presumptively an unfair exploitation[.]").

[16] *McGucken,* 42 F.4th at 1163.

[17] *ComicMix,* 983 F.3d at 459.

could do no more to prove that these uses had a clear and harmful effect on the market for his work.[18]

When licensing works, photographers rely on the ability to provide value to their clients by assuring them that the work they are licensing is unique and not widespread. The more unique and more limited in distribution the image is, the higher price the work can command.

With respect to photography, at its core fourth factor analysis reflects the reality that when an image is infringed and spread widely in ways unauthorized and unpermitted by the creator, the photographer is deprived of the ability to control where and when the image is used, and the balance of "specific usage for a specific licensing fee" is upset to the detriment of the copyright holder.

Finally, when a photographer can show repeated licenses over time for a work, as Appellant did in this matter[19], it only strengthens the conclusion that the existing, future, potential, and derivative markets for that image have been materially damaged.

The trial court erroneously focused on the evidence of actual past licenses for the use of photographs by tattoo artists wanting to make copies of those photographs.

---

[18] *See e.g.*, Tr., 164:2-167:6, 167:11-171:3, 292:8-295:16, 297:5-7, Exs. 321, 322, 326, 332; Tr., 175:17-21, 176:6-20, 202:8-13, 305:13-23, ECF 69 at 24.

[19] *Id.*

But the evidence in this case established that there is at least a potential licensing market for the reproduction of original photographs images in the tattoo medium, regardless of whether Defendants ever saw fit to enter such licenses. Just as no court would accept the argument from a website owner that it would never license a photograph that it wanted to reproduce on its website, no court should accept the argument that a tattoo artist would never license a photograph that it wanted to reproduce on its client. There is simply no question of fact here and the trial court erred in holding otherwise.

## CONCLUSION

The Ninth Circuit has an opportunity to right a number of fundamental errors in the evaluation of the photograph in the underlying case. By examining the specific circumstances surrounding the image, it becomes quickly evident that substantial similarity was never, and should never have been, in question and that the District Court can, and should, have resolved this point as a matter of law. Further, Appellant showed through convincing testimony and evidence how the fourth factor of fair use analysis was satisfied tending towards his favor. Most importantly, however, this Court has the ability to provide clarity and guidance to the tens of thousands of members of amici organizations, and the millions of copyright holders who would be negatively affected were these positions to stand.

Respectfully submitted,

/S/ THOMAS B. MADDREY
Thomas B. Maddrey
  *Counsel of Record*
Chief Legal Officer
4 Embarcadero Ctr., Ste. 1400
San Francisco, CA 94111
(214) 701-1875
maddrey@asmp.org

*Counsel for American Society of Media Photographers*

Stephen M. Doniger
Doniger / Burroughs PC
603 Rose Avenue
Venice, CA 90291
(310) 590-1820
stephen@donigerlawfirm.com

*Counsel for American Photographic Artists*


Mickey H. Osterreicher
  *General Counsel*
Alicia Wagner Calzada
  *Deputy General Counsel*
National Press Photographers Association
120 Hooper St.
Athens, GA 30602
(716) 983-7800
lawyer@nppa.org
advocacy@nppa.org

*Counsel for National Press Photographers Association*


Dated: October 22, 2024

15

## CERTIFICATE OF COMPLIANCE

This brief contains 2674 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). This document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

I certify that this brief is an amici brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

Respectfully submitted,

/S/ THOMAS B. MADDREY
Thomas B. Maddrey
*Counsel for Amici Curiae*

Dated: October 22, 2024

## CERTIFICATE OF SERVICE

I certify that on October 22, 2024, I filed the foregoing Amici Brief with the Court's appellate CM/ECF system. Counsel for Plaintiff-Appellant and Counsel for Defendants-Appellees are registered users of the Court's appellate CM/ECF system.

Respectfully submitted,

/s/ THOMAS B. MADDREY
Thomas B. Maddrey
*Counsel for Amici Curiae*

Dated: October 22, 2024

17