# No. 24-3367

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JEFFREY B. SEDLIK, an individual,
Plaintiff-Appellant,
-v-
KATHERINE
VON DRACHENBERG, an individual;
AKA Kat Von D; KAT VON D, INC., a California corporation;
HIGH VOLTAGE TATOO, INC., a California corporation,
Defendants-Appellees.
_____

On Appeal from the U.S. District Court for the Central District of
California
D.C. No. 2:21-CV-01102, Hon. Dale S. Fischer

---

## BRIEF OF *AMICI CURIAE* COPYRIGHT LAW PROFESSORS
## IN SUPPORT OF APPELLEES AND AFFIRMANCE

---

Dated: December 23, 2024

REBECCA TUSHNET

Harvard Law School

1575 Massachusetts Avenue

Cambridge, MA 02138

(703) 593-6759

rtushnet@law.harvard.edu

Counsel for *Amici Curiae*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amici curiae* Law Professors each state that they are individuals.

Dated: December 23, 2024

By: <u>/s/  Rebecca Tushnet</u>
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu
    Counsel for *Amici Curiae*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF INTEREST OF *AMICI CURIAE* ................... 4

SUMMARY OF ARGUMENT ......................................................... 4

ARGUMENT .................................................................................... 6

I.   Recognizable Similarity in Expression is Not, in Itself, Substantial Similarity. 6

II.   The Court Was Correct to Submit Substantial Similarity to the Jury 9

A.   Substantial Similarity Only Considers Similarity Between Copyrightable Elements. 10

B.   Because the Photo Is A Mixture of Factual and Creative Content, Only Limited Aspects of It Are Protectable Under Copyright. 11

C. Courts Have Repeatedly Held That Works Are Not Substantially Similar Despite Copying in Fact, Where the Works Have Different Aesthetics. 13

D. The Jury Reasonably Found that the Accused Works Were Not Substantially Similar to the Photo. 19

E. Sedlik's Arguments to the Contrary Conflate Copying in Fact with Infringement 26

III.   Substantial Similarity Clarifies the Scope of the Plaintiff's Rights and Lessens the Burden on Defendants in Similar Situations. 28

CONCLUSION ................................................................................ 32

CERTIFICATE OF COMPLIANCE ............................................. 36

CERTIFICATE OF SERVICE ....................................................... 37

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946) ........................................................ 1

*Atkins v. Fischer*, 331 F.3d 988 (D.C. Cir. 2003) ..................................................... 22

*Berkic v. Crichto*n, 761 F.2d 1289 (9th Cir. 1985) ................................................... 22

*Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382 (S.D.N.Y. 2005) ........................................................................................................................... 8

*Boisson v. Banian, Ltd.,273 F.3d 262 (2d Cir. 2001)* ...................................... 6, 21, 27

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ................................. 25, 26

*Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998)....................................................................................................................... 22

*Cohen v. U.S.*, 105 Fed. Cl. 733 (2012) .................................................................... 24

*Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548 (3d Cir. 2002) ...... 22

*Dyer v. Napier,* No. CIV 04-0408-PHX-SMM, 2006 WL 2730747 (D... 14, 15, 18, 23

*Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498 (2d Cir.1982) .................... 26

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)........................ 17, 18

*Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62 (3d Cir. 1978)..... 7

*Hamil Am. Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999) .................................................... 6

*Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173 (1st Cir. 2013)........ 10, 11, 12

*Kerr v. New Yorker Magazine, Inc.*, 63 F. Supp. 2d 320 (S.D.N.Y. 1999)............... 14

*Kienitz v. Sconnie Nation LLC*, 766 F.3d 756 (7th Cir. 2014) ................................. 28

*Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003)........................................................ 22

*Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998)........................ 8

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ............................................ 22

*Lotus Development Corp. v. Borland Intern., Inc.*, 788 F. Supp. 78 (D. Mass. 1992) ............................................................................................................................... 24

*Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005) ....... 16, 17, 18

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904........................................ 3, 25

*Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693 (2d Cir. 1998)........ 25

*McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, (9th Cir. 1987)............................. 5

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65 (2d Cir. 1999).................................................................................................................... 24

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527 (5th Cir. 2015) ............................................................................................................................... 24

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57 (2d Cir. 2010).... 6

*Peter Letterese & Assoc., Inc. v. World Institute Of Scientology Enters.*, 533 F.3d 1287 (11th Cir. 2008) ............................................................................................ 22

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287 (11th Cir. 2008) ..................................................................................................... 24

*Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268 (S.D.N.Y. 2005)... 7, 13, 21

*Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw. .... 12, 13, 21, 23

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018)................................. passim

*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992)....................................................... 7, 8

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir.1987) ...................................................................................................................... 26

*Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255 (5th Cir. 1988) .......................... 22

*Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 654 F.2d 204 (2d Cir. 1981) ................................................................................................................... 5, 26

*Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231 (2d Cir. 1983) ................................................................................................................... passim

*Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003)......... 22

*Williams v. Crichton,* 84 F.3d 581 (2d Cir. 1996)...................................................... 2

**Other Authorities**

*Joel Achenbach, Flesh and Bone: A New Generation of Scientists Brings Dinosaurs Back to Life, Nat'l Geog., Mar. 2003* .................................................................. 13

Oren Bracha, *Not De Minimis: (Improper) Appropriation in Copyright*, 68 Am. U. L. Rev. 139, 180 (2018) .......................................................................................... 5, 28

Oren Bracha & John M. Golden, *Redundancy and Anti-Redundancy in Copyright*, 51 Conn. L. Rev. 247 (2019)...................................................................................... 27

Doc. 50-5, Mar. 29, 2022 (Declaration of J. Sedlik, Exh. A) ............................... 19, 20

Hon. Sir Hugh Laddie et al., 1 The Modern Law of Copyright and Designs § 4.57 (3d ed. Butterworths 2000) ........................................................................................ 16

Joseph P. Liu, *Copyright and Breathing Space*, 30 Colum. J.L. & Arts 429 (2007). 28

Drew M. Morris & Carter J. Alvey, *Knowledge and the Perceived Value of Paintings: The Role of Time, Presence, and the Contagion Effect on Art Evaluation*, 18 Psychol. of Aesthetics, Creativity, and the Arts 269, 272, 277 (2024) .................................................................................................................... 9

*Louie Psihoyos with John Knoebber, Hunting Dinosaurs 202 (2009)*....................... 13

Melville B. Nimmer & David Nimmer, Nimmer on Copyright (1983) ....................... 2

## STATEMENT OF INTEREST OF *AMICI CURIAE*

*Amici*, listed in the Appendix, are scholars whose research and teaching focus is copyright law.[1] *Amici* have no direct interest in the outcome of this litigation.[2] Although *amici* strongly support the application of fair use in this case, they write here to emphasize that this is also a substantial similarity case, and that substantial similarity has an important role to play in establishing the scope of copyright that should not be delegated to fair use, even when copying in fact is undisputed.

## SUMMARY OF ARGUMENT

There can be copying without infringement. *Arnstein v. Porter*, 154 F.2d 464, 472 (2d Cir. 1946) ("Assuming that adequate proof is made of copying, that is not enough; for there can be 'permissible copying.'"). Thus, "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." *Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231,

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amici* certify that no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and no person — other than the *amici* — contributed money that was intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief. F.R.A.P. 29(a).

241 (2d Cir. 1983) ("*Warner Bros. II*") (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B] (1983)). If it were otherwise, absent another defense, *Jurassic Park* might infringe upon a story involving shenanigans on a dinosaur island, the copyright holders of the character Superman could prevent others from creating a superhero who is super strong and flies around in a cape and primary-colored suit, and no one else could take a photograph of Michael Jordan leaping without Jacob Rentmeeseter's permission. *See Williams v. Crichton,* 84 F.3d 581 (2d Cir. 1996); *Warner Bros. II*, 720 F.2d 231; *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018).

Here, the jury found dramatic divergences in visual rendition (in sketch or tattoo form, and in combination with other visual elements in a video), making many of the works in suit not substantially similar in protectable elements. The jury based its finding on visual inspection of the works in suit and on extensive testimony by the tattoo artist describing her process and choices.[2] Given the evidence in suit, the district court judge properly left the question of substantial similarity to the jury, to which the answer is made by reference to the holistic impression of an ordinary non-expert observer.

Fair use is a valuable and flexible tool for realizing the goals of copyright.

---

[2] *Amici* focus on the works that did not include prominent display of the Sedlik Photo; defendants conceded substantial similarity as to social media posts that did so. Our analysis concerns the other works in suit—the Tattoo, the Sketch, and related social media posts.

However, there is no need to use a Swiss Army knife when a simpler implement — traditional infringement analysis — will do. No matter what the purpose of its use or effect on the market, a work that is not substantially similar in its use of copyrightable elements from the original simply does not infringe. Holding such instances to be fair use may mitigate the damage, but it makes the fair use doctrine more complicated. Relying on fair use also suggests that the defendants in such cases did take enough to infringe, which encourages future plaintiffs to try their luck with aggressive copyright claims. This Court should affirm the jury's verdict on substantial similarity, along with fair use.

## **ARGUMENT**

### I. **Recognizable Similarity in Expression is Not, in Itself, Substantial Similarity.**

Not all copying in fact is copyright infringement. "To infringe, the defendant must also copy *enough* of the plaintiff's expression of those ideas or concepts to render the two works 'substantially similar.'" *Rentmeester, Rentmeester*, 883 F.3d at 1117 (emphasis added) (quoting *Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904, 913–14 (9th Cir. 2010). As this Court explained, even when copying is conceded, "the plaintiff must still show copying of protected expression *that amounts to unlawful appropriation*." *Rentmeester*, 883 F.3d at 1124 (emphasis added). The test is not satisfied merely by any "copying of protected expression"—the copying must be *too much*. *Rentmeester* attempted to

clear up past confusion—reflected in many cases cited by Sedlik and his *amici*—that came from using "copying" in two different senses ("copying in fact" and infringing copying). Unfortunately, as this appeal shows, it is still too easy for litigants to argue that all copying in fact is infringing copying.

Nonetheless, the standard that this Court—like every other court of appeals—has set forth is "substantial" similarity. What is required is not any similarity in expression, nor even recognizable similarity in expression, but a similarity that substantially duplicates the aesthetic appeal of the protected elements of the original. *Warner Bros. II*, 720 F.2d at 240 (explaining that a defendant can prevail if either it copies only non-copyrightable elements *or* if there is no substantial similarity). That is, not *all* copying of protectable expression constitutes substantial similarity—otherwise, the test would ask a jury whether *any* protectable expression had been copied, rather than a "substantial" amount.

For example, in *Warner Bros. II*, the Second Circuit recognized that Ralph Hinkley's character in the show "The Greatest American Hero" was recognizably based on Superman: the show's premise was literally "what happens when you [the average person] become Superman." *Id*. at 236. But the two characters were not substantially similar, because the other features ABC introduced were combined with the copied features in a way that changed the overall aesthetic impression of the work. And this was true even though those copied features could still be separately identified in ABC's work by a list of shared characteristics.

7

*Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 654 F.2d 204, 209 (2d Cir. 1981) ("*Warner Bros. I*").

The substantial similarity requirement preserves subsequent creators' freedom to draw on the existing world. As such, it is "the main doctrinal safeguard against copyright becoming a drag on the creative innovation it was meant to promote." Oren Bracha, *Not De Minimis: (Improper) Appropriation in Copyright*, 68 Am. U. L. Rev. 139, 180 (2018). In *Warner Bros. II*, as Bracha explains, "[t]he improper appropriation analysis required comparing the expressive content of the two works and discerning the material differences in their meaning, notwithstanding the technical similarities. This relatively simple analysis tracked well the underlying policy question." *Id.* at 194.

As this Court has explained, "[t]he intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in total concept and feel." *Rentmeester*, 883 F.3d at 1118 (cleaned up). This is the jury's task, and its verdict on this question in this case—which this Court has described as inherently suited for a finder of fact, *e.g.*, *McCulloch v. Albert E. Price, Inc.*, 823 F.2d 316, 319 (9th Cir. 1987)—was well within the jury's competence. *Cf. Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 24 (2021) ("subsidiary factual questions" such as "how much of the copyrighted work was copied" are for the jury in fair use determinations). Appellant and its amici seek to turn the test for infringement into one merely for copying in fact by converting

"total concept and feel" into a "heads I win, tails you lose" rule favoring plaintiffs. Copyright law does not support such a doctrinal upheaval.

## II.    The Court Correctly Submitted Substantial Similarity to the Jury

There are overlapping visual elements between the works in suit, such as the appearance of Miles Davis's face. But these elements are non-protectable and should not be part of a substantial similarity analysis. Given the mix of protectable and unprotectable material in the photograph, the court was correct to allow the jury to evaluate the qualitative and quantitative significance of the copying here. Both parties submitted extensive testimony, and the jury examined the works in suit, including the tattoo itself. *See* Drew M. Morris & Carter J. Alvey, *Knowledge and the Perceived Value of Paintings: The Role of Time, Presence, and the Contagion Effect on Art Evaluation*, 18 Psychol. of Aesthetics, Creativity, and the Arts 269, 272, 277 (2024) (finding that in-person evaluations of paintings differed from evaluations of digital images of paintings).

At trial, the jury was asked to consider the aesthetic effects of differences in shading, lighting, hair lines, cropping, density of image, size and proportionality in the tattoo. E.g., Tr. Jan. 24, 2024, at 418-20, 424, 427, 431, 489, 491-92 (von D discussing her free-hand shading of "99 percent of the tattoo" (431), addition of texture and movement, changes to hairline, changes in highlights or reflections, changes in spatial composition, simplification, and changes in jawline); Tr. Jan. 25, 2024, at 517 (same). This evidence was well within the jury's competence to

consider and evaluate for the holistic subjective comparison required for infringement. The "line drawing," the "messy progress" post, and the post showing von D at a light box show even less overlap that could be deemed expressive. And the jury so found.

### A. Substantial Similarity Only Considers Similarity Between Copyrightable Elements.

When the similarities between two works stem at least in part from unprotectable elements, the factfinder must "eliminate the unprotectable elements from its consideration and ask whether the protectable elements, standing alone, are substantially similar." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 101 (2d Cir. 1999). In assessing the total aesthetic impression, factfinders consider whether the tone or theme of the works being compared is similar. *See, e.g.*, *Boisson v. Banian, Ltd.*,273 F.3d 262, 273(2d Cir. 2001). By capturing when a protectable arrangement of unprotectable elements creates a distinct aesthetic impression, this test protects against dissecting a work into unprotectable elements in a way that misses the forest for the trees. *See Boisson*, 273 F.3d at 272. Reciprocally, similarity between the constituent elements of two works does not amount to copyright infringement if the total concept and feel is fundamentally different. *See, e.g.*, *Warner Bros. II,* 720 F.2d at 241; *Boisson*, 273 F.3d at 276; *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67 (2d Cir. 2010).

Because the Sedlik Photo is a mixture of factual, non-protectable elements and creative, protectable choices, the jury needed to focus on whether the *protectable elements* of the accused works were substantially similar in "total concept and feel." The fact that Miles Davis was an unprotectable-by-copyright human being is highly significant: While Sedlik's photo was undoubtedly copyrightable, its copyright did not extend to Davis's own features, the primary focus of the photo. Thus, as the tattoo artist described in her testimony, a tracing, or a tattoo altering features of the photo such as lighting and background, could reasonably be perceived by the jury to change the aesthetic impact of the photo's protectable elements.

### B. Because the Photo Is A Mixture of Factual and Creative Content, Only Limited Aspects of It Are Protectable Under Copyright.

The copyright in the Photo extends only to the elements which are original and result from Sedlik's own creative choices. *See Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992). Much of what makes the Photo identifiable is non-copyrightable content. The most prominent feature, Davis's appearance, is not protectable. *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005) ("A copyright in a photograph derives from the photographer's original conception of his subject, not the subject itself.") (citation omitted); *Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62, 65 (3d Cir.

1978) (artists have a "weak" copyright claim when the "reality of [their] subject matter" is not easily separable from their artistic expression of it); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2][b] (2019) (noting that appearance of objects in the public domain or as they occur in nature is not protected by copyright). Subsequent creators rarely have access to the people depicted in photos; they can lawfully use references rather than in-person inspection to make their own creative works.

Davis's pose alone, to the extent that it is a product of Sedlik's creative direction, is not protectable. The pose is hardly uncommon and is a scène à faire. Judge Owens explained that to protect human appearance "in isolation" would grant photographers "a broad copyright over photos of human movements, including facial expressions," working "a radical change in our intellectual property laws." *Rentmeester*, 883 F.3d at 1128 (Owens, J., concurring in part); *cf. Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 392 (S.D.N.Y. 2005) (holding that the contorted pose of a seated woman's feet viewed from a low perspective looking under a bathroom stall is scène à faire and not copyrightable).

Sedlik does have a copyright in the product of the artistic choices he made. Depending on the content of a given photograph, these may include originality in "posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers*, 960 F.2d at 307; *see also Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir.

1998) (holding there was protection for "such artistic elements as the particular lighting, the resulting skin tone of the subject, and the camera angle"). Assuming that Sedlik's direction created sufficiently original effects, it is the selection and arrangement of these artistic choices that is protectable, "not any of the individual elements standing alone." *Rentmeester*, 883 F.3d at 1119. A subject's facial expression is not the same thing as the protectable combination of lighting, camera, and angle depicting that expression. Once all the facts and evidence were heard comparing the copyrightable aspects of Sedlik's photograph to Kat von D's work, the jury found that the photo was not substantially similar to the accused works that did not include prominent reproductions of the photo.

### C. Courts Have Repeatedly Held That Works Are Not Substantially Similar Despite Copying in Fact, Where the Works Have Different Aesthetics.

Copying alone isn't infringement; the copying must be of a substantial amount of the copyrightable portions of the work. Multiple decisions have affirmed that there is no substantial similarity between two visual works whose similarities stem largely from unprotectable elements. For example, this Court found no substantial similarity between two photographs, one "obviously inspired" by the other, of Michael Jordan dunking a basketball in an unnatural ballet-esque leap pose. *Rentmeester*, 883 F.3d at 1116. Despite finding that Jordan's pose was "fanciful" and "highly original," this Court held that it was not protectable as such, and therefore the original photographer could not stop

13

others from taking photographs of Jordan in a similar pose. *Id.* at 1121.

Importantly, the court noted a lack of similarity between the *protectable*

elements — the combination of the lighting, background, and overall aesthetic

of the photographs. *Id.* at 1121-23. The respective creative choices of

Rentmeester and Nike produced images that were "unmistakably different . . .

in material details." *Id.* at 1122.

More generally, there is no substantial similarity as a matter of law for visual

works that have overlapping, mostly unprotectable elements, but differ in other

protectable elements, such as coloring and background, in ways that produce an

overall different aesthetic "look and feel." A survey of the cases demonstrates that

aesthetic shifts regularly preclude substantial similarity where a work copies both

protectable and unprotectable elements. Many of these cases were decided on

summary judgment for the defendant. The jury's verdict here vindicates the strength

of this long line of precedent.

For example, the First Circuit affirmed a finding of no substantial similarity

between a photograph and an image that sought to recreate it. *Harney v. Sony

Pictures Television, Inc.*, 704 F.3d 173 (1st Cir. 2013). The plaintiff in that case,

Donald Harney, snapped a picture of a young girl riding on her father's shoulders.

*Id.* at 177. Shortly after the photograph was taken, the father in the picture abducted

his daughter, and Harney's photograph became an "iconic image" of the crime. *Id.*

Sony, the defendant, recreated its own version of Harney's photograph for a made-

for-television movie on the abduction.

 

*Defendant's Photo. Id.* at 189.          *Plaintiff's Photo. Id.*

As the court noted, both images "share several important features." *Id.* at 177. They both feature a white man, wearing a suit, holding in his left arm several papers held at a forty-five-degree angle. *Id.* On the shoulders of each man sits a blonde-haired girl, wearing a long, baby pink jacket. *Id.* The pose, angle, and framing of the father and daughter in each photo are reminiscent of each other. *Id.* Yet, the court notes that almost none of these overlapping features are protectable. Those that were, such as the placement of the father/daughter duo in the center of the photograph, only had "minimal originality and [provided] an insufficient basis, without more, to find substantial similarity." *Id.* at 187.

*Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw.

2006), which bears similarities to the case at bar, involved transferring an image of a hula dancer from photograph to abstracted stained glass. The court found there was no substantial similarity despite the highly similar pose and angle. *Id.* at 1206-08.

 

*Plaintiff's Photograph*  *Defendant's Stained-Glass Window*

Permanent Injunction and Order of Dismissal with Prejudice at Ex. B-C, *Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw. 2006) (No. 06-0049), ECF No. 96.

The *Reece* court based its decision on, among other things, the small difference in the images' protectable elements — the dancers' angles, *id.* at 1207; the differing backgrounds, *id.*; and the lighting effects that were "unique" to the photo, which created a contrast between dark and light and resulted in sepia shading "absent" from the stained glass, *id.* at 1208. Ultimately, the "absence of

detail" in the stained glass, the differing backgrounds, differing hairstyles, and "marked[] contrast" between the sepia photo and vibrant colors of the stained glass precluded substantial similarity. *Id.*

*Psihoyos* likewise found the shared light source and perspective in two drawings of dinosaurs insufficiently similar. 409 F. Supp. 2d at 278. The drawings had other differences, including "significantly different" drawing styles — one detailed and using bright colors, the other simpler and less realistic with a different color palette — as well as different senses of depth created by the different styles, *id.* at 279-80.



*Louie Psihoyos with John Knoebber, Hunting Dinosaurs 202 (2009) (detail)*



*Joel Achenbach, Flesh and Bone: A New Generation of Scientists Brings Dinosaurs Back to Life, Nat'l Geog., Mar. 2003, at 27 (detail)*

Style was also vital to lack of substantial similarity in *Kerr v. New Yorker Magazine, Inc.*, 63 F. Supp. 2d 320, 325-26 (S.D.N.Y. 1999).

 

*Plaintiff's Illustration*              *July 1995 Cover of* The New Yorker *Magazine*

*Id.* at 327. As the court explained, "[plaintiff's] pen and ink drawing has a sketchy, edgy feel to it, while [defendant's image's] cool colors and smooth lines gives a more serene and thoughtful impression. These different 'feels' are sufficient support for a finding that the two images are not substantially similar." *Id.* at 325-26.

In *Dyer v. Napier,* No. CIV 04-0408-PHX-SMM, 2006 WL 2730747 (D. Ariz. Sept. 25, 2006), the court held that no reasonable jury could find substantial similarity between a photograph and a more stylized sculpture concededly based on that photo. This was so even though the plaintiff posed the subject and chose

the time of day, cameras, lenses, angle, and film to use. *Id.* at *1- 2.

 

*Kent Dyer, Mother Mountain Lion with Baby in Mouth*      *Jason Napier, Precious Cargo*

Statement of Facts Supp. Def.'s Mot. summ. J., Ex. 8-9, *Dyer v. Napier,* No. CIV 04-0408-PHX-SMM, 2006 WL 2730747 (D. Ariz. Sept. 25, 2006). As the court explained, the scope of copyright in realistic depictions of living beings is narrow. *Id.* at *8. The plaintiff's undoubted skill with animal wrangling, and substantial efforts to set up the shot, did not justify extending control over the photograph to control over the pose depicted therein.

### D. The Jury Reasonably Found that the Accused Works Were Not Substantially Similar to the Photo.

As in the foregoing cases, the aesthetics of the defendant's works are very different from that of the Sedlik Photo. The jury's considered verdict so finding deserves respect. While there are plainly overlapping visual elements,

these elements are largely derived from Miles Davis's physical appearance and should not be considered in the substantial similarity analysis. *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 462 (S.D.N.Y. 2005).

Judge Kaplan's influential *Mannion* opinion established three bases for originality in a photograph: creation of subject (often referred to as "composition"), timing, and rendition. *Mannion*, 377 F. Supp. 2d at 451-54. *Mannion*'s tripartite framework "now serves as a standard tool to analyze" protectability of photographs. 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2A.06[A][3][a][iv] (2019). Composition refers to the way that a photographer arranges multiple objects and subjects and their relation to each other in the frame. *Id.* at § 2A.08[E][3][a][i]. Even if the photographer does not control the arrangement within the frame, a photograph may be original based on its timing if the photographer created a "worthwhile photograph by being at the right place at the right time." *Mannion*, 377 F. Supp. 2d at 452 (quoting Hon. Sir Hugh Laddie et al., 1 The Modern Law of Copyright and Designs § 4.57 at 229 (3d ed. Butterworths 2000)). Portraiture leaves relatively little opportunity for originality through timing. Specifically, originality in timing creates a work that is protectable, but does not grant the photographer a broad copyright in the facts depicted by a moment in time; even if a person has different facial expressions at different moments, any given photograph shows the fact of what they looked like at that moment. Originality created via rendition resides in "such specialties as angle

of shot, light and shade, exposure, effects achieved by means of filters, developing techniques." *Id.*

Although Kat von D copied a particular photograph, her extensive testimony described a creative process that purposefully altered the rendition of Davis in the photo. The Sedlik Photo — in which the subject is posed in a traditional manner for portraiture, with a black background — can claim, at most, a thin level of creativity in composition.[3] Likewise, it is neither the time nor place of capture that makes the portrait "worthwhile." *Mannion*, 377 F. Supp. 2d at 452. Instead, the basis for the Sedlik Photo's originality is in its particular rendition. In taking the picture, Sedlik made a variety of creative decisions, including cropping of the image to include the head and shoulders, lighting, exposure, and angle.

However, it is in these protectable features that the total look and feel of the Sedlik Photo differs from defendants' tattoo works (that is, the works that did not prominently feature the photo itself, as to which the jury found fair use). The jury found that those works create a substantially different aesthetic impression with a distinctive concept and feel, especially given that Davis's natural appearance—including the pose of holding a finger up to the lips—is not

---

[3] Substantial skill and effort was required to pose Davis against a black background. However, a black background is standard portrait fare, and skilled work is not itself expressive or protectable by copyright. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 353, 364 (1991).

protectable by copyright.[4] The jury was entitled to make its own judgment about the differences in defendants' works, including in hairline, background, cropping the image, and highlighting/shading within the image, all of which Kat von D explained at length at trial in terms of her own artistic choices and processes.

Even for the details that defendants did not change, the aesthetic appeal differs dramatically because of the shift from photography to drawing, and then to tattoo style, which interacts with its placement on a human body. The jury heard extensive testimony about the elaborate process of making tattoo art. The jury reasonably found, after considering the facts and evidence, that most or all of the similarity comes from Davis's uncopyrightable appearance. *Mannion*, 377 F. Supp. 2d at 455. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (recognizing that copyright does not protect labor, but rather expression); *cf. Dyer*, 2006 WL 2730747, at *9 (rejecting the argument that the work required to get subjects into the "ideal pose" was protectable).

The few protectable elements of the Sedlik Photo incorporated into the defendant's work are used in a way that creates a "total perception [that is]

---

[4] Although faces have expressions, facial expressions are not "copyrightable expression"—otherwise the first director to get Hugh Grant to make a specific moue would be able to prevent him from doing so in a different movie, and Disney could bar Mark Hamill from posing as Luke Skywalker in photos with fans. Sedlik conflates the two different meanings of "expression" in claiming otherwise.

fundamentally different" from the original work. *Warner Bros. II*, 720 F.2d at 243. For example, a shifting side view in a video of a tracing-paper-covered photo on a lightbox obscures the details and changes the visual impact of a photo, as shown in defendant's YouTube video of the design process.



The sketch itself makes a strikingly different visual impression, as it lacks the lighting and other key expressive aspects of the photo:

---

[5] Doc. 50-5, Mar. 29, 2022, at 10 (Declaration of J. Sedlik, Exh. A).



KVD 000003 [6]

And the use of the human body as a medium also changes the aesthetic

impact of a tattoo, which would have been more visible to the jury in the video

than in a static image:

---

[6] Id. at 12.



<sup>7</sup>

These kinds of stylistic differences, described at length at trial as part of the many stages of making tattoo art, distinguish works that are based on the same subject. Prior courts have so recognized. *See, e.g.*, *Psihoyos*, 409 F. Supp. 2d at 279-80 ("significantly different" drawing styles prevented substantial similarity despite alleged similarities in "perspective, "light source," and other elements); *Reece*, 468 F. Supp. 2d at 1209 (difference in medium from photograph to stained glass created different overall "feel and concept" despite "remarkabl[e]

---

<sup>7</sup> Doc. 237-1, at 56.

similar[ity]" in subject's pose and proportions); *cf. Boisson*, 273 F.3d at 275

(different colors of quilts featuring "substantially the same" alphabet pattern

evoked different total concept and feel).

### E. Sedlik's Arguments to the Contrary Conflate Copying in Fact with Infringement

Sedlik and his *amici* reject the cases cited above and conflate copying in

fact with substantial similarity. They argue that this rule is necessary to protect

the derivative works right. This is wrong as a matter of black-letter law. The

derivative works right ensures that, *when there is substantial similarity of*

*protectable expression*, a change in medium—from book to movie, for

example—does not avoid infringement.[8]

---

[8] There is an unbroken consensus on this point, including in binding Ninth Circuit precedent. *See, e.g.*, *Berkic v. Crichton*, 761 F.2d 1289, 1291 n.1 (9th Cir. 1985) ("[T]he plaintiff's argument that his 'derivative work' copyright claim presents issues separable from his main copyright claim is frivolous. If the plaintiff cannot show a substantial similarity between the defendants' work and his own, he cannot prevail on a claim for alleged violations of his right to prepare derivative works."); *Peter Letterese & Assoc., Inc. v. World Institute Of Scientology Enters.*, 533 F.3d 1287, 1297 n.8 (11th Cir. 2008) (substantial similarity is always required, regardless of whether reproduction or derivative works right is at issue); *Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) (same); *Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 117 (2d Cir. 2003) (same); *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003) (same); *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 565 (3d Cir. 2002) ("by definition, derivative works are substantially similar to the original work"); *Castle Rock Entertainment, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 143 n.9 (2d Cir. 1998) ("[I]f the secondary work sufficiently transforms the expression of the original work such that the two works cease to be substantially similar, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work.") (citation omitted); *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 267 (5th Cir. 1988) (to constitute a derivative

26

The book/movie example shows the error of Sedlik's logic: a movie based on a book is not *visually* similar to the book. It is substantially similar in narrative—the selection and sequencing of events, situations, and/or characters. Those elements are protectable parts of a book, beyond the literal words themselves, and narrative can be substantially similar across media. However, when a photo's creativity stems from specific features that are part of the photographic process—particular choice of angle, lighting, and cropping—then those specific features may not be substantially present when the same subject is portrayed in a different medium. Here, the jury decided that they were not. *Cf. Reece*, 468 F. Supp. 2d at 1208; *Dyer*, 2006 WL 2730747, at *8.

If, contrary to the case law above, mere "recognizability" is enough to create substantial similarity, then every time someone writes "Use the Force, Luke" or "winter is coming" then they are infringing *Star Wars* and *Game of Thrones*, respectively, because those phrases are expressive and recognizable. But infringement includes a quantitative element, which means more than taking a nonzero amount of expression—the similarity must be "substantial" as well as recognizable. *See, e.g.*, *Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999) (requiring both qualitative and quantitative analysis to determine substantial similarity); *Peter Letterese & Assocs., Inc. v.*

---

work, the infringing work must, in part, "be substantially similar to the copyrighted work").

*World Inst. of Scientology Enters.*, 533 F.3d 1287, 1307 (11th Cir. 2008) (same);

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 552 (5th

Cir. 2015) (substantial similarity asks "whether the defendants have

misappropriated *substantial* elements of the plaintiff's work") (cleaned up)

(emphasis in original); *Cohen v. U.S.*, 105 Fed. Cl. 733, 747 (2012) (rejecting

claim based on copying one sentence of a book for want of substantial

similarity). The correct standard is whether the defendant took too much

protected expression, not whether the defendant took any protected expression at

all. As another court perceptively explained:

> [T]he copying must be extensive enough to be "substantial." This is
> "substantial similarity" in a mixed law-fact evaluative sense. Thus, the test
> for determining whether there is "substantial similarity" in this sense
> involves not merely a ministerial task of measuring by a yardstick or word
> count, but a judgmental task of weighing the quantitative measurements
> along with other relevant factors and coming to an overall evaluation that
> applies a legal test for "unlawful appropriation" to the facts.

*Lotus Development Corp. v. Borland Intern., Inc.*, 788 F. Supp. 78, 84 (D. Mass.

1992).

### III. Substantial Similarity Clarifies the Scope of the Plaintiff's Rights and Lessens the Burden on Defendants in Similar Situations.

Sedlik and his amici's position, by contrast, would require a fair use analysis

for every recognizable quote, no matter how small, which both strains fair use and

encourages strike suits to suppress expression. Although *Amici* agree with the jury

that defendant also engaged in fair use, many aspects of this case would be better

resolved through application of the substantial similarity doctrine. From a purely

logical perspective, a claimant should have to prove there was infringement *before*

the purported infringer has to defend against such infringement.

Further, deciding fair use requires a multifactor test, with attendant risks of

factual error and overcomplication of doctrine. In fair use analysis, courts

consider whether a use is "transformative" because it "adds something new . . .

altering the first with new expression, meaning or message." *Campbell v. Acuff-*

*Rose Music, Inc.*, 510 U.S. 569, 579 (1994). In contrast, works that are not

substantially similar do not have to be transformative. Likewise, if a user did not

create a substantially similar work, the degree of commerciality of her work has

no effect on her legal status. And, absent substantial similarity, creators are

perfectly free to compete with and even destroy the market for other works,

including works on the same subject. *Matthew Bender & Co., Inc. v. West Publ'g*

*Co.*, 158 F.3d 693, 708 (2d Cir. 1998) (holding that market-supplanting effect is

only relevant if infringement of protectable elements has already been

established; market harm done by works that aren't substantially similar is "not

cognizable under the Copyright Act"); *cf. Mattel, Inc.* v. *MGA Entm't, Inc.*, 616

F.3d 904 (9th Cir. 2010) (allowing competitor to do billions of dollars of damage

to plaintiff with competing dolls, in the absence of substantial similarity).[9]

---

[9] *See also Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191,
1198-99 (7th Cir.1987) ("[A copyright] forbids copying the copyrighted work

Resolving this type of case on substantial similarity grounds therefore provides greater certainty for users and facilitates lawful creativity inspired by or created with reference to other creative works. Where the defendant engaged in copying in fact, but produced a dissimilar work, using fair use to resolve such cases encourages future plaintiffs to assert an expansive scope of protection in the hope that the first and especially the fourth fair use factors will weigh against the use despite the lack of similarity in total concept and feel. *Cf. Warner Bros. II*, 720 F.2d at 240.

Retaining substantial similarity as a real constraint on the scope of copyright furthers the ultimate constitutional purpose of copyright, "to promote science and the arts," *Campbell*, 510 U.S. at 579, as it clarifies to users that the scope of copyright is based on substantial similarity of creative expression, rather than requiring a fair use analysis in every case of copying in fact.

Resolving cases on traditional infringement analysis before engaging in the fair use inquiry may also lessen the burden on noninfringing defendants who

---

without the copyright holder's permission, but it does not forbid the making of close substitutes. So long as the second comer creates a work that is not substantially similar to the copyrighted features of the first work, there is no infringement."); *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 501 (2d Cir.1982) (quoting *Warner Bros. I*, 654 F.2d at 211 ("Even if an alleged copy is based on a copyrighted work, 'a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's.' ")); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][1][b] (same; collecting cases).

cannot afford to mount a lengthy legal defense. *See* Oren Bracha & John M.

Golden, *Redundancy and Anti-Redundancy in Copyright*, 51 Conn. L. Rev. 247,

279 (2019) ("Restricting vindication of a privilege to use to a procedural route

requiring long and expensive litigation increases the risk of undesirable chilling

effects on secondary uses."). In appropriate cases, a defendant need not go through

an expensive discovery phase or hire expert witnesses in order to show that there is

no substantial similarity because the factfinder is capable of making this

determination through their own "good eyes and common sense." *Boisson*, at 272-

73.

　　By contrast, proving fair use can be expensive and time-consuming in some

cases. Although sometimes transformativeness is evident given the nature of the

defendant's use, showing that a use is transformative under factor one might

require establishing facts about the purpose and meaning of the works. Similarly,

proving that there is no market harm could require extensive discovery to unveil

the extent of the claimant's development of the market and derivative markets. *See*

Bracha & Golden, *supra*, at 268-70 (discussing the lengthy fair use battle in *Oracle*

*v. Google*). The sometimes difficult and costly process of proving the fair use

factors disproportionately impacts smaller and less resourced parties. *Id*.; *see also*

Bracha, *supra* at 195 (substantial similarity analysis can avoid the "taxing process

of discovery and fact-finding or overly complex legal reasoning" entailed in using

fair use to reach the same result). This doctrinal uncertainty and the

disproportionate effects on less-resourced parties can lead to aggressive copyright claims and a reciprocal chilling effect on creative expression. *See* Joseph P. Liu, *Copyright and Breathing Space*, 30 Colum. J.L. & Arts 429, 433-34 (2007) (discussing the overly cautious posture taken by parties who believe they may be subject to copyright claims).

Resolving cases earlier on substantial similarity grounds may also avoid straining the conceptual boundaries of fair use. Particularly where it is evident that two works are aesthetically different in "look and feel," but it is difficult to explain in words how one work is transformative, substantial similarity offers a cohesive doctrinal alternative. *See Kienitz v. Sconnie Nation LLC*, 766 F.3d 756 at 758 (7th Cir. 2014) (criticizing transformative use doctrine, in a case that also could have been more appropriately decided as lack of substantial similarity).

For the foregoing reasons, deciding this case on substantial similarity would send a clear and useful message: artists may use reference images of real subjects.

## <u>CONCLUSION</u>

The jury's verdict of noninfringement should be affirmed.


Dated:                                    Respectfully submitted,
                                           Rebecca Tushnet
                                           /s/ Rebecca Tushnet
                                           _____
                                           Harvard Law School
                                           1575 Massachusetts Ave.
                                           Cambridge, MA 02138
                                           (703) 593-6759

rtushnet@law.harvard.edu
Counsel for *Amici Curiae*

## Appendix[10]

Mark Bartholomew
Professor of Law
University at Buffalo School of Law, The State University of New York

Sonya G. Bonneau
Professor of Law, Legal Practice
Georgetown Law

Brian L. Frye
Spears-Gilbert Professor of Law
University of Kentucky College of Law

Jim Gibson
Sesquicentennial Professor of Law
University of Richmond School of Law

James Grimmelmann
Professor of Law
Cornell Tech and Cornell Law School

Stacey M. Lantagne
Professor of Law
Western New England University School of Law

Mark A. Lemley
William H. Neukom Professor
Stanford Law School

Yvette Joy Liebesman
Professor of Law
Saint Louis University School of Law

Mark McKenna
Professor of Law
UCLA Law

Amanda Reid
Associate Professor

---

[10] Amici's institutional affiliations are provided only for purposes of identification.

Hussman School of Journalism and Media, University of North Carolina at Chapel Hill

Betsy Rosenblatt
Professor of Law
Case Western Reserve University School of Law

Guy A. Rub
Vincent J. Marella Professor of Law
Temple University Beasley School of Law

Jessica Silbey
Professor of Law and Honorable Frank R. Kenison Distinguished Scholar in Law
Boston University School of Law

Rebecca Tushnet
Frank Stanton Professor of the First Amendment
Harvard Law School

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Fed. R. App. P. 32(g), I hereby certify that:

This brief complies with the type volume limitations of Second Circuit Local Rule 29.1(c) because it contains 6251 words as calculated by the word count feature of Microsoft Word, exclusive of the sections exempted by Fed. R. App. P. 32(f) and including words in images.

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5)(A) and (a)(6) because it uses 14-point proportionally spaced Times New Roman font.

Dated: December 23, 2024

/s/ Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu
Counsel for *Amici Curiae*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing Brief of *Amici Curiae* Law Professors in Support of Appellees and Affirmance with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on December 23, 2024. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECC system.

Dated: December 23, 2024      /s/ Rebecca Tushnet

                                                Rebecca Tushnet
                                                Harvard Law School
                                                1575 Massachusetts Ave.
                                                Cambridge, MA 02138
                                                (703) 593-6759
                                                rtushnet@law.harvard.edu
                                                 Counsel for *Amici Curiae*