No. 24-3367

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

JEFFREY B. SEDLIK,

*Plaintiff-Appellant*,

v.

KATHERINE VON DRACHENBERG, KAT VON D, INC., HIGH
VOLTAGE TATTOO, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-01102
Hon. Dale S. Fischer

_____

**BRIEF AMICUS CURIAE OF CHRISTOPHER SPRIGMAN AND MOLLY
VAN HOUWELING IN SUPPORT OF APPELLEE AND AFFIRMANCE**

_____

Christopher Sprigman
Murray and Kathleen Bring Professor
Co-Director, Engelberg Center for
Innovation Law and Policy
New York University School of Law
40 Washington Square South
New York, NY 10012
(212) 992-8162
christopher.sprigman@nyu.edu

*Attorney for Amici Curiae Sprigman
and Van Houweling*

Molly Van Houweling
Harold C. Hohbach Distinguished
Professor of  Patent Law and
Intellectual Property
Co-Director, Berkeley Center for Law
& Technology
University of California, Berkeley
School of Law
447 Law Building (North Addition)
Berkeley, CA 94720 MC:7200
msvh@law.berkeley.edu

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICUS CURIAE* .......................................................................... iii

SUMMARY OF ARGUMENT ................................................................................1

ARGUMENT ...........................................................................................................3

    I.    UNDER THE SUPREME COURT'S DEVELOPING ARTICLE III
STANDING JURISPRUDENCE, SEDLIK MUST SHOW THAT HE
SUFFERED CONCRETE HARM IN ORDER TO HAVE ARTICLE III
STANDING TO PURSUE HIS INFRINGEMENT CLAIMS……..……3

        A. Only Plaintiffs Who are Concretely Harmed by a Violation of Statutory
Rights Have Article III Standing to Assert Claims in Federal Court…….3

        B. *TransUnion* Applies to Copyright Claims………………………………5

    II.  THERE IS SUBSTANTIAL REASON TO DOUBT WHETHER SEDLIK
HAS ARTICLE III STANDING UNDER *TRANSUNION* TO ASSERT HIS
COPYRIGHT INFRINGEMENT CLAIMS………………………………5

        A. Copyright Infringement—Standing Alone and Unlinked to any Form of
Monetary Harm—Is Likely Not a "Concrete Injury" Sufficient to Support
Article III Standing…………………………………………………....6

        B. Because Sedlik's Copyright Claims Do Not Involve Literal Or Close
Copying, History and Tradition Offer Little Support for a Presumption of
Article III Standing……………………………………………...…...12

    III.  CONCLUSION…………………………………………………………...16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases**

*Baker v. Carr*, 369 U.S. 186, 204 (1962)……………………………………………..3

*Brewer v. Hustler Mag., Inc.*, 749 F.2d 527, 529 (9th Cir. 1984)………………...11

*Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019)…......10

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)……………..6

*Dun v. Lumbermen's Credit Ass'n*, 209 U.S. 20 (1908)…………………………….8

*eBay Inc. v. MercExchange, LLC,* 547 U.S. 388 (2006)…………………………...7

Flexible Lifeline Sys., Inc. v. Precision Lift, Inc., 654 F.3d 989, 995–96 (9th Cir. 2011)……………………………………………………………………………..8

*Folsom v. Marsh*, 9 F. Cas. 342 (C.C. Mass. 1841)………………………………13

*Frank v. Gaos*, 586 U.S. 485, 492 (2019)………………………………………...10

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985)……………………………………………………………………………11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)……………………..3

*N.Y. Times Co. v. Tasini*, 533 U.S. 483 (2001)…………………………………..8

*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)…………………………..6

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)………………………………………4

*Stevens Linen Associates, Inc. v. Mastercraft Corp.*, 656 F.2d 11, 14 (2d Cir. 1981)……………………………………………………………………………11

*Stowe v. Thomas*, 23 F. Cas. 201 (C.C.E.D. Pa. 1853)…………………………13

*TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019)………………………...8

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)……………………1 and passim

*Winter v. Natural Resources Defense Council,* 555 U.S. 7, 22 (2008)……………7

**Statutes**

§ 1, 1 Stat. 124 (1790)………………………………………………………13

Ch. 16, § 1, 4 Stat. 436 (1831)……………………………………………13

Ch. 565, § 4952, 26 Stat. 1107 (1891)……………………………………14

35 Stat. 1075, as codified at 17 U.S.C. § 1(a)-(b) (1909)…………………………14

15 U.S.C. § 1681 (2018)……………………………………………………4

17 U.S.C. § 106(1) (1976) ………………………...…………………...14

17 U.S.C. § 106(2) (1976)………………………………………………...15

17 U.S.C. § 107(4) (1976)………………………………………………...11

**Other Authorities**

U.S. Const., Art. I, § 8, Cl. 8……………………………………………6

U.S. Const., Art. III, § 2……………………………………………………3

Thomas F. Cotter, *Standing, Nominal Damages, and Nominal Damages "Workarounds" in Intellectual Property Law after* TransUnion, 56 U. CALIF. DAVIS L. REV. 1085, 1091 (2023)……………………………………………7

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 61 (1976)………………………..14

Restatement of the Law, Copyright, Tentative Draft No. 5, § 6.03, Comment *b* (2024)……………………………………………………………...13

Christopher Sprigman, *Copyright and the Rule of Reason*, 7 J. ON TELECOMM. & HIGH TECH L. 317, 320 (2009)………………………………………………16

## INTEREST OF *AMICI CURIAE*[1]

Professor Christopher Sprigman is the Murray and Kathleen Bring Professor of Law at the New York University School of Law, and Co-Director of the Engelberg Center on Innovation Law and Policy. Professor Molly Van Houweling is the Harold C. Hohbach Distinguished Professor of Patent Law and Intellectual Property at the University of California, Berkeley School of Law, and Co-Director, Berkeley Center for Law & Technology. Professors Sprigman and Van Houweling specialize in intellectual property law, and, in particular, copyright law. Their sole interest in this case is in the orderly and productive development of the law; specifically, to ensure that copyright law is interpreted consistently with the Supreme Court's precedents on Article III jurisdiction.

## SUMMARY OF ARGUMENT

Under the Supreme Court's holding in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), plaintiffs asserting copyright infringement claims must demonstrate they have suffered a "concrete injury" in order to establish injury in

---

[1] This brief has been prepared by individuals affiliated with New York University School of Law, and with the University of California, Berkeley School of Law, but does not purport to present either school's institutional views, if any. All parties have consented to the filing of amicus briefs. No party's counsel authored this brief in whole or in part, and no party or party's counsel, or any other person or entity made a monetary contribution to fund the preparation or submission of this brief.

fact for the purposes of Article III standing. The concrete injury requirement likely bars Sedlik's copyright infringement claims. Sedlik has produced no credible evidence that he suffered any monetary harm, such as lost sales or lost licensing opportunities. It is doubtful that copyright infringement unlinked to any prospect of monetary harm qualifies as injury in fact for Article III purposes.

Moreover, it is doubtful whether a presumption of harm sufficient to support Article III standing should apply at all to copyright claims, like Sedlik's, that do not involve the reproduction and distribution of a copyrighted work as such, but rather its use in a derivative work. The *TransUnion* Court stated that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider," *TransUnion*, 594 U.S. at 424. But infringement claims for the creation of an unauthorized derivative work were not provided by early U.S. copyright law, and in fact are a relatively recent Congressional creation. As a consequence, history and tradition provide less support for any presumption of injury in fact attaching to this particular type of copyright claim.

**ARGUMENT**

I.    **UNDER THE SUPREME COURT'S DEVELOPING ARTICLE III STANDING JURISPRUDENCE, SEDLIK MUST SHOW THAT HE SUFFERED CONCRETE HARM IN ORDER TO HAVE ARTICLE III STANDING TO PURSUE HIS INFRINGEMENT CLAIMS**

Article III of the U.S. Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const., Art. III, § 2. To sue in federal court under Article III, the U.S. Supreme Court has long held that the plaintiff, as the party invoking federal jurisdiction, must have a "personal stake" in the litigation—in other words, standing. *See Baker v. Carr*, 369 U.S. 186, 204 (1962).

To establish Article III standing, the plaintiff must show—for each claim asserted and each form of relief sought—(1) that he or she suffered an injury in fact, (2) a causal connection between that injury and the defendant's conduct at issue, and (3) that a favorable judicial decision will likely redress that injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

A.    **Only Plaintiffs Who are Concretely Harmed by a Violation of Statutory Rights Have Article III Standing to Assert Claims in Federal Court**

It is the first element of the standing test—the "injury in fact" requirement—that is relevant in this case and that likely bars Sedlik's copyright infringement claims. In June 2021, the United States Supreme Court held, in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), that plaintiffs asserting federal statutory claims must demonstrate they have suffered a "concrete injury" in order to establish injury

3

in fact for the purposes of Article III standing. Reversing a decision of this Circuit, the Supreme Court invoked its prior Article III standing jurisprudence, including *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and held that only those plaintiffs who are *concretely harmed* by a defendant's statutory violation may have standing to recover damages in federal court. *See TransUnion*, 594 U.S. at 424. Applying that rule, the *TransUnion* Court held that a plaintiff lacked Article III standing to assert claims for statutory damages under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (2018), for defendant's failure to use reasonable procedures to ensure the accuracy of credit files. The *TransUnion* Court emphasized that "under Article III, an injury in law is not an injury in fact." And for that reason, Congress "may not simply enact an injury into existence." 594 U.S. at 427. Rather, Article III standing requires that plaintiff show a cognizable injury arising from the claimed violation of plaintiff's statutory rights: "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis in original); *see also id.* at 431 ("Every class member must have Article III standing in order to recover individual damages."). The Court summarized its holding in the pithiest terms: "No concrete harm, no standing." *Id.* at 417, 442.

4

### B. *TransUnion* Applies to Copyright Claims

Although *TransUnion* did not involve copyright claims, the decision's rationale—that Congress cannot legislate an injury sufficient to create Article III standing, but, rather, that the plaintiff must show that it has suffered a concrete harm connected to the claimed statutory violation—applies to copyright as it does to all statutorily-created rights. *Cf. id*. at 447-48 (Thomas, J., dissenting) (analogizing copyright and patent claims to the claims dismissed for lack of standing in *TransUnion*).

## II. THERE IS SUBSTANTIAL REASON TO DOUBT WHETHER SEDLIK HAS ARTICLE III STANDING UNDER *TRANSUNION* TO ASSERT HIS COPYRIGHT INFRINGEMENT CLAIMS

*TransUnion* is a relatively recent decision, and its full import for Article III standing in copyright cases is not yet clear. There is reason, however, to be skeptical that copyright infringement claims like Sedlik's, unsupported by any evidence that the infringement caused monetary harm, can survive *TransUnion*. Fortunately, this Court can avoid the constitutional questions surrounding whether Sedlik can establish Article III standing by upholding the jury's factually-supported and legally-sound determinations of non-infringement—i.e., that defendant Von D's social media "Process Posts"[2] were fair use, and that Von D's

---

[2] *See* Appellee's Answering Brief at 23.

other uses, including the tattoo itself, were not substantially similar to, and therefore did not infringe, Sedlik's photograph.

### A. Copyright Infringement—Standing Alone and Unlinked to any Form of Monetary Harm—Is Likely Not a "Concrete Injury" Sufficient to Support Article III Standing

The *TransUnion* Court specified the types of harms that can qualify as the concrete harm required to establish Article III standing. "The most obvious" harms that qualify, the Court noted, "are traditional tangible harms, such as physical harms and monetary harms." 594 U.S. at 425. The Court noted that various intangible harms could also qualify as "concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion," as well as "harms specified by the Constitution itself,"[3] and "emotional or psychological harm." *Id.* The *TransUnion* Court classed these harms as among those "traditionally recognized as providing a basis for a lawsuit in American courts," *id*. at 417, 427.

---

[3] As examples of "harms specified by the Constitution itself," the *TransUnion* Court referred to two cases cited in *Spokeo*, 578 U. S. at 340, involving First Amendment violations—*Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (abridgment of free speech), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (infringement of free exercise). *See TransUnion*, 594 U.S. at 425. Unlike the First Amendment, which establishes speech and free exercise rights the infringement of which is a harm, U.S. Const. Art. I, § 8, Cl. 8, which provides Congress with the authority to legislate on the subject of copyrights and patents, does not itself establish rights.

One respected commentator has suggested that "history and tradition show that courts have long presumed that violations of IP rights cause harm, sufficient to sustain at least an award of nominal damages (or in the case of copyright, statutory penalties)." Thomas F. Cotter, *Standing, Nominal Damages, and Nominal Damages "Workarounds" in Intellectual Property Law after* TransUnion, 56 U. CALIF. DAVIS L. REV. 1085, 1091 (2023). But the continuing vitality of such a presumption, at least in the copyright context, is doubtful.

The Supreme Court's decision in *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388 (2006), is one source of that doubt. In *eBay*, a patent case, the Supreme Court rejected the "general rule ... that a permanent injunction will issue once infringement and validity have been adjudged," 547 U.S. at 393-94 (internal quotation omitted). The *eBay* Court further held that to qualify for any form of injunctive relief, the plaintiff was required to establish, as the first factor in a four-factor equitable analysis, that the defendant's infringement of plaintiff's patent would lead to irreparable injury. *Id.* at 391.[4] *See also Winter v. Natural Resources*

---

[4] Although *eBay* was a patent case, the Court made clear that its rule prohibiting any presumption of irreparable harm applied also in copyright cases. *eBay*, 547 U.S. at 392-93 ("And as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been

*Defense Council,* 555 U.S. 7, 22 (2008) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (internal citations omitted; emphasis in original).

Crucially, the *eBay* Court specifically rejected the argument that a defendant's infringement of plaintiff's patent, without a showing of some other form of harm, could serve as the irreparable harm required for an injunction to issue. *See eBay*, 547 U.S. at 392–93 (rejecting Federal Circuit's prior rule that the "statutory right to exclude alone justifies [a] general rule in favor of permanent injunctive relief."). *See also TD Bank N.A. v. Hill*, 928 F.3d 259, 280 (3d Cir. 2019) ("Even though TD Bank does not sell, license, or even use the infringed work and has no intention of ever doing so, it persuaded the District Court that Hill's supposed continuing infringement irreparably harmed the Bank by depriving it of the 'right to not use the copyright.' We disagree. Neither the prospect of continued infringement nor the 'right to not use' a copyright establish irreparable harm.") (internal citation omitted); *id.* (a "right not to use the copyright" is "little

infringed.") (*citing Dun v. Lumbermen's Credit Ass'n*, 209 U.S. 20 (1908), and *N.Y. Times Co. v. Tasini*, 533 U.S. 483 (2001). This Court, as well, has applied *eBay* to copyright cases. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc*., 654 F.3d 989, 995–96 (9th Cir. 2011).

more than a rephrasing of the right to exclude, which *eBay* held did not justify a presumption of irreparable harm.").

If harm caused by violation of the copyright owner's right to exclude is not generally *presumed* to be irreparable, then absent some showing that such harm is irreparable in a particular case, it is, by hypothesis, reparable by money damages—if it is harm at all. As a consequence, copyright infringement qualifies as harm, in the ordinary case, because it is *linked to some monetary harm*—as it must be to be compensable by money damages. Again, the *TransUnion* Court held that Congress "may not simply enact an injury into existence," and the Court emphasized that "[f]or standing purposes … an important difference exists between (i) a plaintiff 's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff 's suffering concrete harm because of the defendant's violation of federal law." *TransUnion*, 594 U.S. at 426. If, in a particular copyright infringement case, infringement *is not* in fact linked to monetary harm, then it is not an injury in fact for the purposes of Article III standing. Rather, it is a mere "legal infraction" that the federal courts lack power to remedy:

> Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court. As then-Judge Barrett succinctly summarized, "Article III grants federal courts the

power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."

*TransUnion*, 594 U.S. at 426-27 (*quoting Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (Barrett, J.)).

In this case, Sedlik has produced no credible evidence that he suffered any monetary harm, such as lost sales or lost licensing opportunities. *See* Appellee's Answering Brief at 26-31. Which means that the only harm Sedlik can rely on to undergird Article III standing is Von D's (alleged) infringement, standing alone, of his copyright. One could perhaps argue that because copyright infringement is often—albeit not always—linked to monetary damage, Sedlik's allegations of infringement should have been enough to raise at least an *initial* presumption of injury in fact. But because Article III limits federal courts to hearing only "cases and controversies," Article III standing is a jurisdictional question—one which defendants can raise at any point in the litigation, *see TransUnion*, 594 U.S. at 431 ("A plaintiff must demonstrate standing with the manner and degree of evidence required at the successive stages of the litigation.") (internal quotation and citation omitted), and which courts can raise sua sponte as well. *Frank v. Gaos*, 586 U.S. 485, 492 (2019) ("We have an obligation to assure ourselves of litigants' standing under Article III. That obligation extends to court approval of proposed class action settlements.") (internal quotation and citation omitted). This means that

even if Sedlik enjoyed an initial presumption of injury in fact, he lost the benefit of that presumption—and lost standing to sue—because Von D contested whether Sedlik has in fact suffered a concrete harm,[5] and Sedlik failed to produce evidence of monetary harm linked to the infringement.[6]

---

[5] Von D contested harm when she interposed fair use defenses to Sedlik's infringement claims. The fourth statutory fair use factor inquires into "the effect of the [defendant's] use upon the potential market for or value of the [plaintiff's] copyrighted work." 17 U.S.C. § 107(4).

[6] Sedlik could have established Article III standing if he demonstrated the likelihood of some monetary harm, even if that harm could not be valued with precision. Courts have held that uncertainty about the amount of damages due to copyright infringement does not ordinarily preclude recovery: Under conditions of uncertainty regarding the amount of damages, courts will strive to make the best possible estimate. *See, e.g., Stevens Linen Associates, Inc. v. Mastercraft Corp.*, 656 F.2d 11, 14 (2d Cir. 1981) ("In establishing lost sales due to sales of an infringing product, courts must necessarily engage in some degree of speculation."); *Brewer v. Hustler Mag., Inc.*, 749 F.2d 527, 529 (9th Cir. 1984) ("The jury was properly instructed not to award speculative damages, and the amount that they returned is within a range supported by the record."). Courts have not, however, permitted recovery when the amount of damages is not simply uncertain, but rather purely speculative. *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 513 (9th Cir. 1985) ("In a copyright action, a trial court is entitled to reject a proffered measure of damages if it is too speculative.").

**B.      Because Sedlik's Copyright Claims Do Not Involve Literal Or Close Copying, History and Tradition Offer Little Support for a Presumption of Article III Standing**

None of Sedlik's infringement claims allege that Von D copied his photograph verbatim, or nearly so. Rather, all of Sedlik's claims allege that Von D incorporated Sedlik's photograph with other expression, and that she recast, transformed, or adapted Sedlik's photograph in various ways that created new works. *See* Appellee's Answering Brief at 17-25 (detailing various uses and works created). *See also* 17 U.S.C. § 101 (defining a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be *recast, transformed, or adapted*. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'") (emphasis added).

It is doubtful whether a presumption of harm should apply at all to copyright claims, like Sedlik's, that do not involve the reproduction and distribution of a copyrighted work as such, but rather its use in a derivative work. The *TransUnion* Court stated that "history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider," *TransUnion*, 594 U.S. at 424. But infringement claims for the creation of an unauthorized derivative work

12

were not provided by early U.S. copyright law, and in fact are a relatively recent

Congressional creation. As a consequence, history and tradition provide less

support for any presumption of injury in fact attaching to this particular type of

copyright claim.

U.S. copyright law did not initially include any express prohibition on

adapting copyrighted works, as opposed to making verbatim copies of copyrighted

works.[7] The Act of 1790 provided the author or subsequent owner of copyright in

"any map, chart, book or books" with "the sole right and liberty of printing,

reprinting, publishing and vending such map, chart, book or books." § 1, 1 Stat.

124. The exclusive rights to print, reprint, publish, and vend (which appeared again

in the 1831 Act, Ch. 16, § 1, 4 Stat. 436) were generally understood to prohibit

only verbatim copying. And so an unauthorized German translation of *Uncle

Tom's Cabin* was held not to infringe Harriet Beecher Stowe's copyright in her

English-language original. *Stowe v. Thomas*, 23 F. Cas. 201 (C.C.E.D. Pa. 1853).

*But cf. Folsom v. Marsh*, 9 F. Cas. 342 (C.C. Mass. 1841) (applying copyright to

partial and inexact copying while simultaneously articulating the concept of fair

use).

---

[7] The following historical account is drawn from Restatement of the Law,
Copyright, Tentative Draft No. 5, § 6.03, Comment *b* (2024).

13

The first express, but narrow, statutory reference to rights that would now be classified as derivative-work rights appeared in the 1870 Act, which provided that "authors may reserve the right to dramatize or translate their own works." The Act of 1891 revised this to provide that "authors or their assigns shall have exclusive right to dramatize and translate any of their works for which copyright shall have been obtained under the laws of the United States." Ch. 565, § 4952, 26 Stat. 1107. The list of rights was expanded in the 1909 Act to include, in addition to the rights to "print, reprint, publish, copy, and vend," the rights to "translate the copyrighted work into other languages or dialects or to make any other version thereof, if it be a literary work; to dramatize it if it be a nondramatic work; to convert it into a novel or other nondramatic work if it be a drama; to arrange or adapt it if it be a musical work; to complete, execute, and finish it if it be a model or design for a work of art." 1909 Copyright Act, Act of March 4, 1909, 35 Stat. 1075, as codified at 17 U.S.C. § 1(a)-(b) (1909). The Copyright Act of 1976 consolidated all of the above and expanded it into the current broad derivative work right. 17 U.S.C. § 106(2). This broader right converged with an expanding judicial understanding of the reproduction right, 17 U.S.C. § 106(1), to cover acts beyond verbatim copying. H.R. Rep. No. 1476, 94th Cong., 2d Sess. 61 (1976) ("As under the present law, a copyrighted work would be infringed by reproducing it in whole or in any substantial part, and by duplicating it exactly or by imitation or simulation. Wide

14

departures or variations from the works would still be an infringement as long as the author's 'expression' rather than merely the author's 'ideas' are taken.").

Aside from the relative novelty of the broad derivative work right found in the 1976 Copyright Act, infringement claims of this sort have a more uncertain relationship to harm. If a derivative is close enough to the original that it competes with it, or perhaps preempts a product or licensing market that the author might otherwise plan to enter, then the derivative work at issue may harm the original author. In such an instance, if the copyright law did not reach conduct in this category, we might fear overall harm to author incentives to create. However, if—as is the case here—the derivative "is not closely similar to the original, does not compete with it for audience patronage, and does not preempt a market that the original rightsholder realistically is positioned to exploit, then the existence of the derivative is unlikely to harm the original author." *See* Christopher Sprigman, *Copyright and the Rule of Reason*, 7 J. ON TELECOMM. & HIGH TECH L. 317, 320 (2009).

Because of the tenuousness of the link between the creation of unauthorized derivative works and monetary harm to the copyright owner, there is less reason to accord a presumption of harm to this kind of copyright claim, and more reason to require plaintiffs like Sedlik to provide evidence of concrete harm, as *TransUnion* requires. Copyright law already provides an opportunity to consider the existence

and degree of harm—that is the role of the fourth statutory fair use factor—and therefore the Court can avoid the constitutional questions that attend Article III standing here.

III.   **CONCLUSION**

For the reasons stated, this Court should affirm.

Respectfully submitted,

Dated: December 23, 2024

/s/ *Christopher Sprigman*
Christopher Sprigman
Murray and Kathleen Bring Professor of Law
Co-Director, Engelberg Center for Innovation Law and Policy
New York University School of Law
40 Washington Square South
New York, NY 10012
(212) 992-8162
Christopher.Sprigman@nyu.edu

## CERTIFICATE OF COMPLIANCE

I, Christopher Sprigman, certify that the foregoing brief *amicus curiae* complies with the word limit of Fed. R. App. P. 29(a)(5) because it contains **3706 words**, excluding the items exempted by Fed. R. App. P. 32(f). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: December 23, 2024

/s/ *Christopher Sprigman*
Christopher Sprigman

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I further certify that to my knowledge all participants in the case are registered CM/ECF users so service on them will be accomplished through the appellate CM/ECF system.

Dated: December 23, 2024 /s/ *Christopher Sprigman*
Christopher Sprigman