**No. 24-3367**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

JEFFREY B. SEDLIK,

*Plaintiff-Appellant*,

v.

KATHERINE VON DRACHENBERG, KAT VON D, INC., HIGH
VOLTAGE TATTOO, INC.,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-01102
Hon. Dale S. Fischer

---

### APPELLANT'S REPLY BRIEF

---

Robert E. Allen
Jason C. Linger
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

William F. Patry
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000

*Attorneys for Plaintiff-Appellant Jeffrey B. Sedlik*

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......................................................................................1

II. ARGUMENT...........................................................................................3

    A.    The Court Should Find Substantial Similarity as a Matter of Law.......4

        1.    The Extrinsic Test is Met Based on the Overwhelming Similarities of the Works. .........................................................5

        2.    Under the Intrinsic Test, Defendants Identify No Difference in the "Concept and Feel" of the Works. ......................................11

        3.    Defendants' Red Herring Arguments Should Be Rejected. .....12

    B.    The Court Should Reject Defendants' Fair Use Defense. ..................16

        1.    The Court Addresses Fair Use De Novo. ...............................16

        2.    Defendants Failed to Meet Their Burden on Fair Use..............18

            a.    Factor 1: Transformative Nature and Commerciality ....18

            b.    Factors 2 & 3: Nature of Copyrighted Work & Amount and Substantiality Used ..................................................21

            c.    Factor 4: Actual and Potential Market Harm, Including to Derivative Market........................................................22

    C.    The Jury Instructions Were Erroneous...........................................27

        1.    Sedlik Did Not "Waive" His Objections to the Jury Instructions...........................................................................27

        2.    The Jury Instructions Were Incompatible with *Google*............30

    D.    The District Court Erred in Excluding Sedlik's Testimony................31

III. CONCLUSION.......................................................................................33

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) ........................................................................21

*Air-Sea Forwarders, Inc. v. Air Asia Co.*,
880 F.2d 176 (9th Cir. 1989) ..........................................................................29

*Antonick v. Elec. Arts, Inc.*,
841 F.3d 1062 (9th Cir. 2016) .....................................................................5, 11

*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 (9th Cir. 2021) ............................................................... 4, 11, 12

*Claiborne v. Blauser*,
934 F.3d 885 (9th Cir. 2019) ..........................................................................18

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*,
111 F.4th 125 (1st Cir. 2024) .........................................................................31

*Deland v. Old Republic Life Ins. Co.*,
758 F.2d 1331 (9th Cir. 1985) ........................................................................28

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986) ........................................................................28

*Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*,
2021 WL 3721438 (9th Cir. Aug. 23, 2021) ...................................................30

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*,
983 F.3d 443 (9th Cir. 2020) ..........................................................................23

*Dupree v. Younger*,
598 U.S. 729 (2023)........................................................................................17

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
122 F.3d 1211 (9th Cir. 1997) .......................................................................7, 9

*Est. of Saunders v. C.I.R.*,
745 F.3d 953 (9th Cir. 2014) ..........................................................................33

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986) .......................................................... 7, 11, 17

*Frye v. CSX Transportation, Inc.*,
933 F.3d 591 (6th Cir. 2019) ...................................................................29

*Google LLC v. Oracle Am. Inc.*,
593 U.S. 1 (2021)............................................................................ 16, 18, 28

*Gray v. Hudson*,
28 F.4th 87 (9th Cir. 2022) .......................................................................5

*Great Minds v. Office Depot, Inc.*,
945 F.3d 1106 (9th Cir. 2019) ...............................................................26

*Greenlaw v. United States*,
554 U.S. 237 (2008)................................................................................33

*Griner v. King*,
104 F.4th 1 (8th Cir. 2024) .............................................................. 24, 30

*Hanagami v. Epic Games, Inc.*,
85 F.4th 931 (9th Cir. 2023) ...................................................................15

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
471 U.S. 539 (1985)............................................................................7, 22

*In re Bard IVC Filters Prod. Liab. Litig.*,
969 F.3d 1067 (9th Cir. 2020) ................................................................17

*Kelley v. Morning Bee, Inc.*,
2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) ..........................................19

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) ..................................................................25

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
676 F.3d 841 (9th Cir. 2012) ....................................................................7

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522 (9th Cir. 2008) ..................................................................20

*Leonard v. Stemtech Int'l Inc.*,
834 F.3d 376 (3d Cir. 2016) ...................................................................32

*Liu v. Price Waterhouse LLP*,
    182 F. Supp. 2d 666, 673 (N.D. Ill. 2001), *aff'd*, 302 F.3d 749 (7th Cir.
    2002) ........................................................................................................26

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
    922 F.3d 946 (9th Cir. 2019) ....................................................................9

*Mattel, Inc. v. MGA Ent., Inc.*,
    616 F.3d 904 (9th Cir. 2010) ....................................................................5

*Matter of York*,
    78 F.4th 1074 (9th Cir. 2023) .................................................................27

*McGillvary v. Netflix, Inc.*,
    2024 WL 3588043 (C.D. Cal. July 30, 2024) .........................................19

*McGucken v. Pub Ocean Ltd.*,
    42 F.4th 1149 (9th Cir. 2022) ......................................................... 4, 17, 23

*Medtronic, Inc. v. White*,
    526 F.3d 487 (9th Cir. 2008) ..................................................................27

*Monge v. Maya Mags., Inc.*,
    688 F.3d 1164 (9th Cir. 2012) ......................................................... 13, 16, 30

*Muhammad-Ali v. Final Call, Inc.*,
    832 F.3d 755 (7th Cir. 2016) ....................................................................6

*Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*,
    361 F.3d 312 (6th Cir. 2004) ..................................................................15

*Olson v. NBC*,
    855 F.2d 1446 (9th Cir. 1988) ..............................................................5, 11

*Ortiz v. Jordan*,
    562 U.S. 180 (2011) ................................................................................17

*Patel v. Penman*,
    103 F.3d 868 (9th Cir. 1996) ..................................................................18

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) .....................................................................15

*Ray v. Ropes & Gray LLP*,
    799 F.3d 99 (1st Cir. 2015) .....................................................................29

iv

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) .............................................................. 10, 13

*Rogers v. Koons*,
960 F.2d 301 (2d Cir. 1992) ...................................................... 6, 9, 14, 23

*Schneider v. YouTube, LLC*,
674 F. Supp. 3d 704 (N.D. Cal. 2023).........................................................26

*Segrets, Inc. v. Gillman Knitwear Co.*,
207 F.3d 56 (1st Cir. 2000).........................................................................6

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
81 F.2d 49 (2d Cir. 1936) ...........................................................................7

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (en banc) .....................................................4

*Spinelli v. NFL*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ...........................................................26

*Tattoo Art Inc. v. TAT Intern. LLC*,
498 F. App'x 341 (4th Cir. 2012).......................................................... 24, 32

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
953 F.3d 638 (9th Cir. 2020) .....................................................................25

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
715 F.2d 1327 (9th Cir. 1983) ...................................................................12

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
52 F.4th 1054 (9th Cir. 2022) .....................................................................4

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) .............................................................. 4, 7, 11, 12

*United States v. Frazier*,
387 F.3d 1244 (11th Cir. 2004) (en banc) .................................................32

*United States v. Gatling*,
96 F.3d 1511 (D.C. Cir. 1996)...................................................................32

*United States v. Graham*,
123 F.4th 1197 (11th Cir. 2024)................................................................32

v

*Warhol v. Goldsmith*,
  11 F.4th 26 (2d Cir. 2021) ........................................................ 4, 11, 13, 14

*Warhol v. Goldsmith*,
  598 U.S. 508 (2023)...................................................................... 9, 16, 19

*White v. Ford Motor Co.*,
  500 F.3d 963 (9th Cir. 2007) ....................................................................30

*Williams v. Gaye*,
  895 F.3d 1106 (9th Cir. 2018) ...................................................................10

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ....................................................................21

*Zhang v. Am. Gem Seafoods, Inc.*,
  339 F.3d 1020 (9th Cir. 2003) ....................................................................16

## STATUTES

17 U.S.C. § 107 ........................................................................................20

17 U.S.C. § 204 ........................................................................................26

## RULES

Fed. R. Civ. P. 50 ......................................................................................4

Fed. R. Evid. 103(b).................................................................................28

## I.     **<u>INTRODUCTION</u>**

Defendants' Answering Brief ("KVD-Br.") ignores the material facts and this Court's precedents.  Defendants, for example, never address the following admission made by Defendant High Voltage Tattoo, Inc. ("HVT"):



3-ER-509.  Above, prior to the litigation, HVT boasts to their millions of followers that Defendant Kat Von D ("KVD") had "traced directly from the actual photo," and that the Tattoo was "100% exactly the same as" the Photograph.

1

Now in litigation, Defendants devised a very different story to the jury and this Court. Defendants claim "[KVD's] goal is not to copy the photograph as closely as possible," and that KVD was allegedly "creating her own interpretation of Davis." KVD-Br., 12, 17. But copying someone else's photograph "100% exactly the same" is not "creating your own interpretation." KVD admitted that she was trying to make the Tattoo as accurate as possible. 2-ER-202. Copying "100%" is more than "substantial" under any definition.

Defendants would like this Court to forget about HVT, as they mention it only once. KVD-Br., 15. But HVT is KVD's corporation that operated the shop where the Tattoo was made. Defendants falsely claim that "Kat Von D post[ed]" all 15 posts. HVT, not KVD, published 5 of the posts on HVT's commercial social media accounts. 2-ER-201, 2-ER-221, FER-16.

Defendants do not dispute that their uses are derivative works of the Photograph. This significantly undermines their substantial similarity and fair use arguments. Nor do Defendants respond to this Court's precedent in *Fisher*, *Bell*, *ERG*, *Worldwide Church*, or *Monge*. These cases demonstrate that (1) Defendants'

2

derivative works are substantially similar to the Photograph, and (2) Defendants'

extensive uses over a *three-year* period were not fair use.[1]

If admitted "100%" copying of a highly creative photograph entitled to

broad copyright protection does not result in infringement, then copyright law has

ceased to exist. Brief of Tattoo Artists (Dkt. #22) ("Tattooists-Br."), 6 ("[I]f this

tattoo is not copyright infringement, then no tattoo is."). The result below "sends a

message from the tattoo community to everyone else in the creative community:

we can take your work for free" and "the courts will do nothing to protect you."

*Id.*, 26-27.

The Court should reverse and grant judgment to Sedlik on the issues of

substantial similarity and fair use, remanding only for a jury to calculate damages.

## II.   ARGUMENT

The district court made numerous legal errors, including: (1) declining to

grant judgment to Sedlik on substantial similarity; (2) not rejecting Defendants'

fair use defense; (3) submitting erroneous jury instructions asking the jury to

decide issues that were already resolved as a matter of law and which Defendants

now concede weigh against fair use; and (4) excluding Sedlik's testimony,

---

[1] Defendants posted the Tattoo and Photograph to social media at least 12 times in 2017, twice in 2018, and once in an Instagram video in 2019. 3-ER-468–79, 3-ER-481–82, 3-ER-484, 3-ER-510–12.

including on market harm, the most important fair use factor. Defendants fail to raise any material factual disputes on any issue. *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1164 (9th Cir. 2022) (reversing finding of fair use, and directing district court to enter judgment for copyright owner, "[b]ecause no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts").

## A.    The Court Should Find Substantial Similarity as a Matter of Law.

Sedlik moved for JMOL under both Rule 50(a) and 50(b) on the issue of substantial similarity. 1-SER-119, 1-ER-3. Defendants concede that this Court reviews substantial similarity de novo. KVD-Br., 40; *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1063 (9th Cir. 2022).

Substantial similarity can be determined as a matter of law, removing the issue entirely from the jury. *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1076 (9th Cir. 2021); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017);[2] *Warhol v. Goldsmith*, 11 F.4th 26, 53 (2d Cir. 2021).[3]

---

[2] Defendants claim that this Court overruled *Unicolors* in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc). KVD-Br., 46-48. Not true. *Skidmore* overturned the "inverse ratio rule," and doesn't cite *Unicolors*. This Court has relied on *Unicolors* post-*Skidmore*. *Bell*, 12 F.4th at 1080.

[3] Defendants falsely contend that *Warhol* applied the "more discerning observer" test. KVD-Br., 50 n.7. *Warhol* "reject[ed]" that test and applied the same "ordinary observer" test used in *Rentmeester*. *Warhol*, 11 F.4th at 53.

After a jury trial, courts may determine substantial similarity under *both* the extrinsic and intrinsic tests. *This Court has reversed jury verdicts on both tests.* *Olson v. NBC*, 855 F.2d 1446, 1453 (9th Cir. 1988) (reversing jury verdict of substantial similarity on both extrinsic and intrinsic tests); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 911 (9th Cir. 2010) (reversing jury verdict on substantial similarity, without specifying the test); *Gray v. Hudson*, 28 F.4th 87, 102 (9th Cir. 2022) (reversing jury verdict on extrinsic test); *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1066 (9th Cir. 2016) (reversing jury verdict on intrinsic test).

The Court should do the same here.

### 1. The Extrinsic Test is Met Based on the Overwhelming Similarities of the Works.

The extrinsic test is indisputably met given the uncontested and extensive similarities between the Photograph and Defendants' derivative works. Defendants admitted they traced and copied the Photograph at every step in making the Tattoo, and that the Tattoo was "100% exactly the same as" the Photograph. 2-ER-208, 2-ER-220, 3-ER-510. KVD conceded that the key expressive elements—"pose," "perspective," "fingers," "lighting direction,"

"shadows," and "highlights"—all matched the Photograph. 2-ER-217–22.[4] As

seen below, the similarities are overwhelming:



3-ER-508.

Defendants' explicit admissions prove substantial similarity. *Muhammad-

Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) (finding substantial

similarity where defendant admitted works were "virtually identical"); *Segrets, Inc.

v. Gillman Knitwear Co.*, 207 F.3d 56, 65 (1st Cir. 2000) (same, based on

defendant employee's concession of "major[]" similarities between works); *Rogers

v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (same, artist stated "the creation must

be designed 'as per photo'").

---

[4] Defendants wrongly assert Sedlik takes the position that "proof of copying is sufficient to establish unlawful appropriation." KVD-Br., 13. Nothing in Sedlik's Opening Brief ("Op.-Br.") takes that position.

"No plagiarist can excise the wrong by showing how much of his work he did not copy." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) (Hand, J.). Judge Hand has been quoted in many cases where defendants seek to get off the hook by pointing to trivial dissimilarities. *See, e.g.*, *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985). Here, Defendants point to slight differences between the Photograph and Tattoo, such as the "hair," "veins," and "wrist." KVD-Br., 21-22, 51-55. From this, Defendants assert that there are "multiple triable issues of fact on substantial similarity." *Id.*, 39. But identifying slight differences does not undermine substantial similarity or create "factual" disputes. *Unicolors*, 853 F.3d at 985; *Fisher v. Dees*, 794 F.2d 432, 434 & n.2 (9th Cir. 1986) (finding substantial similarity as a matter of law, despite addition of new lyrics); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 851 (9th Cir. 2012) (when similarity is shown, dissimilarities are "entirely immaterial"). The test for infringement is called "substantial similarity," rather than "substantial dissimilarity," for a reason.

Substantial similarity depends on the resulting expression, not the method of copying. KVD's copying of the Photograph to a new medium, though "difficult and intricate," is an infringement. *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1222 (9th Cir. 1997) ("*ERG*") (changing medium from two-dimensional drawing to three-dimensional costume was infringing). The

7

Photograph is not a casual snapshot; it is a carefully composed, expressive

creation. 2-ER-180. Sedlik, for example, intentionally positioned Davis's fingers

to symbolize a cascade of musical notes—a unique expressive detail that the

Tattoo replicates precisely. 2-ER-361. Such deliberate artistic choices constitute

protectable expression, not general ideas.

Defendants selectively discuss a handful of the social media posts,

describing them as mere "progress" or "process" posts. KVD-Br., 51-55. Yet

Defendants published the finished Tattoo in 8 posts, such as:



3-ER-477; *see also* 3-ER-472–74, 3-ER-478–79, 3-ER-481–82. These are all substantially similar to the Photograph. The "progress" posts are also substantially similar because they include the Photograph itself or show a cropped or incomplete version of the Tattoo. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 954 (9th Cir. 2019) (cropping is not a "real difference").

KVD acknowledged that the "differences" were driven by functional constraints inherent in tattooing due to her client's anatomy and limitations of skin as a medium, not original expression. FER-7, 1-SER-80. Functional differences, necessitated by replicating a work in a different medium, do not obviate substantial similarity. *ERG*, 122 F.3d at 1222 (courts must disregard such "functional or mechanical considerations"). All derivative works—such as a book to a movie— have differences as a result of a change in medium. *Warhol v. Goldsmith*, 598 U.S. 508, 541 (2023). Thus, "[s]ubstantial similarity does not require literally identical copying of every detail. … small changes here and there made by the copier are unavailing. It is only where the points of dissimilarity exceed those that are similar … that a finding of no infringement is appropriate." *Rogers*, 960 F.2d at 308.

The differences alleged by KVD are "small," "unavailing," and certainly do not "exceed" the points of similarity. The "[T]attoo is as identical to the underlying reference as any tattoo can be," "a knock-off unchanged except for its

9

underlying medium." Tattooists-Br., 11, 13. These are experienced tattooists fully capable of appreciating all the supposed nuances claimed by Defendants.

Neither *Rentmeester* nor *Williams* compels a contrary conclusion. KVD-Br., 34, 49-50. *Rentmeester* involved only abstract ideas, rather than direct copying, and held that such "general ideas or concepts," such as a mid-air basketball dunk, are not protected. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018). The Court found "stark differences" between the works, including setting, foreground, background, lighting, and position of elements. *Id.* at 1121-23. Here, there are no "stark differences" between the works, as the visual comparison confirms. 3-ER-508. Defendants copied "100%" of Sedlik's protected expression.

*Williams* was a musical composition case involving a battle of experts at trial. *Williams v. Gaye*, 895 F.3d 1106, 1127 (9th Cir. 2018). There was no evidence of direct copying, and the jury found that the compositions were substantially similar. *Id.* A split panel of this Court declined to disturb that verdict after performing a dissection and filtering analysis applicable to musical composition cases. *Id.* at 1117, 1127-28.

Defendants directly copied protected expression, not merely general ideas or concepts. Any reasonable person would "instantly" "recogniz[e]" KVD's appropriation and find the works to be "near duplicates save for superficial

10

differences." *Fisher*, 794 F.2d at 434, n.2; *Unicolors*, 853 F.3d at 987; *Warhol*, 11 F.4th at 54. The extrinsic test is met as a matter of law.

### 2. Under the Intrinsic Test, Defendants Identify No Difference in the "Concept and Feel" of the Works.

Defendants fail to identify *any* difference in the "concept and feel" of the works. KVD-Br., 42-44. Unrebutted evidence confirmed they have the same aesthetic impression of melancholy and moodiness achieved through identical artistic choices. 2-ER-181–82, 2-ER-164. If the intrinsic test is considered, it is met as a matter of law.[5] Defendants offer no contrary evidence or argument for any different "concept and feel," and they could not, given their admission of "100%" copying. KVD-Br., 42-44.

Defendants argue that the intrinsic test is "designed for the jury," and that for this reason alone, the Court should not reverse it. KVD-Br., 44. But this Court has found substantial similarity as a matter of law, including regarding the intrinsic test. *Bell*, 12 F.4th at 1074; *Fisher*, 794 F.2d at 434 n.2. This Court has reversed a jury's application of the intrinsic test when the jury's findings contradict objective evidence. *Olson*, 855 F.2d at 1453; *Antonick*, 841 F.3d at 1066. Adopting

---

[5] *Unicolors* held that "[w]here the extrinsic similarity is so strong that the works are near duplicates save for superficial differences, … the court need not delve into a complex subjective analysis of the works" under the intrinsic test. *Unicolors*, 853 F.3d at 987.

11

Defendants' argument would mean that a district court could never grant summary judgment for a copyright owner. This Court has specifically rejected Defendants' argument, confirming that copyright owners are entitled to summary judgment when the works are overwhelmingly similar. *Unicolors*, 853 F.3d at 987; *Bell*, 12 F.4th at 1074; *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983).

Both the extrinsic and intrinsic tests are met as a matter of law. Defendants' emphasis on trivial differences arising from the changing medium cannot alter the undeniable fact that Defendants' uses substantially replicate the Photograph.

Alternatively, if the Court finds that the intrinsic test must be decided by a jury, in contravention of the authority cited above, the Court should find the extrinsic test to be met and remand only for the jury to decide the intrinsic test, as the verdict form does not state which test the jury found to be unsatisfied.

**3. Defendants' Red Herring Arguments Should Be Rejected.**

This Court should not ignore the evidence right in front of its own eyes or Defendants' various admissions. Defendants exaggerate the minor changes they made, ignore most of the social media posts, attempt to parse the Photograph into micro-aspects like Davis' veins and wrist, and wrongly attack Sedlik's credibility. KVD-Br., 40-55. Defendants' arguments are meritless and should be rejected out of hand.

12

First, Sedlik's copyright is in the Photograph, not Davis' veins or wrist. 2-ER-318. Sedlik had a vision for the work as a whole and created it as a whole, not as atomized parts. *Rentmeester*, 883 F.3d at 1119 ("What is protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements. If sufficiently original, the *combination* of subject matter, pose, camera angle, etc., receives protection, *not any of the individual elements standing alone*.") (emphasis added); *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012). It is precisely that whole—"100%" in their words—which Defendants brazenly copied.

Second, Defendants argue that Davis' "appearance" is not protectible. KVD-Br., 52. Of course not, but that was never an issue, nor could it be. Sedlik has never claimed any rights in Davis' physical features, just as Goldsmith could not claim any rights in Prince's features. *Warhol*, 11 F.4th at 53 ("even the most quintessentially expressive works, such as books or paintings, contain non-copyrightable ideas or concepts."). What Sedlik is claiming, and rightly so, is the copyright in his creative expression in the Photograph. It is undisputed that the Photograph is highly creative and entitled to broad protection. 1-ER-120.

Defendants further claim they chose the Photograph because it was "simple" and did not depict Davis with a trumpet. KVD-Br., 16-17. While there may be

13

thousands of photographs of Davis, none look remotely like Sedlik's. Here are a few in the record, including some without a trumpet:



3-ER-492. To argue that the Tattoo looks like the Photograph because it is "simple" or because it shows the same person is refuted by these other photographs. *Warhol*, 11 F.4th at 54 (finding substantial similarity though "Prince, like other celebrity artists, was much photographed"). The only "simple" thing here is that Defendants have no justification for their infringement.

Third, Defendants argue that the general idea of Davis making a "Shhh" gesture is an "unprotectible idea." KVD-Br., 52. Sedlik never asserted he has rights in any "Shhh" gesture. Anyone is free to make photographs, tattoos, or other works using a "Shhh" gesture. *Rogers*, 960 F.2d at 308 ("We recognize that ideas, concepts, and the like found in the common domain are the inheritance of

14

everyone. What is protected is the original or unique way that an author expresses those ideas, concepts, principles or processes."); *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942 (9th Cir. 2023) (combination of unprotected elements may be protected). But here, Defendants replicated precisely Sedlik's carefully composed, artistic creation, including the myriad artistic choices he made to create the Photograph. 2-ER-180.[6]

Finally, Defendants wrongly challenge Sedlik's credibility. Substantial similarity "rarely, if ever, involves questions of credibility." *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 321 (6th Cir. 2004); *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65-66 (2d Cir. 2010). This Court has never considered credibility for purposes of substantial similarity, and Defendants' attempt to manufacture a credibility issue should be rejected.

In sum, Defendants cannot argue a lack of substantial similarity, any more than Koons could claim that his 3D sculpture involved different process steps than Rogers' black-and-white photograph. Op.-Br., 2, 32, 38 (images of various derivative works). "[T]he owner has a right to derivative transformations of her

---

[6] In the typical "Shhh" gesture, the secondary fingers are curled tightly against the palm. But that's not what is depicted in the Photograph. Sedlik approached Davis and positioned Davis' fingers into a unique, entirely unnatural position to symbolize a progression of musical notes. 2-ER-361.

15

work.  Such transformations may be substantial, like the adaptation of a book into a movie."  *Warhol*, 598 U.S. at 529.  Defendants may wish to ignore the man behind the curtain, but he is there for all to see.  There is no doubt the Photograph is highly creative and that Defendants copied Sedlik's original, protected expression.  The works are substantially similar as a matter of law.

### B.    The Court Should Reject Defendants' Fair Use Defense.

### 1.    The Court Addresses Fair Use De Novo.

Defendants concede that "fair use is a legal question for judges to decide de novo."  *Google LLC v. Oracle Am. Inc.*, 593 U.S. 1, 23-24 (2021); KVD-Br., 69.

The jury was solely tasked with making a legal determination on a general verdict form without any subsidiary factual questions.  1-ER-61–62.  As a result, there are no "facts" to defer to.  Defendants falsely refer to a "special verdict," but the jury issued a general verdict.  *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003) (special verdicts "comprise only factual findings," not legal conclusions, which are a general verdict).  The Court can review all of the jury's fair use verdicts because multiple, general verdicts may be reviewed.  *Id.*

This Court should decide fair use based on the undisputed facts, just as it has done in every case before.  *Monge*, 688 F.3d at 1171 (this court has decided "countless cases involving the fair use doctrine").  Defendants argue that Sedlik cannot appeal the summary judgment order, citing *Ortiz v. Jordan*, 562 U.S. 180,

16

183-84 (2011).  But the Supreme Court has since held that summary judgment denials are reviewable for legal "issues that can be resolved without reference to any disputed facts," and for such issues, a Rule 50 motion is not required.  *Dupree v. Younger*, 598 U.S. 729, 735 (2023).  Before *Dupree*, this Court reached the same conclusion, finding that summary judgment denials on legal issues are reviewable even after a full trial on the merits.  *In re Bard*, 969 F.3d 1067, 1072 (9th Cir. 2020).  This case fits squarely within this precedent.

Here, the parties "dispute only the legal significance to be drawn from facts," not the material facts themselves.[7]  *McGucken*, 42 F.4th at 1158; *Fisher*, 794 F.2d at 436.  Both sides moved for summary judgment.  Defendants argued that there were no disputed facts.  FER-45–51.  Summary judgment should have been granted to Sedlik because Defendants failed to carry their burden on any of the fair use factors.  In their brief, Defendants fail to defend the district court's summary judgment decision.

Alternatively, the Court may review fair use through either: (1) the erroneous denial of Sedlik's motion for a new trial under Rule 59, which "is reversible if the [district] court made a mistake of law" (*Claiborne v. Blauser*, 934

---

[7] As discussed below, Defendants challenge the Vanegas license, which Defendants call a "sham."  KVD-Br., 28, 37.  But Defendants stipulated that the license was valid, and its terms are not in dispute.  1-ER-88, 3-ER-493–94.

17

F.3d 885, 893 (9th Cir. 2019)); or (2) the "plain error" standard (*Patel v. Penman*, 103 F.3d 868, 878-79 (9th Cir. 1996) (reviewing the denial of a Rule 50(b) motion for "plain error" when a Rule 50(a) motion is not made)). There are numerous "mistakes of law" and "plain errors" in the summary judgment and post-trial orders. Op.-Br., 12, 15-16.

The district court found that factors 2 and 3 weighed against fair use for all uses, which Defendants do not dispute (KVD-Br., 67), and that the Tattoo was not transformative under factor 1. Yet the district court wrongly found "factual" disputes on (1) transformative use for the social media posts, (2) commerciality for all uses, and (3) market harm for all uses. 1-ER-101–06. But these are all legal conclusions to be decided by the court based on the undisputed facts. *Google*, 593 U.S. at 24 ("[T]he ultimate question here is one of law, not fact."); Op.-Br., 46-55, 56-59. This Court should grant judgment to Sedlik on fair use.

### 2. Defendants Failed to Meet Their Burden on Fair Use.

#### a. Factor 1: Transformative Nature and Commerciality

None of Defendants' uses—the Tattoo and 15 social media posts—was transformative. Defendants do not challenge that none of their uses (1) targeted the Photograph through criticism or commentary of the Photograph, (2) extended beyond the creation of derivative works, or (3) had a "compelling" justification for

borrowing the Photograph, as required. *Warhol*, 598 U.S. at 515, 540-41.[8]

Rather, Defendants replicated the Photograph in the form of a derivative Tattoo

and then used it to promote themselves extensively to their fans, followers, and

potential customers on social media. 1-SER-110. As the district court held for the

Tattoo, "recasting a photograph into a different visual medium is not sufficiently

transformative." 1-ER-100.[9]

Defendants claim that their uses were transformative because they "show[]

Kat Von D in the process of creating a tattoo." KVD-Br., 62. This ignores

*Warhol*, which held that adding "significant creative contribution," alternative

meaning, or "important new expression," is not transformative. *Warhol*, 598 U.S.

at 541. An artist's "process," which all artists have, does not make their use

transformative because it does not have "critical bearing" or "shed light on" the

original work—the Photograph. *Warhol*, 598 U.S. at 510 & n.21 ("when

---

[8] *Warhol* states that "targeting" or "another compelling justification" for borrowing is required, and distinguishes between protected parody and unprotected satire on this basis. *Warhol*, 598 U.S. at 540. Justice Kagan's dissent confirms that, under the Court's holding, "absent that 'targeting,'" a derivative's "distinct messages make no difference." *Id.* at 591 (Kagan, J., dissenting).

[9] Defendants cite two decisions that do not apply *Warhol*'s transformative use standard. Both cases involved momentary use of copyrighted works in longer documentaries. *Kelley v. Morning Bee, Inc.*, 2023 WL 6276690 (S.D.N.Y. Sept. 26, 2023) (photos used in "0.18%" of a 140-minute documentary); *McGillvary v. Netflix, Inc.*, 2024 WL 3588043, at *8 (C.D. Cal. July 30, 2024) (use of interview clips in Netflix documentary).

commentary has no critical bearing on the substance or style of the original composition, ... the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish)"). Defendants present no authority permitting an infringer to copy a work to show their skill in making a "100%" copy.

Defendants' made-for-litigation explanation should be rejected for the additional reason that it does not apply to the Tattoo or the social media posts showing a fully-completed Tattoo. 3-ER-472–74, 3-ER-477–79, 3-ER-481–82. "[T]he subjective intent of the user" does not "determine the purpose of the use." *Warhol*, 598 U.S. at 544; *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008). None of Defendants' uses were transformative.

As to commerciality, there is no doubt that Defendants created the Tattoo as a means to engage with their followers and promote their brands. 1-SER-110. Defendants argue that their promotion was not commercial because KVD did not charge her client and the posts themselves do not contain direct advertisements. KVD-Br., 58-61. But the distinction in the statute is between uses of a "commercial nature" and those "for nonprofit educational purposes." 17 U.S.C. § 107. That no money changed hands between KVD and her client is of no consequence. Commerciality encompasses indirect commercial benefits, such as brand enhancement, follower engagement, and promotional value. *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir.

20

2000); *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) ("repeated and exploitative copying of copyrighted works, *even if the copies are not offered for sale*, may constitute a commercial use.") (emphasis added).[10]

Defendants' extensive social media exploitation of the Tattoo over a three-year period represents commercial activity. All of the posts promoted and tagged KVD and HVT, and the adjacent posts, no doubt seen by her millions of fans and followers, contained product offerings. Op.-Br., 51-53. KVD admitted she promotes herself on social media to direct her followers to purchase her products and services, including cosmetics, footwear, and books. 2-ER-224–29. HVT posted the Tattoo and Photograph to promote its service offerings—tattoos—to attract potential customers and boost their brand. 3-ER-477.

Defendants' exploitation of the Photograph was commercial and not transformative.

### b. Factors 2 & 3: Nature of Copyrighted Work & Amount and Substantiality Used

Defendants concede that factors 2 and 3 weigh against fair use for all uses. KVD-Br., 67. But the district court refused to inform the jury it had already determined that these factors weigh against fair use. In closing arguments,

---

[10] Ignoring *Worldwide Church*, Defendants cite various district court cases, but none involved corporate social media platforms where products were sold. KVD-Br., 59-60.

Defendants argued that factor 3 weighed "heavily in favor," "in favor" of fair use, or was "neutral." 2-ER-245–47. Defendants' statements were contrary to the legal rulings in the summary judgment and reconsideration orders, which found that these factors weighed against fair use for both the Tattoo and *all* of the social media posts. 1-ER-103, 1-ER-105. This skewed the entire fair use analysis and misled the jury.

### c. Factor 4: Actual and Potential Market Harm, Including to Derivative Market

Factor 4—"undoubtedly the single most important element of fair use"— weighs heavily against fair use. *Harper & Row*, 471 U.S. at 566. Sedlik's licensing history of the Photograph and other photographs is extensive. Op.-Br., 58. For decades, Sedlik has licensed the Photograph for T-shirts, paintings, advertising, album covers, television, statues, and magazines, and as an artist reference, including for a tattooist. 2-ER-144–55, 2-ER-185–90, 2-ER-162. Like other photographers, Sedlik's business relies on license fees from derivative uses of his photographs, and he is damaged when his photographs are exploited without license. 2-ER-189. Moreover, when Sedlik is deprived of attribution credit (3-ER-495), his ability to secure future licensing opportunities is undermined.[11]

---

[11] Amici Am. Soc. of Media Photographers et al. detail how Defendants' uses would cause widespread harm to photographers. Dkt. #20, 11-12.

This Court has found market harm under factor 4 under much weaker facts for the copyright owner. *McGucken*, 42 F.4th at 1158 (no evidence of past licensing by the copyright owner). That is because the analysis considers both harm to the *potential* licensing market of the copyrighted work, as well as the *derivative* market. *Monge*, 688 F.3d at 1181 (plaintiffs "could decide to sell the images for profit in the future"); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 460 (9th Cir. 2020) (derivative market harm where the owner "has already vetted and authorized multiple derivatives" of his work); *Rogers*, 960 F.2d at 312. Defendants' unauthorized, highly-publicized derivative uses impede Sedlik's ability to license his Photograph. If tattooists and social media influencers are permitted to use copyrighted photographs without license, the entire potential licensing market for commercial digital uses would be gutted. 2-ER-190. That is precisely the kind of market harm that factor 4 seeks to prevent.

Defendants, who carry the burden, utterly fail to disprove market harm. Defendants do not address the derivative market in which Sedlik "engaged extensively for decades." *ComicMix*, 983 F.3d at 460. Nor do Defendants address the harm if similar uses are carried out in "widespread or unrestricted fashion." *McGucken*, 42 F.4th at 1163. If carried out by others, the photography licensing market would be severely impacted.

23

Defendants misrepresent the record, stating that Sedlik "offered no evidence that he ever did license his photographs for [social media] uses." KVD-Br., 66. Sedlik offered extensive evidence that he licenses his Photographs for use on social media. 2-ER-190, ER-493–94, 3-ER-495, 3-ER-485–86. These licenses are in the record. 3-ER-495–500 (authorizing use "on social media"), 3-ER-505–07 ("web use"). Indeed, Defendants admitted at trial that Sedlik's licenses include provisions for the use of the Photograph on social media. FER-4 ([Defendants' Counsel]: "I can represent that Mr. Sedlik's licenses, whenever he licenses his photo as a reference, it says: You may use this as a reference and *you may use it on social media …*").

Defendants' view of the law is simple, and simply wrong. First, Defendants argue that tattooists "never" take licenses—in fact, they do (*Tattoo Art Inc. v. TAT Intern. LLC*, 498 F. App'x 341, 343-46 (4th Cir. 2012); 2-ER-255, 2-ER-258–76 (tattoo "flash" book))—and that KVD has received "compliment[s]" for using other people's works. KVD-Br., 17. But intent is not an element of copyright infringement, ignorance of the law is not an excuse, and tattooists are bound by the same law that applies to everyone else, as the district court found. 1-ER-130, 2-ER-284. "[T]he fact that everyone else is doing it" does not justify copyright infringement. *Griner v. King*, 104 F.4th 1, 10 (8th Cir. 2024).

24

Second, *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638 (9th Cir. 2020) and *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003), both decided before *Warhol*, are distinguishable. In *Tresóna*, the Court found a lack of market harm in the educational, non-profit performance of a snippet of a song by a high school choir because the use did not affect the market for the sheet music for the original song. Here, Sedlik has shown that licensing for derivative works, tattoos, and social media uses are all part of his business model. Thus, unlike *Tresóna*, there is clear potential for market substitution and harm, especially if others follow Defendants' example and copy photographs for promotion without paying.

In *Kelly*, the Court found that the use of small, low-resolution thumbnails in a search engine for functional indexing purposes did not cause market harm. 336 F.3d at 821. Unlike *Kelly*, the record here includes uncontroverted evidence about Sedlik's licensing business and damage to that market.

Finally, Defendants attack Sedlik's license with tattooist Bryan Vanegas. But the terms of the 2014 license agreement are not in dispute. 3-ER-493–94. The license was issued by Sedlik and received by Vanegas. FER-5, FER-24, 2-ER-159. Vanegas was required to provide attribution credit to Sedlik, and given various factors, Sedlik exercised his discretion to reduce the fee to gratis. 2-ER-198, FER-23. But, without any authority, Defendants call the license a "sham."

25

KVD-Br., 28, 37. The license is valid and enforceable, as Defendants stipulated at trial. 1-ER-88 ("THE COURT: You're not going to suggest that the [Vanegas] license isn't valid, are you? [Defendants' Counsel]: *Absolutely not.*").

Violating their stipulation, Defendants now attack the license because Vanegas did not sign it and it was retroactive. But a license "need not be signed by the author of the derivative work in order to be effective." *Liu v. Price Waterhouse LLP*, 182 F. Supp. 2d 666, 673 (N.D. Ill. 2001), *aff'd*, 302 F.3d 749 (7th Cir. 2002); 17 U.S.C. § 204. Sedlik received compensation through the credit requirement. *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1108 (9th Cir. 2019). Retroactive licenses by the rights holder are also valid. *Spinelli v. NFL*, 96 F. Supp. 3d 81, 123-24 (S.D.N.Y. 2015).[12]

Defendants' uses harmed Sedlik's actual, potential, and derivative markets.

\* \* \*

All four factors weigh against fair use as a matter of law.

---

[12] Defendants suggest there was no market harm because Sedlik did not file a DMCA takedown notice. KVD-Br., 31. The DMCA procedure applies to online service providers and is irrelevant. *Schneider v. YouTube, LLC*, 674 F. Supp. 3d 704, 719 (N.D. Cal. 2023). Sedlik did not "demand" that Defendants continue displaying the posts; he asked Defendants' agent to "preserve" copies so that they could be used as evidence. 1-ER-456.

## C.     The Jury Instructions Were Erroneous.

The district court held, at summary judgment and reconsideration, that the Tattoo was not transformative under the first factor, and that the second and third factors weighed against fair use for all uses.  1-ER-101–03, 1-ER-129.  The district court, however, not only submitted these legally-resolved issues to the jury, *but* also refused to inform the jury of its rulings on factors 2 and 3, *yet* informed them that the Tattoo was not transformative under factor 1.  1-ER-43–46.  This suggested to the jury that the other factors weighed in Defendants' favor and allowed Defendants' counsel to make arguments that were contrary to law.  2-ER-245–47.  Submitting legally-resolved issues to the jury was error.  *Matter of York*, 78 F.4th 1074, 1084 (9th Cir. 2023) ("Although the factual record has indeed changed by virtue of the subsequent trial, nothing about those new facts supplants those earlier pretrial legal rulings, which are therefore left undisturbed.").

In response, Defendants make two unpersuasive arguments:

### 1.     Sedlik Did Not "Waive" His Objections to the Jury Instructions.

Defendants argue that Sedlik's former counsel, in a pre-trial conference, stated that the fair use issue could to a jury.  KVD-Br., 68-69.  Defendants' argument fails for numerous reasons.

First, the time to make an objection to a jury instruction is on the record at trial, *Medtronic, Inc. v. White*, 526 F.3d 487, 495 (9th Cir. 2008), which Sedlik

27

repeatedly did. 2-ER-241, 2-ER-170, 2-ER-237. The Court ruled that it would not inform the jury about its findings with respect to factors 2 and 3. 2-ER-170, 1-ER-45–46. Defendants point to the parties' joint submission, but Defendants ignore the disputed portion proposed by Sedlik informing the jury about the district court's rulings and which the district court deleted. 1-SER-15. Plaintiff did not waive this issue.[13]

Second, the former counsel's remark is not binding because "[i]t is well-settled that a court is not bound by stipulations of the parties as to questions of law." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1477 (9th Cir. 1986). Fair use is a "question of law." *Google*, 593 U.S. at 23.

Third, Defendants suggest that Sedlik waived this issue by even proposing jury instructions and a verdict form, even though Sedlik's proposed instructions informed the jury about the court's rulings on factors 2 and 3. KVD-Br., 69. But a party has the right to propose jury instructions when a ruling has been made at summary judgment. Fed. R. Evid. 103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Thus, courts have consistently

---

[13] In the only case cited by Defendants, appellant made no objection on the record, unlike Sedlik. *Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1334 (9th Cir. 1985) ("DeLand did not object to this pattern of jury instruction").

found no waiver in similar circumstances. *Air-Sea Forwarders, Inc. v. Air Asia Co.*, 880 F.2d 176, 183 (9th Cir. 1989) (issue preserved where party failed to object to jury instructions, but court had already ruled on the issue); *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 108-09 (1st Cir. 2015) (issue "was fully litigated at the summary judgment stage" and plaintiff "was not required to uselessly raise an objection yet again when commenting on the court's draft jury instructions"); *Frye v. CSX Transportation, Inc.*, 933 F.3d 591, 601-02 (6th Cir. 2019) (similar).

Notably, Defendants argued, at summary judgment and reconsideration, that fair use raised no factual disputes and was a legal issue unsuited for the jury. FER-29, FER-47 (Defendants stated: "Where the material, historical facts are not in dispute, there is no right to have a jury resolve a fair use defense."), FER-49–50 (Defendants stating there are no disputed facts on any of the four factors). Under Defendants' theory, Defendants waived the right to a jury trial by taking these positions.

Finally, the remark is not binding because Sedlik objected to counsel's statements by sending the district court a letter the next day disavowing these unauthorized remarks, correcting the record, and terminating his counsel for making them. FER-43. The district court accepted Sedlik's retraction of these erroneous remarks, and the district court granted counsel's request to withdraw. FER-37, FER-41, 3-ER-536–37.

For each of these reasons, Sedlik did not waive his right to have this Court decide fair use under the proper de novo standard set forth in *Google*.

### 2.    The Jury Instructions Were Incompatible with *Google*.

Next, Defendants argue that the district court properly sent the issue to a jury, because other juries have been permitted to make "factual findings" related to fair use. KVD-Br., 69. But here, the jury was not tasked with making any factual findings, just an overall fair use determination. Fair use is a legal question and generally resolved at summary judgment. *Monge*, 688 F.3d at 1171. Presenting legally-settled issues as open, factual questions was prejudicial error. *White v. Ford Motor Co.*, 500 F.3d 963, 973-74 (9th Cir. 2007) (court abused its discretion not informing jury about earlier verdict and rulings). Fair use should have been resolved at summary judgment.[14]

The jury verdict—the product of erroneous instructions and tainted by Defendants' legally incorrect arguments—cannot be sustained.

---

[14] *Divine Dharma Meditation Int'l Inc. v. Inst. of Latent Energy Stud.*, 2021 WL 3721438 (9th Cir. Aug. 23, 2021) is a non-precedential case in which plaintiff did not move for summary judgment, there was no evidence that defendant used the work for promotion, and plaintiff stipulated to no damages. In *Griner*, the Eighth Circuit found, on de novo review, that jury properly rejected fair use. *Griner*, 104 F.4th at 10.

**D.** **The District Court Erred in Excluding Sedlik's Testimony.**

Sedlik teaches image licensing, has been the president of multiple trade associations, and has more than 35 years of experience in negotiating image licenses. 2-ER-248–56. He is well qualified to testify about image licensing standards and practices. Yet the district court excluded his testimony, incorrectly finding that he had only conducted research during the lawsuit and that he had no expertise related to "the norms of [the tattoo] industry." 1-ER-83, 1-ER-74. At trial, the district court further excluded Sedlik from testifying about his license fees for social media use. 1-ER-67–69. The district court's commentary—dismissing Sedlik's license fees as "nonsense"—demonstrates significant misunderstanding and prejudice. 1-ER-67–69. The court's exclusion prejudiced Sedlik by removing his ability to rebut Defendants' claims of non-commerciality and lack of market harm.

Defendants argue that the exclusion was proper because Sedlik is not a tattooist. KVD-Br., 72. Sedlik is an expert in image licensing, and he performed site visits to tattoo shops more than 15 years prior to the litigation. 2-ER-255. To opine on image licensing, he doesn't have to be an expert in the industry in which the image will be used. *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 111 F.4th 125, 132 (1st Cir. 2024) (Sedlik was qualified to testify on image licensing for the musical instrument industry); *Leonard v. Stemtech Int'l Inc.*, 834

31

F.3d 376, 382 (3d Cir. 2016) (Sedlik was qualified to testify on images of "stem cells using electron microscopes"). The standards for image licensing and copyright apply to everyone, regardless of industry, as the district court ruled. 1-ER-130, 2-ER-284. And in fact, tattooists grant and receive licenses and copyrights for tattoos. *Tattoo Art*, 498 F. App'x at 343-46.

Next, Defendants argue that the exclusion was "harmless" because Sedlik was a rebuttal expert. KVD-Br., 72. But "expert testimony can be used to counter an opponent's fact or lay opinion testimony." *United States v. Graham*, 123 F.4th 1197, 1266 (11th Cir. 2024). Courts have permitted rebuttal expert testimony, even in the absence of affirmative experts, to rebut the testimony of fact witnesses. *United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004) (en banc); *United States v. Gatling*, 96 F.3d 1511, 1523 (D.C. Cir. 1996).

Here, Defendants presented expert-like testimony regarding the practices of tattooists through KVD, a fact witness. FER-11 ("Q. [B]efore they start tattooing a client, [tattooists] don't ask for permission from the photographer? A. No. Nobody ever asks for permission."); FER-9, FER-12–14, FER-18. Defendants had no need to call their expert because Defendants introduced this evidence through KVD. Sedlik should have been permitted to rebut this testimony and present evidence that tattooists are subject to licensing rules.

32

The district court committed legal error in excluding Sedlik's testimony.[15]

## III.   CONCLUSION

The Court should reverse the judgment below, find copyright infringement, and remand for a new trial, limited to damages.

Dated:    April 7, 2025

Respectfully submitted,

By: */s/ Robert E. Allen*

Robert E. Allen
Jason C. Linger
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

By: */s/ William F. Patry*

William F. Patry
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000

*Attorneys for Plaintiff-Appellant*
*Jeffrey B. Sedlik*

---

[15] Defendants argue that the exclusion of their experts was error.  Defendants waived this issue by not appealing it and raising it only in a footnote.  KVD-Br., 67 n.12; *Greenlaw v. United States*, 554 U.S. 237, 244-45 (2008); *Est. of Saunders v. C.I.R.*, 745 F.3d 953, 962 n.8 (9th Cir. 2014).  The district court properly excluded this testimony as unqualified, irrelevant, and unhelpful.  2-ER-281–86.

33

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with Federal Rules of Appellate Procedure 32(a)(4) and 32(a)(5) because it is double-spaced, has margins of at least one inch on all four sides, and uses proportionally-spaced, 14-point Times New Roman font.

I certify that this brief complies with the type-volume limitation of Circuit Rule 32-1(b) because it contains 6,947 words, including headings and footnotes, as measured by the word processing application used to prepare this brief.

Dated:    April 7, 2025                  Respectfully submitted,

By: */s/ Jason C. Linger*
Jason C. Linger

*Attorney for Plaintiff-Appellant*
*Jeffrey B. Sedlik*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.  All counsel of record in this case are registered ACMS users, and service will be accomplished by the appellate ACMS system.

Dated:    April 7, 2025                    Respectfully submitted,

By: */s/ Jason C. Linger*
Jason C. Linger

*Attorney for Plaintiff-Appellant*
*Jeffrey B. Sedlik*