# No. 24-3367

IN THE

# United States Court of Appeals

FOR THE

# Ninth Circuit

JEFFREY B. SEDLIK,

*Plaintiff-Appellant*,

v.

KATHERINE VON DRACHENBERG, KAT VON D, INC., HIGH VOLTAGE TATTOO, INC.,,

*Defendants-Appellees*.

*On Appeal From The United States District Court*
*For The Central District Of California*
*Hon. Dale S. Fischer, District Judge*
*Case No. 2:21-cv-01102*

## APPELLANT'S PETITION FOR REHEARING EN BANC

Robert E. Allen
Jason C. Linger
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

William F. Patry
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY  10016
(212) 849-7000

Moon Hee Lee
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA  90017
(213) 443-3000

*Counsel for Plaintiff-Appellant Jeff Sedlik*

February 17, 2026

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION .........................................................................1

II. *EN BANC* REVIEW IS WARRANTED TO REPLACE THE NINTH CIRCUIT'S INFRINGEMENT TEST ...........................................3

    A.  This Appeal Illustrates How The Current, Flawed Infringement Test Turns Copyright Into An Empty Promise. ....................................3

    B.  The *En Banc* Court Should Replace the Extrinsic–Intrinsic Test. ......6

III. THE COURT SHOULD DISPENSE WITH THE CURRENT INFRINGEMENT TEST ...............................................................13

    A.  This Circuit Should Apply a Single-Step, Objective Test. .................13

    B.  An Objective, One-Step Substantial Similarity Test Will Cure Fundamental Problems In Copyright Litigation. ...............................18

IV. CONCLUSION............................................................................20

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ambrosetti v. Oregon Catholic Press*,
 151 F.4th 1211 (9th Cir. 2025) ...................................................11, 12

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*,
 611 F.3d 1308 (11th Cir. 2010) ............................................................8

*Bell v. Wilmott Storage Servs., LLC*,
 12 F.4th 1065 (9th Cir. 2021) .............................................................20

*Castle Rock Ent., Inc. v. Carol Pub. Grp.*,
 150 F.3d 132 (2d Cir. 1998) .................................................................7

*Ets-Hokin v. Skyy Spirits, Inc.*,
 225 F.3d 1068 (9th Cir. 2000) .........................................................6, 16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
 499 U.S. 340 (1991).............................................................................10

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.*,
 462 F.3d 1072 (9th Cir. 2006) ....................................................7, 12, 15

*Gorham Mfg. Co. v. White*,
 81 U.S. 511 (1871)...............................................................................17

*Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*,
 554 F.3d 914 (11th Cir. 2008) .............................................................20

*Nash v. CBS, Inc.*,
 899 F.2d 1537 (7th Cir. 1990) .............................................................18

*Nichols v. Universal Pictures Corp.*,
 45 F.2d 119 (2d Cir. 1930) ..................................................................14

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
 783 F.3d 527 (5th Cir. 2015) ................................................................8

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
 274 F.2d 487 (2d Cir. 1960) ..................................................................9

i

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018) ............................................6, 7, 13, 16

*Roth Greeting Cards v. United Card Co.*,
429 F.2d 1106 (9th Cir. 1970) ........................................................14

*Shaw v. Lindheim*,
919 F.2d 1353 (9th Cir. 1990) ...............................................9, 12, 19

*Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*,
562 F.2d 1157 (9th Cir. 1977) ..........................................................8

*Skidmore v. Led Zeppelin*,
952 F.3d 1051 (9th Cir. 2020) (en banc) ..............................9, 13, 15

*Structured Asset Sales, LLC v. Sheeran*,
120 F.4th 1066 (2d Cir. 2024) ..........................................................8

*Tanksley v. Daniels*,
902 F.3d 165 (3d Cir. 2018) .............................................................8

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ..........................................................10

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) ..........................................................20

*Warner Bros. Inc. v. American Broadcasting Companies, Inc.*,
720 F.2d 231 (2d Cir. 1983) ...........................................................16

*Yankee Candle Co. v. Bridgewater Candle Co.*,
259 F.3d 25 (1st Cir. 2001) ..............................................................8

*Yonay v. Paramount Pictures Corp.*,
163 F.4th 685 (9th Cir. 2026) ........................................................12

## Statutes

17 U.S.C. § 102 .......................................................................3, 8, 9

17 U.S.C. § 106 ................................................................................7

ii

## <u>Other Authorities</u>

Commerce, *Unlocking Creativity: A Study of the Socioeconomic Benefits of Copyright* (December 2024) ................................................. 8

James Tanaka & Iris Gordon, *Features, Configuration, and Holistic Face Processing*, *in Oxford Handbook of Face Perception* 117-194 (2001) ................................................................................................. 16

U.S. Const. art. I, § 8 ............................................................................... 3

## I.    INTRODUCTION

Appellant Jeffrey Sedlik asks the Circuit *en banc* to address two "exceptionally important" and fundamental questions of copyright law: (1) What is the proper standard for infringement, *i.e.*, substantial similarity? (2) What is the proper appellate standard of review for infringement following a jury trial? *See* FRAP 40(b)(2)(B)&(D).  Panel Judges Wardlaw and Johnstone forcefully called for review of the Circuit's current "flawed extrinsic–intrinsic test for substantial similarity."  Judge Wardlaw stated: "the 'intrinsic test' for substantial similarity has fundamental flaws, and we should consider dispensing with it altogether."  Panel Decision ("PD") at 17.  Judge Johnstone "join[ed] Judge Wardlaw's call to realign our copyright doctrine with the principles established by the Copyright Clause, the Copyright Act, and the Supreme Court's copyright case law."  *Id.* at 24.

This is the perfect case for replacing the current, flawed test.  Appellees Katherine Von Drachenberg ("KVD") and High Voltage Tattoo, Inc. ("HVT") conceded replicating Sedlik's photograph on a customer's tattoo.  KVD and HVT bragged to millions of their social media followers that their unauthorized copying was "100% exactly the same" as the photograph.  3-ER-510.  It is:



The jury, however, returned a verdict of no substantial similarity which the panel reluctantly was forced to "rubber-stamp." PD at 35. Judges Wardlaw and Johnstone placed the blame for this erroneous result squarely where it belongs, on this Circuit's flawed legal standard, which, through the jury instructions, merely asked the jury to conduct a subjective, "holistic comparison that focuses on whether the works are substantially similar in the total concept and feel of the works." 1-ER-41 (Instruction No. 21). The test was "dispositive," PD at 17, even though, under a proper legal standard, Judges Wardlaw and Johnstone "would have concluded that Von Drachenberg's tattoo infringed Sedlik's copyright," *Id.* at 22.

This "standardless" and "unpredictable" intrinsic test, *see id.* at 24, 30,

affects both copyright plaintiffs and defendants. Here, it disfavored Sedlik against a celebrity tattooist. But it could have been the other way around. The current test "undermine[s] copyright protections and their purpose of 'promot[ing] the Progress of Science and useful Arts.'" *Id.* at 33-34 (quoting U.S. Const. art. I, § 8).

The Circuit should discard its two-step, extrinsic–intrinsic test and replace it with a single-step, objective test that compares the works based on the protectible expression contained in a given copyrightable subject matter (*e.g.*, literary, graphic, musical works) and whether it appears in defendant's work too. As the concurrences explain, such an objective test would enable courts in this Circuit, through meaningful review, to properly exclude protection for ideas, concepts, and other unprotectible elements, *see* 17 U.S.C. § 102(b), while still ensuring protection for original expression, *see id.* § 102(a).

## II. *EN BANC* REVIEW IS WARRANTED TO REPLACE THE NINTH CIRCUIT'S INFRINGEMENT TEST

### A. This Appeal Illustrates How The Current, Flawed Infringement Test Turns Copyright Into An Empty Promise.

This case concerns Sedlik's photograph of Miles Davis (the "Photograph"):

3



KVD is a celebrity tattooist and television star. Without Sedlik's permission, KVD replicated the Photograph in a tattoo form (the "Tattoo") in response to her client's request for a tattoo matching Sedlik's Photograph as closely as possible. KVD: (1) downloaded a copy of the Photograph, (2) printed it, (3) placed it on a lightbox, (4) traced it on paper, (5) transferred the tracing to the client's arm, and then (6) inked the Tattoo with the Photograph continuously displayed at her side as a reference.

 

From 2017 to 2019, KVD and her tattoo shop, HVT, repeatedly published 15 social media posts depicting the creation of the Tattoo and the completed Tattoo, receiving hundreds of thousands of views and comments. HVT admitted, in one such post, that the Tattoo was "100% exactly the same" as the Photograph it "traced directly." 3-ER-510. At trial, KVD again admitted that her tracing "match[ed] up exactly" with the Photograph and that she copied the pose, perspective, lighting, shadows, highlights, and overall composition—*i.e.*, the

5

Photograph's protected expression. *See Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074-75 (9th Cir. 2000); 2-ER-212, 2-ER-217-22, 2-ER-294. 2-ER-220.

Yet, the jury found that the Tattoo, the sketch, and 11 social media posts depicting the tattoo were "not substantially similar" to the Photograph.[1]  However, even though the concurrences believed it would be "an understatement" to say that there was substantial similarity, the concurrences found they lacked the ability to "meaningfully review the jury's finding of no similarity."  PD at 34-35.

### B.    The *En Banc* Court Should Replace the Extrinsic–Intrinsic Test.

As the two concurrences pointed out, the jury's shocking verdict was possible only because of this Circuit's "extrinsic–intrinsic test."  The "extrinsic test" for substantial similarity "assesses the objective similarities of the two works, focusing only on the protectible elements of the plaintiff's expression." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018).  But that objective comparison of the protectible elements is vulnerable to being undone by the "intrinsic test," which requires the jury to conduct a "subjective comparison of the works to determine whether they are substantially similar in 'total concept and

---

[1]    Appellees created multiple infringing copies: the Tattoo, a sketch, three photographs, two videos, and fifteen social media posts.  The panel misstates that the jury found **four** progress-images social media posts were not substantially similar.  PD at 11.  The jury, instead, made that finding for **11** social media posts (eight of which depicted photographs, and three of which depicted videos), as well as the Tattoo and the sketch.  1-ER-60 (verdict form).

feel.'" *Id.* Crucially, because "[o]nly the extrinsic test's application may be decided by the court as a matter of law," *id.*, once a jury finds no substantial similarity under the intrinsic test, this Circuit cannot review that determination—even where, as here, copying of protected expression is admitted, undisputed, and overwhelming. *See Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006) (intrinsic test is "exclusively the province of the jury").

The concurring judges echoed the criticism that have been lodged against the intrinsic test, describing it as "vague," "standardless," "unpredictable," "unprincipled," "asymmetrical," and contrary to both Supreme Court precedent and the Copyright Act. PD at 24, 30, 32. There is no reason why the exclusive rights Congress afforded copyright owners, *see* 17 U.S.C. § 106, may become illusory to Ninth Circuit plaintiffs. Nor should this Circuit embrace a test that leaves "the artist's work vulnerable to 'clever thieves'" who make replicas in another medium (from photograph to tattoo). PD at 21. But that's what this Circuit has done over the years, because under the intrinsic test, "an ordinary observer may find, in practice, that works in different media almost never have the same 'total concept and feel.'" *Id.*; *see also Castle Rock Ent., Inc. v. Carol Pub. Grp.*, 150 F.3d 132, 140 (2d Cir. 1998) ("many 'derivative' works of different genres … may have a different total concept and feel from the original work"). That is exactly what happened here.

7

No other circuit uses this intrinsic test—"created by [this Circuit] and which the Supreme Court has never blessed." PD at 17. *See, e.g.*, *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001); *Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1081-82 (2d Cir. 2024); *Tanksley v. Daniels*, 902 F.3d 165, 174 (3d Cir. 2018); *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 550 (5th Cir. 2015); *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). It employs a subjective infringement test that renders jury verdicts of non-infringement immune from appellate review. Given this Circuit's significant role in copyright disputes and the importance of copyright industries to the economy—estimated in 2024 at about $3.37 trillion, or over 12% of the U.S. GDP—the lack of a proper, objective infringement standard is an urgent problem. *See* U.S. Chamber of Commerce, *Unlocking Creativity: A Study of the Socioeconomic Benefits of Copyright* (December 2024).

The extrinsic–intrinsic test has a dubious origin. The panel in *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), created it. It pronounced, without supporting authority, that the "two steps in the analytic process are implied by the requirements of substantial similarity." *Id.* at 1164. The first step—the extrinsic test—ostensibly involved a comparison of the two works' ideas. *Id.* But because copyright law does not protect ideas, *see* 17 U.S.C. § 102(b), there was no need to test whether there was similarity in them.

8

Although *Krofft* concluded "whether there is substantial similarity in ideas may often be a simple one," *id.*, Judge Learned Hand famously wrote: "no principle can be stated as to when an imitator has gone beyond copying the 'idea,' and has borrowed its 'expression.' Decisions must therefore inevitably be ad hoc." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960). This indeterminacy is a structural, systemic aspect of copyright law that cannot be changed but it can be mitigated by adopting a solely objective test for infringement and through meaningful appellate review. Neither is currently possible because the second *Krofft* step—the intrinsic test—is wholly subjective and therefore guideless and unreviewable.

Recognizing the chaos caused by *Krofft*, in 1990, the panel in *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), attempted to reinterpret *Krofft*. It turned what had been described as an extrinsic test of "ideas" and an intrinsic test of "expression," into a standard where "the two tests are more sensibly described as objective and subjective analyses of *expression*," respectively. *Id.* at 1357. This "checkered application" of the two-part test demonstrates why it is untenable. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1066 (9th Cir. 2020) (en banc).

That approach only worsened indeterminacy by repeating the same phrase "substantial similarity" to the jury without ever defining what it means. Moreover, the jury is not given any explanation of how "objective" and "subjective"

9

comparisons differ, but they are nevertheless instructed to engage in such different analyses. Compounding an already unworkable approach, this Circuit opted to add an additional, undefined but also subjective element to the intrinsic test: the "total concept and feel." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000). The Circuit directs juries to assess "total concept and feel" even though that maybe be based on unprotectable elements or identification of protected expression, contrary to the Supreme Court's core instruction that copyright protection extends only to original expression, not ideas. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991); PD at 20-21. At the other end of the spectrum, because a change in medium may lead to a subjective assessment that the total concept and feel are different, that approach can, and did in this case, lead to a stunning, non-reviewable verdict of no substantial similarity. It is unsurprising that the intrinsic test's "holistic protection has become an empty promise." PD at 25.

This Circuit's current test results in the following:

***First,*** there is grave uncertainty about the roles of the judge and the jury. This Circuit has held that the extrinsic test, while supposedly objective, can be decided by the trial judge as a matter of law, yet, it can also go to the jury, as it did here. *See* PD at 13 ("The intrinsic test is reserved for the finder of fact, while the

extrinsic test may, when appropriate, be determined as a matter of law at an earlier stage of litigation.").

*Second*, the trial courts in this Circuit cannot properly instruct the jury. They tell the jury that the extrinsic test is one of "objective" substantial similarity, while the intrinsic test is one of "subjective" substantial similarity, but not what these terms mean. *See* Ninth Circuit Model Civil Jury Instructions 17.19. Then the instructions ask the jury to apply a "holistic" examination of the "total concept and feel" of the works. *See* 1-ER-41 (Instruction No. 21). "Holistic" is not a term used in ordinary conversation, and it requires guesswork to figure out what it means as used in the instruction. The jury in this case (and in other copyright trials in this Circuit) are given "no more guidance." PD at 18. Is it any wonder that juries throw darts in the dark and copyright verdicts are unpredictable?

*Third*, the confusion caused by the two-part test undermines legitimate copyrights (for the plaintiffs) and risks imposing liability over the use of unprotected elements (for the defendants).

The current test "stack[s] the procedural deck" against copyright owners and "subvert[s] the very essence of copyright." PD at 30, 34. Because only the extrinsic test is relevant at summary judgment, plaintiffs are rarely able to prevail before trial, forcing them to endure expensive trials. *See Ambrosetti v. Oregon Catholic Press*, 151 F.4th 1211, 1224-25 (9th Cir. 2025). Even after a trial, the

11

intrinsic test has a uniquely negative impact on copyright plaintiffs and may prevent them from receiving a fair result. As Judge Johnstone explained, "while defendants may appeal infringement verdicts under the extrinsic test, plaintiffs have no meaningful way to seek review of unfavorable judgments[.]" PD at 30.

Although this asymmetry "stack[s] the procedural deck against plaintiffs," *id.*, the current test also harms defendants. As discussed, the intrinsic test may sweep in unprotectible expression into the infringement test, and is, thus, susceptible to imposing liability based on similarities of public-domain elements, if the jury feels they are part of the "total concept and feel" of the works. But such "concepts" are excluded from copyright protection, and available for the public.

***Fourth***, because the intrinsic test has been characterized as "exclusively the province of the jury," *Funky Films*, 462 F.3d at 1077, it is immune from appellate review. *See also* Ninth Cir. Model Civil Jury Instructions 17.9, cmt. ("If the extrinsic test is satisfied, the intrinsic test is a matter for the jury."). Thus, this Court cannot meaningfully review the jury's "mere subjective judgment" about two works' similarity, *Shaw*, 919 F.2d at 1357, based on no helpful instructions or help from expert testimony, *see Yonay v. Paramount Pictures Corp.*, 163 F.4th 685, 692 (9th Cir. 2026). This Circuit's only option is to "rubber-stamp" any infringement or no-infringement verdict. PD at 35.

As Judge Johnstone noted, "a jury's job is to find facts, not feelings." *Id.* at 24. But feelings, in the form of an assessment of "overall concept and feel," rather than rigorous analysis of facts, govern the Circuit's current test. When the legal standard is flawed, and when jurors lack the necessary information and instructions to make a legally correct verdict, they will fill in the blanks themselves, and will do so in unpredictable ways based on how they "feel." As a result, that test permits jury nullification, as happened in this case. The Court must correct this flaw.

## III. THE COURT SHOULD DISPENSE WITH THE CURRENT INFRINGEMENT TEST

### A. This Circuit Should Apply a Single-Step, Objective Test.

This Circuit should discard the intrinsic test. *See* PD at 17, 35. It, like the inverse-ratio rule that this Court jettisoned six years ago, "is not part of the copyright statute, defies logic, and creates uncertainty for the courts and the parties." *Skidmore*, 952 F.3d at 1066. To determine whether the defendant's work is substantially similar to the plaintiff's protectible expression, a one-step, objective test is all that is needed. *See Rentmeester*, 883 F.3d at 1118 (a substantial similarity test can "assesses the ***objective similarities*** of the two works, focusing only on the protectable elements of the plaintiff's expression" (emphasis added)). Before *Krofft*, that was what the Circuit had always done. The test was simple and straightforward: "To constitute an infringement under the Act there must be substantial similarity between the infringing work and the work copyrighted; and

13

that similarity must have been caused by the defendant's having copied the copyright holder's creation." *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970).[2] The pre-*Krofft* approach—understood as a single objective test for substantial similarity—worked well and can guide this Circuit's rearticulation of the test.

To provide a meaningful infringement test, however, the objective test must take into account diverse copyrightable subject matters. That is because, even if "[n]obody has ever been able to fix that boundary, and nobody ever can" as to when works are substantially similar for **all** types of artistic works, *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930), this Circuit has extensive, well-developed caselaw articulating which elements of literary, visual, or musical expressions are protectible (and thus, form the basis of objective comparison) and not protectible (and thus, excluded from the comparison that results in copyright liability).

---

[2] *Roth* has been criticized for the problems caused by the phrase "total concept and feel." But the reference in the Roth opinion itself to "total concept and feel" was **not** as part of an infringement test but rather in a description of **why** the two works were substantially similar in what Judge Johnstone referred to as an attempt to "protect a work's full expression." PD at 24. While some also criticize the Roth majority opinion on the merits, reasonable observers can and do disagree from time to time.

For example, this Court has stated that, for literary works, objective comparison is to be made between the "'articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two works." *Funky Films*, 462 F.3d at 1077. At the same time, "the basic plot ideas for stories" or stock elements of a given genre are excluded. *Id.* This approach of objectively comparing the protectible elements of a copyrightable subject matter can achieve what the intrinsic test set out to do: "protect a work's full expression." PD at 24. That is because a subject-matter based objective test would not impose liability based on basic plot ideas, but "the actual concrete elements that make up the ***total sequence of events and the relationships between the major characters***" that necessarily evaluates the overall composition of the work. *Funky Films*, 462 F.3d at 1077 (emphasis added).

Likewise, for music compositions, "common musical elements" like the chromatic scale and short note sequences are part of public-domain musical "building blocks," not part of the objective comparison for substantial similarity. *See Skidmore*, 952 F.3d at 1070-71. But the objective test comparing melody, harmony, rhythm, and, for vocal works, lyrics can still account for the musical composition's full expression, comparing "the *particular* way in which the artistic elements form a coherent pattern, synthesis, or design," and not "*random* similarities scattered throughout the works." *Id.* at 1074-75 (discussing selection

15

and arrangement copyright). The same is true for photographs. The comparison of a photograph's protected expression in pose, perspective, lighting, shadows, highlights, and composition captures how a visual work is compositionally created and viewed holistically, without relying on a subjective and unpredictable test. *See Ets-Hokin*, 225 F.3d at 1074-75.

The one-step objective test must take into account how photographs are perceived and experienced, because they dictate the elements to be compared for a given copyrightable subject matter. *See Rentmeester*, 883 F.3d at 1118-19 ("Photographs cannot be dissected into protected and unprotected elements in the same way" as literary works). The Second Circuit observed in *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983), that for a "story," which has a "linear dimension: it begins, continues, and ends," a defendant "does not escape infringement by adding original episodes somewhere along the line." That, however, may not be true for a "graphic or three-dimensional work," which is "created to be perceived as an entirety." *Id.*

Unlike literary works, visual works are experienced primarily through the initial, holistic delineation of the object and through context clues, such that an infringement test that merely focuses on its isolated features would be divorced from how the artwork is perceived and thus expressed. *See e.g.*, James Tanaka & Iris Gordon, *Features, Configuration, and Holistic Face Processing*, *in Oxford*

*Handbook of Face Perception* 117-194 (2001); *see also* PD at 17 (recognizing that "'distinguishing between the protected and unprotected' components of a work depicting a human face" involves "complex issues of copyright law").

Were such an objective test keyed to visual works applied here, the verdict would have been for Sedlik. The Tattoo "resembles the ***protected aspects*** of the photograph," and "shares all its major creative elements," such as "Davis's distinctive finger pose (arranged by Sedlik); his facial expression (encouraged by Sedlik); his dark wavy hair surrounding his face (styled at Sedlik's direction); the shadows and highlights on his face and hands (lit by Sedlik); and the specific angle, position, and focus of the viewer's perspective (chosen by Sedlik)." PD at 23 (emphasis added). And even if the jury had reached an incorrect conclusion, the panel "would have concluded that Von Drachenberg's tattoo infringed Sedlik's copyright in his photograph of Miles Davis." *Id.* at 22.

Before *Krofft*, legal tests that compare artistic designs were objective. In the context of a design patent case that the Federal Circuit still cites, *Gorham Mfg. Co. v. White* opinion, 81 U.S. 511, 524 (1871), the Supreme Court addressed the same foundational question addressed by a substantial-similarity test, which is: "what constitutes identity of design, and what amounts to infringement?" To answer that question, the Court identified the critical inquiry as "whether there was any difference in the ***effect*** of the designs, not whether there were differences in the

17

*details of ornament*." *Id.* at 526 (emphasis added). The approach sounds like any modern day test, with the exception of this Circuit's current outlier approach. *Id.* at 527-28.

The Supreme Court's emphasis in *Gorham* on the effect of the two works on the ordinary observer—*i.e.*, an objective analysis—is consistent with how humans perceive, experience, and enjoy art. *See Nash v. CBS, Inc.*, 899 F.2d 1537, 1540 (7th Cir. 1990) ("Ordinary observers, like reasonable men in torts, are fictitious characters of the law, reminders that judges must apply objective tests rather than examine their own perception."). Aesthetic decisions are precisely what is protected by copyright and can be lost by focusing on differences viewed in isolation. This Circuit should abandon its current test, and return to a single-step objective test that is consistent with the Supreme Court's decisions in *Feist* and *Gorham*, the Second Circuit and other sister circuits' approach, and more importantly, how we perceive and enjoy visual and other works.

> **B.   An Objective, One-Step Substantial Similarity Test Will Cure Fundamental Problems In Copyright Litigation.**

Adopting an objective, one-step test that articulates the protectible elements to be compared for a copyrightable subject matter solves many of the fundamental issues that plague copyright litigation in this Circuit:

*First*, this Circuit can revise the model jury instructions to reflect the new test, and no longer "leave[] juries without guidance at trial, leading to

18

unpredictable verdicts based on instructions to decide cases based on 'total concept and feel.'" PD at 30. Further, the objective comparison of the constituent elements of a copyrightable subject matter lends itself to special verdict forms, which, if more widely adopted, can both guide the jury and aid this Court's appellate review.

*Second*, because there will no longer be an "intrinsic test" that is solely "reserved for the finder of fact," there will no longer be "inscrutable" verdicts that are "immune from an appellate court's review." *Id.* at 13, 22, 33. Rather, this Court will be able to review a verdict for errors on substantial similarity, including those that are dependent on whether the substantial similarities are in protectible expression or alternatively only in unprotectible material. *Id.* at 12.

*Third*, the objective, one-step test will restore parity for copyright plaintiffs and defendants at the pre-trial stage. For example, this Circuit "frequently affirmed summary judgments in favor of copyright defendants on the issue of substantial similarity." *Shaw*, 919 F.2d at 1355. But a court in this Circuit, under the current test, generally cannot find summary judgment on substantial similarity for a copyright plaintiff, because the plaintiff must prevail on the intrinsic test, which requires a favorable jury verdict. *See* PD at 30. Where the "extrinsic similarity is so strong" that "no reasonable jury could find that the works are not substantially similar in their overall concept and feel," a court may find, as a matter

of law, that the works are substantially similar. *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 986-87 (9th Cir. 2017); *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1076 (9th Cir. 2021). Under an objective, single-step test, courts may decide, as a matter of law in other appropriate cases, that a summary judgment should be granted for either party. As Judge Wardlaw observed, "the ability to separate protectable expression from non-protectable expression is, in reality, a question of law or, at the very least, a mixed question of law and fact." PD at 21-22 (quoting *Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008)).

## IV. CONCLUSION

For the foregoing reasons, the Court should rehear the case, excise the intrinsic test, adopt the single-step, objective test articulated herein, and reverse the district court.

Dated: February 17, 2026          Respectfully submitted,

*/s/ William F. Patry*

William F. Patry
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Moon Hee Lee
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
213.443.3000

*/s/ Robert E. Allen*

Robert E. Allen
Jason C. Linger
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
10250 Constellation Blvd., Floor 19
Los Angeles, CA 90067
(310) 553-3000

*Counsel for Plaintiff-Appellant Jeffrey Sedlik*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 24-3367

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for rehearing en banc is:

[ **X** ] Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4195**.**

*(Petitions and responses must not exceed 4,200 words)*

**OR**

[  ] In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.



**Signature** _____*/s/ William F. Patry*_____     **Date** ___February 17, 2026___
*(use "s/[typed name]" to sign electronically-filed documents)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 17, 2026, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I further certify that all participants in the case are registered ACMS users and will be served by the appellate ACMS system.

*/s/ William F. Patry*
William F. Patry

*Counsel for Plaintiff-Appellant,*
*Jeffrey Sedlik*