**No. 24-3367**

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

———————————

JEFFREY B. SEDLIK, an individual,

*Plaintiff-Appellant,*

v.

KATHERINE VON DRACHENBERG, an individual, AKA KAT VON D; KAT VON D, INC., a California corporation; and HIGH VOLTAGE TATTOO, INC., a California corporation,

*Defendants-Appellees.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, NO. 2:21-CV-01102-DSF-MRW HONORABLE DALE S. FISCHER

———————————

## BRIEF OF AMICI CURIAE RECORDING INDUSTRY ASSOCIATION OF AMERICA AND AMERICAN ASSOCIATION OF INDEPENDENT MUSIC IN SUPPORT OF PLAINTIFF-APPELLANT ON EN BANC REHEARING

———————————

Hundley Poulson
hpoulson@sidley.com
Bianca Mona Corgan
bianca.corgan@sidley.com
SIDLEY AUSTIN LLP
1501 K St., NW
Washington, D.C. 20005
(202) 736-8000

Rollin A. Ransom
rransom@sidley.com
Collin P. Wedel
*Counsel of Record*
cwedel@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Ave.
Los Angeles, CA 90071
(213) 896-6000

*Counsel for Amici Curiae Recording Industry Association of America and American Association of Independent Music*

## RULE 26.1 DISCLOSURE STATEMENT

The Recording Industry Association of America and American Association of Independent Music are both nonprofit corporations that do not have parent corporations and are not publicly traded. No publicly held company owns 10% or more of either corporation's stock.

i

# TABLE OF CONTENTS

Rule 26.1 Disclosure Statement................................................................i

Table of Contents ...................................................................................ii

Table of Authorities............................................................................ iii

Interest of Amici Curiae........................................................................1

Introduction............................................................................................3

Argument.................................................................................................4

I.     The Intrinsic Test Obfuscates the Critical Question Under Copyright Law and Creates Avoidable Problems............................4

     A.    Tasking Factfinders with Assessing the "Total Concept and Feel" of Works Distorts Copyright Law...........................4

     B.    The Intrinsic Test Makes Easy Cases Hard—and Unpredictable.............................................................................6

     C.    The Intrinsic Test Needlessly Complicates the Judicial Process...........................................................................................9

II.    This Court Should Adopt a Test Focused on Identifying Protected Expression and Evaluating the Works Through That Lens. ...............................................................................13

Conclusion ...........................................................................................16

Certificate of Compliance....................................................................17

Certificate of Service ...........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Antonick v. Elec. Arts, Inc.*,
841 F.3d 1062 (9th Cir. 2016)..............................................................11

*Authors Guild v. Google, Inc.*,
804 F.3d 202 (2d Cir. 2015) ..............................................................8, 9

*Compulife Software Inc. v. Newman*,
959 F.3d 1288 (11th Cir. 2020)................................................... *passim*

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992) ...............................................................15

*Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*,
777 F.2d 485 (9th Cir. 1985), *overruled on other grounds
by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)...............................15

*Country Kids 'N City Slicks, Inc. v. Sheen*,
77 F.3d 1280 (10th Cir. 1996)............................................................15

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994)..............................................................................9

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985)..............................................................................8

*Litchfield v. Spielberg*,
736 F.2d 1352 (9th Cir. 1984).............................................................8

*Rentmeester v. Nike, Inc.*,
883 F.3d 1111 (9th Cir. 2018), *overruled in part on other
grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v.
Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).......................................5

*Sedlik v. Von Drachenberg*,
163 F.4th 667 (9th Cir. 2026), *vacated by* 177 F.4th 964
(9th Cir. 2026)............................................................... *passim*

*Segrets, Inc. v. Gillman Knitwear Co.*,
   207 F.3d 56 (1st Cir. 2000) ................................................................. 10

*Shaw v. Lindheim*,
   919 F.2d 1353 (9th Cir. 1990), *overruled in part on other
   grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v.
   Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)................................... 6, 11

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020)........................................................ 4, 14

**Statutes**

17 U.S.C. § 102 .......................................................................................5

17 U.S.C. § 106 ...................................................................................6, 8

17 U.S.C. § 114 .................................................................................7, 12

**Other Authorities**

Bruce E. Boyden, *The Grapes of Roth*, 99 Wash. L. Rev. 1093
   (2024)............................................................................................... 6

2 Law of Copyright § 14:24 (Oct. 2025 update) ..................................... 15

2 Law of Copyright § 14:28 (Oct. 2025 update) ......................... 5, 6, 8, 11

2 Law of Copyright § 14:50 (Oct. 2025 update) ..................................... 10

4 Nimmer on Copyright § 13D.19 (2026) .............................................. 10

4 Nimmer on Copyright § 13D.22 (2026) .............................................. 10

4 Nimmer on Copyright § 13D.31 (2026) ......................................... 3, 5, 7

iv

## INTEREST OF AMICI CURIAE

The Recording Industry Association of America ("RIAA") is a non-profit trade organization that supports and promotes the creative and financial vitality of recorded music and the people and companies that create it in the United States. RIAA's several hundred members—ranging from major American music groups with global reach to artist-owned labels and small businesses—make up the world's most vibrant and innovative music community. RIAA members create, manufacture, and/or distribute the majority of all legitimate music produced and sold in the United States. They also are the copyright owners of, or owners of exclusive rights with respect to, sound recordings embodying the performances of some of the most popular and successful recording artists of all time.

The American Association of Independent Music ("A2IM") is a not-for-profit organization that exists to support and strengthen the independent recorded music sector and the value of recorded music copyrights. Membership currently includes a broad coalition of hundreds of independently owned American music labels. A2IM represents these small and medium-sized enterprises' interests in the marketplace, in the media, on Capitol Hill, and as part of the global music community. In doing so, it supports a key segment of America's creative class that represents America's diverse musical and cultural heritage. Billboard Mag-

azine has previously identified the independent music label sector as constituting over 40% of the music industry's global recorded music revenue based on copyright ownership.

In support of their members, RIAA and A2IM (together, "amici") work to protect the intellectual property rights of artists and record labels, and monitor and review state and federal laws, regulations, policies, and judicial decisions impacting those rights and regulations. Amici and their members believe in copyright laws that are consistent, sensible, and predictable. This case illustrates the need for such consistency. Although the issues here may superficially concern only the alleged infringement of photographic works, the legal framework for copyright infringement claims cuts across all types of creative works and contexts—including recorded music. Amici's deep understanding of the recorded music community—and how copyright law impacts the recorded music business—gives them a unique perspective that will help this Court resolve the issues here. Amici have therefore moved for leave to file this brief.

No party or party's counsel has wholly or partly authored the brief. Nor has any party or party's counsel contributed money intended to fund preparing or submitting it. Only amici have contributed money intended to fund preparing or submitting this brief.

2

## INTRODUCTION

Copyright law asks a straightforward question when evaluating infringement: has the defendant copied protected expression? Yet this Circuit's much-beleaguered and long-maligned "intrinsic" test invites juries to answer a different and often-misleading question. Rather than focusing on whether the defendant copied material that copyright law protects, the intrinsic test for infringement considers the "total concept and feel" of the allegedly infringed and infringing works.

Because that inquiry is unmoored from copyright principles, the intrinsic test deserves the criticism it gets as a doctrine with the "potential to subvert the very essence of copyright." 4 Nimmer on Copyright § 13D.31 (2026). The intrinsic test's "concept-and-feel" approach breeds unpredictability in even clear-cut cases of wrongful copying, inviting findings of no infringement based on subjective "feel" *even if* the defendant has indisputably copied protected expression. The test also impedes meritorious copyright claims and wastes judicial resources by needlessly complicating what should be straightforward cases of summary judgment. And, as this case illustrates, it compounds those flaws by impairing meaningful appellate review.

The en banc Court should use this opportunity to consign the intrinsic test to the cutting room floor. Doing so would prevent this unnecessary and unhelpful test from continuing to distort copyright cases. And jettisoning it from the substantial similarity inquiry would allow this

Court to refocus the infringement analysis where it belongs, namely on identifying situations where the defendant has copied protected expression.

## ARGUMENT

### I. THE INTRINSIC TEST OBFUSCATES THE CRITICAL QUESTION UNDER COPYRIGHT LAW AND CREATES AVOIDABLE PROBLEMS.

#### A. Tasking Factfinders with Assessing the "Total Concept and Feel" of Works Distorts Copyright Law.

The fundamental question when assessing whether a plaintiff has established a prima facie case of copyright infringement is straightforward: did the defendant unlawfully "cop[y] protected aspects of the [copyrighted] work"? *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). To evaluate whether "protected aspects" have been "copied," courts generally ask whether the works "share substantial similarities." *Id.* (emphasis omitted); *see also, e.g., Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1302 (11th Cir. 2020). Sometimes the answer is easy and the fact of unlawful copying is obvious, as when the infringing work is an entire and exact replica of a copyrighted work.

This Circuit requires a copyright holder to prevail under two tests—the extrinsic and intrinsic—to show substantial similarity. The latter test is "subjective," requiring the jury to decide that the "total concept and feel" of the works is "substantially similar" before a copyright holder

can establish the elements of infringement. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018), *overruled in part on other grounds by Led Zeppelin*, 952 F.3d at 1065–69.

That test—with its "touchstone of 'total concept and feel'"—"sits poorly within the greater skein of copyright doctrine." 4 Nimmer, *supra*, § 13D.31. The Copyright Act expressly excludes "concept[s]" from protection, *see* 17 U.S.C. § 102(b), so the test's reference to "concept" is inherently contradictory and risks derailing the infringement analysis at the outset. And "feel" fares no better. At best, this boundless term obscures the key inquiry into whether the defendant has copied protected expression; at worst, it carries a different meaning and introduces "a potentially inaccurate test." 2 Law of Copyright § 14:28 (Oct. 2025 update).

The intrinsic test thus creates "opportunit[ies] [for] mischief" in copyright cases. Nimmer, *supra*, § 13D.31. That is no surprise. The test leaves juries with only "amorphous referent[s]" to guide their inquiry. *Id.* But its greater vice is that it invites juries to ignore the critical analysis for copyright infringement: what material is protected, what is not, and does comparing the works' protected elements show substantial similarity? After all, even if a defendant engages in "extensive copying of protected expression"—precisely what the infringement inquiry aims to snuff out—a finding that the "two works differ in concept and feel" can nonsensically lead to "a finding of no infringement." 2 Law of Copyright, *supra*, § 14:28. Small wonder, then, that "[u]sing the phrase 'total concept

5

and feel'" can "easily yield both false negatives and false positives" in the infringement analysis—a concern for both copyright holders and defendants. *Id.*

**B.     The Intrinsic Test Makes Easy Cases Hard—and Unpredictable.**

Requiring the jury to evaluate the works' "total concept and feel" leads to "anarchic results." Bruce E. Boyden, *The Grapes of Roth*, 99 Wash. L. Rev. 1093, 1093 (2024). This Court has long recognized that problem. Over 35 years ago, this Court acknowledged that "the intrinsic test has become a mere subjective judgment" about the similarity of two works that is "virtually devoid of analysis." *Shaw v. Lindheim*, 919 F.2d 1353, 1357 (9th Cir. 1990), *overruled in part on other grounds by Led Zeppelin*, 952 F.3d at 1065–69. As Judge Johnstone observed in concurring in the panel opinion here, that test creates a paradigm in which "the outcomes of cases" are, predictably, "unpredictable." *Sedlik v. Von Drachenberg*, 163 F.4th 667, 683 (9th Cir. 2026) (Johnstone, J., concurring), *vacated by* 177 F.4th 964 (9th Cir. 2026).

This holds true for cases that should be straightforward. Consider the copyrighted sound recordings so critical to ensuring that amici's members can remain commercially viable and facilitate public access to creative works. The exclusive rights provided by these copyrights are subject to certain limitations; for reproduction, 17 U.S.C. § 106(1), the copyright owner's exclusive right is limited to "the right to duplicate the

sound recording" in a form "that directly or indirectly recapture[s] the actual sounds fixed in the recording." *Id.* § 114(b). But assume that an individual duplicates the actual sounds of a sound recording of a jazz performance and adds twenty seconds of electronic dance music to the beginning and end of that recording. Any test for infringement should recognize that maneuver for what it is: copying a work's protected elements and producing an infringing work. The sound recording is protected expression; it has been pirated wholesale; and there is indisputable substantial similarity between the protected aspects of the two works because "adding new material to copied material doesn't negate (or even ameliorate) the copying." *Compulife Software*, 959 F.3d at 1308. That is infringement, and the case should narrow to any defenses that the infringer may press.

This Circuit's current approach nonetheless invites jurors confronted with those facts to reach a different—and plainly incorrect—result. Instructed to decide whether "the works have a different total concept and feel," *Sedlik*, 163 F.4th at 673 (majority op.), a jury might find that a recording of a somber jazz composition "feels" different from that same recording surrounded by modern, up-tempo electronic dance beats. That the intrinsic test allows the jury to reach this result illustrates one of "the dangers of applying" it, 4 Nimmer, *supra*, § 13D.31—namely, the risk that a jury's subjective sense of the works' "concept and feel" can

7

override "extensive copying of protected expression," 2 Law of Copyright, *supra*, § 14:28.

Other examples confirm that the intrinsic test renders the infringement question uncertain in cases where it should not be. A 300-page textbook including a "verbatim" excerpt of a "9-page work" may differ in *feel* from the shorter work (at least to some juries), but the two are still substantially similar for infringement purposes because one work contains a literal reproduction of the other. *Compulife Software*, 959 F.3d at 1308. So too for a five-page set of song lyrics that reproduces another artist's four-page set before tacking on a few new words. And permitting the subjective "feel" of the works to override that undisputed copying of protected expression—as the intrinsic test invites jurors to do—threatens the rule that "a taking" of copyrighted material "may not be excused merely because it is insubstantial with respect to the *infringing* work." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 565 (1985).

The intrinsic test also jeopardizes a copyright owner's exclusive right to prepare derivative works. *See* 17 U.S.C. § 106(2). Copyright law reflects "a clear and logical policy choice" to protect against unauthorized adaptations that simply convert "the work into a different form." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 225 (2d Cir. 2015). But subjecting this exclusive right to the "total concept and feel" inquiry, *see Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984), risks eviscerating it. A "cartoon character," for example, may depart in concept and feel from a

"three-dimensional plush toy" of that character; one moves and talks (on screen or in print) while the other remains silent and stationary. *Authors Guild*, 804 F.3d at 225. But a toymaker who replicates the cartoon character has still copied "expressive content" and produced a substantially similar work, *id.*, even though a jury may think that the cartoon and toy "feel" different. Indeed, here "feel" has nothing to do with the copyrighted material, but with the form and purpose it assumes.

This is not to say that all inquiries into the copying of protected elements will be easy. But some can and should be. Clarifying the "boundaries of copyright law" in those situations is "peculiarly important" to promote stable, predictable, and robust copyright protection—and, in doing so, to "enrich[] the general public through access to creative works." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). Everyone—including copyright holders and copyright defendants (actual and potential)—benefits from clear, predictable rules and frameworks for evaluating infringement. Because the intrinsic test undermines those values by injecting straightforward cases with unprincipled uncertainty, this Court should eliminate it.

### C. The Intrinsic Test Needlessly Complicates the Judicial Process.

By insisting that the jury evaluate the works' "total concept and feel" before finding infringement, the intrinsic test also impairs effica-

cious judicial review at all stages of litigation, from pleading through appeal. In short, it "simply has nothing to recommend it and a great deal to condemn it." 2 Law of Copyright, *supra*, § 14:50.

**1.** The intrinsic test poses problems for courts in this Circuit. To start, "scarce judicial resources and expanding dockets" cut against the idea "that trial is almost always proper," but the intrinsic test encourages trials where one should never reasonably occur. 4 Nimmer, *supra*, § 13D.19. As Judge Johnstone recognized, the inability to feasibly decide the intrinsic test "as a matter of law" necessarily "preclud[es] summary judgment for almost all copyright plaintiffs." *Sedlik*, 163 F.4th at 682 (Johnstone, J., concurring). But a plaintiff can—and *"should"*—win on "summary judgment" if the "resemblance is so overwhelming as to mandate a finding of substantial similarity," even when a jury may subjectively view the works as different in concept or feel. 4 Nimmer, *supra*, § 13D.22 (emphasis added); *see also Segrets, Inc. v. Gillman Knitwear Co.*, 207 F.3d 56, 61–62 (1st Cir. 2000) (affirming summary judgment for plaintiff on substantial similarity). By effectively prohibiting summary judgment for copyright holders on infringement even in straightforward cases involving undisputed copying of protected expression, *see supra* I.B, the intrinsic test wastes judicial resources.

Requiring the "concept and feel" inquiry also distorts judicial analysis at trial and on appeal. In bench trials, the district court must serve as the factfinder and ask itself whether the "total concept and feel" of the

works are substantially similar. The court must do so without relying on expert testimony, *see Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062, 1067 (9th Cir. 2016), even in cases involving "extensive copying of protected expression," 2 Law of Copyright, *supra*, § 14:28.

Additionally, tying infringement to the works' subjective "concept and feel" drags appellate courts into the same morass that pervades the trial stage. "[M]eaningful appellate review" requires understanding "which elements of the copyrighted work [were] consider[ed] to be unprotectable." *Compulife Software*, 959 F.3d at 1309. Or said differently, the infringement inquiry needs to "filter" the works' "protectable [and] unprotectable" elements. *Id.* But subjecting the analysis to the jury's sense of "total concept and feel" obscures that distinction and "frustrate[s] appellate review of the intrinsic test." *Shaw*, 919 F.2d at 1357. Indeed, this Court has "never reversed a jury's no-infringement verdict under the test," *Sedlik*, 163 F.4th at 684 (Johnstone, J., concurring), assuming instead that "reversing the jury verdict" of "no substantial similarity" would "supplant[] the jury's subjective interpretation with [the Court's]," *id.* at 675 (majority op.)

**2.** These problems afflict copyright holders, too. In this Circuit, a copyright holder faces a steep climb at summary judgment. The result is that they must "proceed to trial in clear-cut cases," jeopardizing their "ability to enforce their copyrights" not because their claims lack merit

but because enforcement is "prohibitively expensive." *Id.* at 683 (Johnstone, J., concurring) (citation omitted). And thus the spiral begins: with copyright infringers less likely to be held accountable, they will engage in more piracy, make it even more expensive for copyright holders to enforce their rights, and steal intellectual property with greater frequency as effective enforcement dwindles.

Amici's members in particular suffer from this barrier to straightforward resolution of clear cases of infringement as a matter of law. As explained, sound recording cases should often be clear-cut. If a copyright holder shows at summary judgment that the defendant has "directly or indirectly recapture[d] the actual sounds fixed in [a sound] recording"— *i.e.*, reproduced the protected expression—such that a reasonable jury would need to find substantial similarity, the analysis should end there for infringement and turn to any potential defenses. 17 U.S.C. § 114(b). Forcing that copyright holder to go to trial on infringement needlessly inflates his enforcement costs. Doing so also risks transforming his meritorious prima facie case into a no-infringement verdict if the jurors think that the recordings' "total concept and feel" are different enough (wherever that line may be for the particular jurors who happen to be empaneled).

This risk to copyright holders is even more pronounced as generative artificial intelligence continues to rapidly expand into new indus-

12

tries. Any would-be infringer can take the original work and tell an artificial-intelligence platform to alter it in superficial ways that retain the core expressive (and protected) creativity of the original. These platforms could adorn a sound recording, for instance, with just enough add-ons to create a different "concept and feel" for a potential jury without altering the recording's original sound—the thing that makes it copyrightable and valuable. The intrinsic test is thus uniquely unworkable as we proceed further into the artificial-intelligence era.

Finally, copyright holders and others would also lack the opportunity to fix errors tied to the intrinsic test—or even to meaningfully argue infringement issues—on appeal. *See supra* I.C.1. And making matters worse, that bar on effective appellate review of infringement findings is a one-way ratchet. Copyright *defendants* may at least seek reversal on the extrinsic test, but, as Judge Johnstone observed, copyright *holders* "have no recourse" when the "jury errs by finding a lack of intrinsic similarity despite substantial copying of protected elements." *Sedlik*, 163 F.4th at 684 (Johnstone, J., concurring).

## II. THIS COURT SHOULD ADOPT A TEST FOCUSED ON IDENTIFYING PROTECTED EXPRESSION AND EVALUATING THE WORKS THROUGH THAT LENS.

In light of the many problems discussed above and in Judge Wardlaw's and Judge Johnstone's concurrences, there is no reason to maintain the intrinsic approach going forward. Instead, this case offers the en banc

13

Court the opportunity to "dispens[e] with the intrinsic test" and its "fundamental flaws," *Sedlik*, 163 F.4th at 676, 678 (Wardlaw, J., concurring), while refocusing the substantial similarity inquiry on what matters: determining whether the defendant has "copied protected aspects of the work." *Led Zeppelin*, 952 F.3d at 1064.

To do so, this Court need not look far. Indeed, this Court's existing "extrinsic test[] compares the objective similarities of specific expressive elements in the two works." *Id.* That step is "essential" because "only substantial similarity in *protectable* expression may constitute actionable copying that results in infringement liability." *Id.* (emphasis added). So by "distinguish[ing] between the protected and unprotected material in a plaintiff's work" before comparing only the protected material to the allegedly infringing work, *id.*, the extrinsic test asks the right question—and need not be followed by additional, misguided questions posed by the intrinsic test, which adds nothing of value to the equation.

Eliminating the intrinsic test would thus align this Court's approach with other frameworks for assessing infringement that place the focus where it belongs: on carefully identifying protected expression and evaluating it for substantial similarity. The Eleventh Circuit, for example, "sifts out all non-protectable materials" before "compar[ing]" the "remaining kernels of creative expression." *Compulife Software*, 959 F.3d at 1303 (cleaned up). It drew inspiration from the "abstraction-filtration-

14

comparison" test that the Second Circuit developed for computer-program cases. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 706 (2d Cir. 1992). For its part, that three-step inquiry can provide "clarity," 2 Law of Copyright, *supra*, § 14:24 (emphasis added), by identifying the protectable expression that should be compared for substantial similarity, *Altai*, 982 F.2d at 706. But whatever the nomenclature, the operative infringement framework should facilitate comparison of the "protected elements" of the copyright holder's work "to the allegedly copied work to determine if the two works are substantially similar." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1285 (10th Cir. 1996). This approach is analytically precise and fair for both copyright plaintiffs and defendants.

This Court has recognized that point. Over four decades ago, it explained that "[w]hat is important is not whether there is substantial similarity in the total concept and feel of the works, but whether the . . . protectible expression in" the copyright holder's work "is substantially similar to the equivalent portions of" the alleged infringer's work. *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 493 (9th Cir. 1985), *overruled on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). That framework—*i.e.*, the extrinsic test without its unnecessary intrinsic counterpart—is all that is needed to decide the infringement question here.

15

## CONCLUSION

For all these reasons, amici urge the Court to reverse the panel's opinion and eliminate this Circuit's intrinsic test from the substantial similarity analysis.

Dated: June 30, 2026    Respectfully submitted,


           */s/ Collin P. Wedel*

**CERTIFICATE OF COMPLIANCE**

This brief complies with Federal Rules of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font. It complies with Circuit Rule 29-2(c)(3) because it contains 3,437 words.

*/s/ Collin P. Wedel*

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2026, I electronically filed this document with the Clerk of the Court using the CM/ECF System.

*/s/ Collin P. Wedel*