**Docket No. 24-3367**

*In the*

# United States Court of Appeals

*For the*

# Ninth Circuit

———— • ————

JEFFREY B. SEDLIK, an individual,

*Plaintiff-Appellant,*

v.

KATHERINE VON DRACHENBERG, an individual,
AKA Kat Von D, KAT VON D, INC., a California corporation and
HIGH VOLTAGE TATTOO, INC., a California corporation,

*Defendants-Appellees.*

———————————————————

*Appeal from a Decision of the United States District Court for the Central District of California,*
*No. 2:21-cv-01102-DSF-MRW · Honorable Dale S. Fischer*

# BRIEF FOR THE KERNOCHAN CENTER FOR LAW, MEDIA AND THE ARTS AS *AMICUS CURIAE* IN SUPPORT OF NEITHER PARTY

ROBERT W. CLARIDA
REITLER KAILAS & ROSENBLATT LLP
885 Third Avenue, 20th Floor
New York, New York 10022
(212) 209-3050
rclarida@reitlerlaw.com

*Attorneys for Amicus Curiae*
*The Kernochan Center for Law, Media*
*and the Arts*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF INTEREST OF AMICUS CURIAE ...........................1

ARGUMENT ..............................................................................................2

I. Jeff Sedlik's Photograph of Miles Davis Is A Work of Authorship and Von Drachenberg Copied Everything That Makes the Photograph an Original Work...............................................4

    A. Jeff Sedlik's Photograph of Miles Davis Is A Work of Authorship...............................................................................4

    B. Von Drachenberg's Tattoo Copied the Authorial Elements of Sedlik's Photograph.................................................6

    C. By Comparing the Elements of Authorship Common to Both Works, the Proposed Test of Substantial Similarity Foregoes the Problematic Analysis of the Works' "Total Concept and Feel"................................................9

    D. The Proposed Test Avoids the Other Pitfall of "Total Concept and Feel,": Overinclusiveness ...................................15

CONCLUSION...........................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
   672 F.2d 607 (7th Cir. 1982), *superseded in part by statute on other grounds*,
   Fed. R. Civ. P. 52(a), *as recognized in*, *Design Basics, LLC v.
   Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017)........................................13

*Baxter v. MCA, Inc.*,
   812 F.2d 421 (9th Cir. 1987) ...............................................................................14

*Burrow-Giles Lithographic Co. v. Sarony*,
   111 U.S. 53 (1884)................................................................................... 3, 6, 15

*Design Basics, LLC v. Lexington Homes, Inc.*,
   858 F.3d 1093 (7th Cir. 2017) ..............................................................................13

*Feist Publications, Inc. v. Rural Telephone Service Co.*,
   499 U.S. 340 .....................................................................................................6, 10

*Hanagami v. Epic Games, Inc.*,
   85 F.4th 931 (9th Cir. 2023) ................................................................................14

*LaChapelle v. Fenty*,
   812 F. Supp. 2d 434 (S.D.N.Y. 2011) ..................................................................13

*Mannion v. Coors Brewing Co.*,
   377 F. Supp. 2d 444 (S.D.N.Y. 2005) ....................................................... 5, 11, 12

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir. 1930) ......................................................................... 6, 7, 8

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*,
   274 F.2d 487 (2d Cir. 1960) .................................................................................14

*Rogers v. Koons*,
   751 F. Supp. 474 (S.D.N.Y. 1990), *amended by*,
   777 F. Supp. 1 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 301 (2d Cir. 1992) .................13

*Roth Greeting Cards v. United Card Co.*,
   429 F.2d 1106 (9th Cir. 1970) ...........................................................................9, 10

*Sarony v. Burrow-Giles Lithographic Co.*,
   17 F. 591 (C.C.S.D.N.Y. 1883) ................................................................ 3, 5, 6

ii

*Sedlik v. Von Drachenberg*,
  163 F.4th 667 (9th Cir. 2026), *reh'g en banc granted, opinion vacated*,
  177 F.4th 964 (9th Cir. 2026) ............................................................. 2, 10, 12, 13

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir. 1936) ...................................................... 6, 7, 8, 13, 14

*Tangle, Inc. v. Aritzia, Inc.*,
  125 F.4th 991 (9th Cir. 2025) .....................................................................10

*Three Boys Music Corp. v. Bolton*,
  212 F.3d 477 (9th Cir. 2000) ........................................................................2

*Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003) ..........................................................................6

## Statutes & Other Authorities:

Fed. R. Civ. P. 52(a)....................................................................................13

Bruce E. Boyden, *The Grapes of Roth*, 99 WASH. L. REV. 1093 (2024).................14

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*
  § 13D.16(B)(2)(2026) ........................................................................ 12, 13

## PRELIMINARY STATEMENT[1]

The Kernochan Center for Law, Media and the Arts respectfully submits this Memorandum of Law in Support of Neither Party in the above-referenced case to be heard by the 9th Circuit sitting *en banc*.

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The *Amicus* is The Kernochan Center for Law, Media and the Arts ("the Center") at Columbia Law School. Jane C. Ginsburg, Morton L. Janklow Professor of Literary and Artistic Property Law, is the Faculty Co-Director of the Center. Philippa S. Loengard is the Executive Director of the Center. Caitlin M. McGrail is an Associate Research Scholar at Columbia Law School.  Bhamati Viswanathan is a Non-Resident Fellow at the Center.

Founded in 1986 by renowned intellectual property scholar Professor John M. Kernochan, the Center was established to contribute to a broader understanding of the legal aspects of creative works of authorship. Through the teaching of courses at Columbia Law School, educational talks for students and members of the bar, and policy studies, including at the behest of the Copyright Office, the Center's staff seeks to educate and inform about the crucial interests to balance so that the

---

[1] Neither the parties nor their counsel have authored this brief, and neither they nor any other person or entity other than counsel for *amicus curiae* contributed money that was intended to fund preparing or submitting this brief.

1

copyright system can fulfill its mandate of securing protection for authors' creativity and ensure our cultural ecosystem continues to prosper.

## ARGUMENT

This case is about one original work: a photograph of Miles Davis taken by Jeff Sedlik and reproduced as a tattoo on the arm of Blake Farmer without the permission of the photographer. The crux of this case, as in all cases of alleged infringement of creative works, is whether the second work is substantially similar to the original work. In this Circuit, the test for "substantial similarity" begins with a comparison of extrinsic features and then moves to a more holistic, and necessarily subjective, intrinsic test which is "subjective and asks whether the ordinary, reasonable person would find the total concept and feel of the works to be substantially similar." *Sedlik v. Von Drachenberg,* 163 F.4th 667, 676 (9th Cir. 2026) (Wardlaw, J., concurring) (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000)), *reh'g en banc granted, opinion vacated*, 177 F.4th 964 (9th Cir. 2026).

The intrinsic test has been criticized by, among others, two concurring judges in this case, who dispute the emphasis that it places on the works' "total concept and feel," without clearly demarcating which elements to compare to determine whether the works are substantially similar. This criticism points to a central challenge in the

2

substantial similarity analysis: how to compare works holistically and yet avoid overbreadth in the comparison?

The instant case offers a much-needed opportunity to clarify the substantial similarity test in this Circuit. We propose that at the outset of the substantial similarity analysis, the court should compare the works in their entirety to identify their resemblances. The court should then evaluate the similarities in order to ascertain whether they capture the elements of the plaintiff's authorship or instead have in common only abstract "ideas." Situating the similarities on a spectrum of specificity allows the court to determine whether the works converge only at a high level of generality, or instead at the level of specific creative choices.

It has been almost a century and a half since the Supreme Court ruled in *Burrow-Giles Lithographic Co. v. Sarony* that photographs are constitutionally protectable "Writings" of "Authors." *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884). Sarony's portrait of Oscar Wilde represented Sarony's "own original mental conception, to which he gave visible form" through a variety of creative choices including pose, lighting, contrast and overall arrangement. *Id*. (quoting the findings of the Federal District Court in *Sarony v. Burrow-Giles Lithographic Co.*, 17 F. 591 (C.C.S.D.N.Y. 1883)). Reproducing the photographer's creative choices, including in another medium – as was the case in *Sarony*, where the defendant's work was a lithograph – constitutes infringement. The jury verdict and previous

3

holdings in the case at hand lost sight of the defendant's precise replication of the "visible form" to which Sedlik gave his "original mental conception" of the Miles Davis portrait. In assessing substantial similarity, judges and juries should focus on whether the defendant's work substantially copies the authorial choices that make the plaintiff's image an "original work of authorship."

Training attention on the works' commonalities of creative choices avoids the "total concept and feel" or "intrinsic" test's tendencies toward over-inclusive protection of ideas ("concept"), and under-inclusive medium transformation distraction ("feel"), as in Sedlik's case. Our proposed test respects the essence of copyright, to secure exclusive rights in works of authorship to the extent ascribable to the author's creative contributions, and no further.

## I. Jeff Sedlik's Photograph of Miles Davis Is A Work of Authorship and Von Drachenberg Copied Everything That Makes the Photograph an Original Work

### A. Jeff Sedlik's Photograph of Miles Davis Is A Work of Authorship

In creative photographic works, authorship inheres in the visible elements that evince aesthetic and expressive choices. Jeff Sedlik's portrait of Miles Davis shows ample evidence of his authorship. Sedlik's creative decisions reveal his authorial choices in many of the key components that distinguish photographic works: lighting

and shadow, shade, angle and background.[2] The lighting of the subject creates a chiaroscuro effect, casting certain facial features, such as cheeks, nose, forehead, fingernails, and eyes in stark relief, in prominent contrast to the somber background. Similarly, the photographer chooses a camera angle that places the head at a tilt, and allows the play of features to recede and emerge. The photographer has rendered the musical artist as a thinker: his pose is no less meditative than Rodin's "The Thinker," and both postures evoke deep contemplation. Sedlik is portraying a famous musician, and by yoking musical genius to philosophical reflection, Sedlik has imbued his photograph with meaning no less expressive than Sarony's portrayal of Oscar Wilde's "aesthetic" gaze.[3] This is authorship that is fully consonant with *Sarony* and its progeny.

When taken in its totality, there is no doubt that Jeff Sedlik's photograph of Miles Davis is a work of authorship. It is invested with Sedlik's myriad choices that together make a unique and unforgettable portrait of the subject musician. As in

---

[2] Sedlik's choices of cropping, exposure, and film processing embody the indicia that Judge Lewis Kaplan of the Southern District of New York in *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 452-54 (S.D.N.Y. 2005) identified as the elements of a photograph's originality: "creation of the subject" (posing and other compositional choices), timing (capturing a fleeting facial expression), and rendition (the technical execution of the shot, including the camera angle, lens choice, lighting setup, exposure, depth of field, and the way the final image is printed or developed).

[3] Sarony photographed Oscar Wilde when the writer was in New York to promote the D'Oyly Carte Opera Company's production of the Gilbert & Sullivan operetta *Patience*, whose protagonist, the aesthete Bunthorne, gently satirized Wilde.

*Sarony*, the work "give[s] visible expression" to the photographer's artistic ideas and intent. *Burrow-Giles Lithographic Co.,* 111 U.S. at 58.

### B. Von Drachenberg's Tattoo Copied the Authorial Elements of Sedlik's Photograph

The proposed substantial similarity test assesses whether the alleged infringer's work copied the authorial elements of the plaintiff's work. *See Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 361 (a plaintiff must demonstrate "copying of constituent elements of the work that are original"); *Tufenkian Import/Export Ventures Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134-35 (2d Cir. 2003) (Once a judge has "analyze[d] the two works closely to figure out in what respects, if any, they are similar," the judge "then determine[s] whether these similarities are due to protected aesthetic expressions original to the allegedly infringing work, or whether the similarity is to something in the original that is free for the taking."). Asked another way, do the points of convergence between the plaintiff and defendant's work consist of the plaintiff's original expression?

This test reflects fundamental principles of copyright law and closely aligns with the approach to determining infringement that Judge Learned Hand developed in two foundational copyright cases: *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936) and *Nichols v. Universal Pictures Corp.*, 45 F.2d 119 (2d Cir. 1930). In both cases, Judge Hand compared the works, identified their similarities and evaluated whether those similarities, or points of convergence, went to authorial expression.

6

Where the works' similarities converge at the level of authorial expression, as Judge Hand determined in *Sheldon* with respect to the sequence and detail of the works' plots and characters, courts find infringement; when the works converge only at the level of "ideas" and stock devices, as in *Nichols*, courts will not find infringement.

In concluding that the movie *Letty Lynton* infringed the play *Dishonored Lady*, Judge Learned Hand found that the defendant filmmakers appropriated the plaintiff playwrights' original expression. *Sheldon*, 81 F.2d at 55. Judge Hand first examined the works and identified their similarities. *Id.* at 50-55. Though the inspiration for both the play and the movie stemmed from a notorious 19th century news event that later became the basis of a novel on which defendants supposedly based their film, Judge Hand distinguished "the variants [the play] introduced" from the elements in the public domain, including historical fact and "general patterns" of dramatic works. *Id.* at 44. Judge Hand outlined the "details in the same sequence" that the filmmakers took from the playwrights that were without "prototype in either [the news] story or novel," such as the same setting, main characters' personality traits, and plot points "in parallel almost step by step," concluding that the "sequence of these details is pro tanto the very web of the authors' dramatic expression, and copying them is not 'fair use.'" *Id.* at 55. Such "details in the same sequence embody more than the 'ideas' of the play; they are its very raiment." *Id.* In particular, Judge Hand regarded the filmmakers' taking of the "turning point" of the play's plot as a

7

capture of the "essence of the authors' expression, the very voice with which they speak." *Id.* This was so even though the filmmakers appropriated the playwrights' expression for use in a different medium: film. *Id.* Although the filmmakers did not copy the play's dialogue, and they drew some plot elements from the novel, the filmmakers nevertheless captured "the dramatic significance of the [play's] scenes" which were the same "almost to the letter." *Id.* at 56. Such substantial taking of the playwright's original expression sufficed for Judge Hand to find infringement.

By contrast, Judge Hand performed a similar inquiry in *Nichols* and there determined that the points of convergence between the plaintiff's play *Abie's Irish Rose* and the defendant's movie *The Cohens and The Kellys* were limited to the plaintiff's "ideas," such as themes, basic plot points (i.e. warring immigrant families whose children fall in love), and stock characters. Because the defendant did not copy the specific ways in which Anne Nichols developed the theme of interethnic family strife and offsprings' romance, the defendant did not appropriate any original authorship. *Nichols*, 45 F.2d at 122.

Applying Learned Hand's analysis, it becomes clear that Von Drachenberg's tattoo 'tracks' Sedlik's photograph at a very high level of specificity. *See Sheldon*, 81 F.2d at 54 (emphasizing how the film's protagonist "closely" "tracked" the play's protagonist). The points at which the photograph and the tatoo converge include far more than the selected subject matter (musician Miles Davis); Von Drachenberg's

depiction of the subject incorporates all the specific details of the way Sedlik portrayed Miles Davis. Defendant copied the selection of key artistic elements such as rendition, timing of exposure, background, manner of depiction, posing, shading and coloration; the arrangement of elements in the photograph; the aesthetic decisions made as to the highlighting of certain facial elements, the configuration and highlighting of the subject's fingers, and the capture of a specific facial expression; the arrangement of elements in the photograph; and the photographer's aesthetic judgments of how best to convey the subject's personality. Von Drachenberg has replicated each and every expressive element of the original work. In sum, the tattoo shares myriad points of convergence on the specificity end of a spectrum from the general (abstract ideas) to the specific (details in sequence).

### C. By Comparing the Elements of Authorship Common to Both Works, the Proposed Test of Substantial Similarity Foregoes the Problematic Analysis of the Works' "Total Concept and Feel"

Judge Hand's approach properly trains the substantial similarity inquiry on whether the defendant's work appropriated the authorial elements of the original work. This focus on the convergence of authorial elements steers clear of the intrinsic test's widely recognized shortcomings. As Judge Johnstone's concurrence describes, "total concept and feel" was first articulated in *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir. 1970) to "protect the whole of an expression;" namely the "protectable . . . selection and arrangement of . . . otherwise

9

unprotected elements" at issue in *Roth*. *Sedlik* 163 F.4th at 680-81 (Johnstone, J., concurring) (ellipses in original) (quoting *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025)). Nevertheless, while purporting to solve one problem, "total concept and feel" introduced new problems, including enlarging the scope of review beyond the defendant's copying of protectible elements. *See Sedlik,* 163 F.4th at 678 (Wardlaw, J., concurring).

Our proposed substantial similarity test addresses the reason some courts adopted "total concept and feel" in the first place: to ensure that an exclusive focus on a work's protectable components would not sacrifice the forest for the trees by obscuring a work's protectable selection and arrangement of those components. The proposed substantial similarity test, by initially identifying the elements in which authorship inheres, will necessarily 'pick up' selection and arrangement because selection and arrangement (Judge Hand's "details in sequence") is an element of authorship. *See Feist,* 499 U.S. at 348 ("choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws."). Then, the judge will evaluate whether the points of convergence consist of authorial expression, including selection and arrangement (if selection and arrangement is one of the authorial elements of the original work).

10

Furthermore, the proposed inquiry into substantial similarity need not rely on "total concept and feel" or dissection and can stand on its own two feet. The Southern District of New York concluded in *Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005) that "[t]he cases agree that the relevant comparison is between the protectible elements in the [original work] and the [allegedly infringing work], but that those elements are not to be viewed in isolation." *Mannion*, 377 F. Supp. 2d at 462. In *Mannion*, the Southern District of New York properly examined the elements in which authorship inhered, including selection and arrangement, and whether similarities between the two works incorporated those elements:

> The [original work] is protectible to the extent of its originality in the rendition and creation of the subject. Key elements of the [original work] that are in the public domain—such as Kevin Garnett's likeness—are not replicated in the [allegedly infringing work]. Other elements arguably in the public domain—such as the existence of a cloudy sky, Garnett's pose, his white T-shirt, and his specific jewelry— may not be copyrightable in and of themselves, *but their existence and arrangement in this photograph indisputably contribute to its originality*. Thus the fact that the [original work] includes certain elements that would not be copyrightable in isolation does not affect the nature of the comparison. The question is whether the aesthetic appeal of the two images is the same.
>
> The two photographs share a similar composition and angle. The lighting is similar, and both use a cloudy sky as backdrop. The subjects are wearing similar clothing and similar jewelry arranged in a similar way. The defendants, in other words, appear to have recreated much of the subject that Mannion had created and then, through imitation of angle and lighting, rendered it in a similar way.

11

> *The similarities here thus relate to the* [original work]*'s originality in the rendition and the creation of the subject and therefore to its protected elements.*

*Mannion*, 377 F. Supp. 2d at 462-63 (emphases added).[4]

The *Mannion* court's approach demonstrates the effectiveness of the proposed substantial similarity test by evaluating *all* of the elements in which authorship inheres and then considering whether the works' similarities capture those authorial elements.

Second, evaluating whether a defendant has appropriated a plaintiff's authorial contributions retrains the eye to avoid the shortcomings of "total concept and feel." As Judge Wardlaw identified in her concurrence, a jury's evaluation of "[total] concept and feel" may mask "theft," particularly in cases where an original work and its alleged infringement "exist in different media" because "[a]n ordinary observer, untrained in both media, 'may fail to note similarities that, if analyzed and dissected, would be only too apparent.'" *Sedlik,* 163 F.4th at 678 (Wardlaw, J., concurring) (quoting 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13D.16[B][2] (2026)). A medium transformation may distract the jury's focus from the commonality of

---

[4] We note that this approach compares similarities of copyrightable expression at the outset, rather than undertaking the comparison only after filtering out uncopyrightable elements. While a filtration approach may suit functional works such as computer code, it is not appropriate for traditionally expressive works, such as photographs, because it risks losing sight of the creative way in which the author combined elements which, viewed in isolation, might lack authorial expression.

12

authorial elements because "an ordinary observer may find, in practice, that works in different media almost never have the same 'total concept and feel.'" *Id.*

It is well-established that merely changing the medium of an original work does not evade a finding of substantial similarity. *See Rogers v. Koons,* 751 F. Supp. 474 (S.D.N.Y. 1990), *amended by*, 777 F. Supp. 1 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 301 (2d Cir. 1992); *LaChapelle v. Fenty,* 812 F. Supp. 2d 434 (S.D.N.Y. 2011)*; Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607 (7th Cir. 1982), *superseded in part by statute on other grounds*, Fed. R. Civ. P. 52(a), *as recognized in*, *Design Basics, LLC v. Lexington Homes, Inc.*, 858 F.3d 1093 (7th Cir. 2017). Whether adapting a stage play to a motion picture (*Sheldon*), a photograph to a sculpture (*Rogers*), photo to music video (*LaChapelle*), or an arcade audiovisual game to a home video game (*Atari*), courts consistently hold that a mere shift in medium does not detract from the works' overall similarities. The rule holds true even if the change in medium, in Sedlik's case from paper to skin, may necessitate some deviation from the source work.[5] As the *Atari* court points out, the substantial similarity analysis "should not deprive authors of [their] significant statutory grant merely because the technical requirements of a different medium dictate certain differences in expression." *Atari,* 672 F.2d at 618 n.12.

---

[5] In the case at hand it is hard to say there was deviation from the source work. As Judge Johnstone writes in his concurring opinion, "[s]he traced Sedlik's photograph on a light box to create a stencil, which she transferred onto her friend's arm. Then, with Sedlik's photograph hanging at her side as a reference, she tattooed its image onto her friend's skin." *Sedlik*, 163 F.4th at 679 (Johnstone, J. concurring).

Judge Learned Hand's evergreen admonishment that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate," *Sheldon*, 81 F.2d at 56, highlights the risks of deviating the substantial similarity inquiry away from defendant's copying of authorial expression. Retaining the inquiry's exclusive focus on the elements of original authorship and their reproduction in the defendant's work ensures that defendants will not escape liability because of the two works' differences. *See Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960) ("[T]he ordinary observer, *unless he set out to detect the disparities*, would be disposed to overlook them, and regard their aesthetic appeal as the same." (emphasis added)).

The Ninth Circuit has cautioned that, "no bright line rule exists as to what quantum of similarity is permitted before crossing into the realm of substantial similarity." *Hanagami v. Epic Games, Inc.,* 85 F.4th 931, 945 (9th Cir. 2023) (quoting *Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987)); *see also* Bruce E. Boyden, *The Grapes of Roth*, 99 WASH. L. REV. 1093, 1103 (2024) ("[C]ourts have never been very clear about where the line between substantial and insubstantial copying lies."). This case, however, requires no divination: Von Drachenberg tracked *every* creative choice Sedlik made.[6] It is hard to imagine a case with more points of convergence of authorial expression than this one.

---

[6] *See* 3-ER-510 (High Voltage Tattoo Instagram post describing tattoo as "100% exactly the same as the reference" and noting "Photos are traced directly from the actual photo.").

14

### D. The Proposed Test Avoids the Other Pitfall of "Total Concept and Feel,": Overinclusiveness

Judge Wardlaw cogently exposed one trap of the "intrinsic" test, its susceptibility to misleading juries into an unduly narrow understanding of a work's authorship. But the test also may promote an overly broad view of a work's scope of protection. "Total *concept* and feel" (emphasis added) risks miscommunication of the standard of substantial similarity to comprehend commonality of ideas. While Sedlik's case does not present this problem – Von Drachenberg copied far more than the idea of a portrait of Miles Davis – it is worth supplementing our advocacy of the points of convergence analysis to emphasize that it would not sweep ideas into protected subject matter. By situating substantial similarity on a spectrum from unprotectable ideas to details in sequence, our proposed test trains the focus of courts, and juries, on resemblances ascribable to the plaintiff author's creative contributions. Properly instructed, juries should know to ascertain not only "the ideas in the mind of the author," but how the author has given them "visible expression" through specific choices in the execution of those ideas. *Burrow-Giles Lithographic Co.,* 111 U.S. at 58.

### CONCLUSION

For the foregoing reasons, the judgment of the District Court of the Central District of California should be reversed. The intrinsic/extrinsic test currently used by the Ninth Circuit to determine whether two works are substantially similar often

15

leads to analyses which substitute the potentially misleading criterion of the "total concept and feel" of the work in lieu of an in-depth analysis of the convergence of the copyright-protected elements of a work. As a result, courts and juries may in some cases fail to find substantial similarity, and, hence will reject claims of copyright infringement. In other instances, courts and juries, relying on the two works' similarity of overall concept, might neglect a sufficiently rigorous comparison of the ways in which the works develop their common concept. The Ninth Circuit should guard against both undesirable outcomes by abandoning the extrinsic/intrinsic similarity analysis and adopting the points of convergence standard articulated above.

In summary, we propose that, at the outset of the substantial similarity analysis, the court should compare the works in their entirety to identify their resemblances. The court should then evaluate the similarities in order to ascertain whether they capture the elements of plaintiff's authorship or instead have in common only abstract "ideas." Situating the similarities on a spectrum of specificity allows the court to determine whether the works converge only at a high level of generality, or instead at the level of specific creative choices. In the latter event, courts should find prima facie infringement. *Amicus Curiae* respectfully ask that the

16

court remand this case to the District Court and instruct it to apply the proposed substantial similarity test.

Dated: June 30, 2026

Respectfully submitted,

 /s/ Robert W. Clarida
Robert W. Clarida
**REITLER KAILAS & ROSENBLATT LLP**
885 Third Avenue, 20th Floor
New York, NY 10022
Tel: (212) 209-3050
rclarida@reitlerlaw.com

*Counsel for Amicus Curiae*

17

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-3367

I am the attorney or self-represented party.

**This brief contains** 4,000 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Robert W. Clarida **Date** June 30, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*