No. 24-3367

# United States Court of Appeals
# for the Ninth Circuit

JEFFREY B. SEDLIK,
*Plaintiff-Appellant,*

v.

KATHERINE VON DRACHENBERG, et al.,
*Defendants-Appellees.*

On Appeal from the U.S. District Court
for the Central District of California,
No. 2:21-cv-01102-DSF-MRW (Hon. Dale S. Fischer)

# *Amicus Curiae* Brief of Professor Sepehr Shahshahani
# in Support of Neither Party

Professor Sepehr Shahshahani
Washington University School of Law
1 Brookings Dr.
St. Louis, MO 63130
(314) 935-6495
**sepehrs@wustl.edu**
(Affiliation for addressing and iden-
tification purposes only)

## TABLE OF CONTENTS

Table of Contents ...................................................................................1

Table of Authorities.............................................................................2

Interest of *Amicus Curiae* ................................................................6

Introduction.........................................................................................7

Summary of Argument.......................................................................12

Argument............................................................................................16

    I.    This Court's holding that the intrinsic test is the exclusive province of juries is contrary to fundamental principles of federal civil procedure and should be overruled........................16

        A.  No question is exclusively for juries ....................................16

        B.  The availability of a court decision on the extrinsic test does not cure the unavailability of a court decision on the intrinsic test ..............................................................26

        C.  There is no categorical prohibition on a court's weighing of the evidence that would justify the unavailability of a court decision on the intrinsic test........31

        D.  This Court's procedural error has deleterious administrative and substantive effects ..............................35

Conclusion ..........................................................................................39

Certificate of Compliance..................................................................40

Certificate of Service .........................................................................41

## TABLE OF AUTHORITIES

**Cases**

*Aboussa v. New Hampshire,*
  695 F. Supp. 3d 239 (D.N.H. 2023) ................................................18

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .............11, 13, 14, 15, 20, 21, 27, 32, 33, 34, 35

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................17, 18, 19

*Authors Guild v. Google, Inc.,*
  804 F.3d 202 (2d Cir. 2015).............................................................24

*Baker v. Selden,* 101 U.S. 99 (1879) ......................................................8

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)..........................17, 19

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
  489 U.S. 141 (1989) ...........................................................................8

*Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.,*
  347 U.S. 483 (1954) .........................................................................16

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ..............................20, 27

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340 (1991) ...........................................................................8

*Funky Films, Inc. v. Time Warner Ent. Co., L.P.,*
  462 F.3d 1072, 1077 (9th Cir. 2006) ..............................................10

*Google LLC v. Oracle Am., Inc.,* 593 U.S. 1 (2021) ...........................24

*Gray v. Hudson,* 28 F.4th 87 (9th Cir. 2022).....................................10

*Grupo Gigante SA De CV v. Dallo & Co.,*
  391 F.3d 1088 (9th Cir. 2004) .........................................................25

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ....................................................................24

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003)...................24

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  568 U.S. 519 (2013) ....................................................................16

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
  676 F.3d 841 (9th Cir. 2012) .......................................................10

*Lawrie v. Lemoore Air Force Base*, No. 1:12-CV-0091
  AWI GSA, 2012 WL 2617601 (E.D. Cal. July 5,
  2012) ...........................................................................................18

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ....................................................................20

*Mazer v. Stein*, 347 U.S. 201 (1954) ....................................................8

*McLean v. Obama*, No. CIV.A. 15-8,
  2015 WL 3966426 (E.D. La. June 30, 2015) ...............................18

*Moyer v. IBM Corp.*, No. 02 CIV.8894 GEL,
  2003 WL 256931 (S.D.N.Y. Feb. 3, 2003) ...................................18

*Neitzke v. Williams*, 490 U.S. 319 (1989) .........................................20

*New York Times Company v. Sullivan*,
  376 U.S. 254 (1964) ........................................................22, 23, 24

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018)..................29

*Roth Greeting Cards v. United Card Co.*,
  429 F.2d 1106 (9th Cir. 1970) .....................................................38

*Rudisill v. Ford Motor Co.*, 709 F.3d 595 (6th Cir. 2013).................24

*Schuylkill & Dauphin Imp. Co. v. Munson*,
  81 U.S. (14 Wall.) 442 (1871) .....................................................33

3

*Scott v. Harris*, 550 U.S. 372 (2007) ..................................................33

*Sedlik v. Von Drachenberg,*
   163 F.4th 667 (9th Cir. 2026)...............6, 7, 9, 10, 11, 25, 28, 31, 37

*Shahar v. Bowers*, 120 F.3d 211 (11th Cir. 1997) ..............................18

*Shaw v. Lindheim,*
   919 F.2d 1353 (9th Cir. 1990) .........10, 13, 14, 26, 27, 28, 31, 32, 37

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led*
   *Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc) .......... 8, 9, 27, 29

*Smith v. Jackson*, 84 F.3d 1213 (9th Cir. 1996)..............................10

*Solid 21, Inc. v. Breitling U.S.A., Inc.,*
   96 F.4th 265 (2d Cir. 2024) ..................................................24, 25

*Sony Corporation of America v. Universal City Studios,*
   464 U.S. 417 (1984) ................................................................23, 24

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ...........................19

*Three Boys Music Corp. v. Bolton,*
   212 F.3d 477 (9th Cir. 2000) ......................................................10

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.,*
   532 U.S. 23 (2001) .......................................................................8

*Unicolors, Inc. v. Urban Outfitters, Inc.,*
   853 F.3d 980 (2017) ............................................................28, 30

## Statutes

17 U.S.C. § 102.............................................................................9

17 U.S.C. § 107............................................................................27

28 U.S.C. § 1915..........................................................................22

4

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 50 ............................................................ 15, 23, 24, 32

Fed. R. Civ. P. 56 ..................................................... 15, 23, 31, 32, 37

**Federal Rules of Evidence**

Fed. R. Evid. 201.............................................................................19

**Other Authorities**

Bruce E. Boyden, *The Grapes of Roth*,
99 WASH. L. REV. 1093 (2024) ......................................................42

JEANNE S. FROMER & CHRISTOPHER JON SPRIGMAN,
COPYRIGHT LAW: CASES AND MATERIALS (v7.0 2025).....................33

PETER S. MENELL ET AL., INTELLECTUAL PROPERTY IN THE
NEW TECHNOLOGICAL AGE (2023 ed.) .............................................33

Sepehr Shahshahani & Maggie Wittlin,
*The Missing Element in Trademark Infringement*,
110 IOWA L. REV. 1247 (2025)................................................. 43, 44

Sepehr Shahshahani, *Fact-Law Confusion* (unpublished
manuscript) ................................................................................13

## INTEREST OF *AMICUS CURIAE*[1]

Sepehr Shahshahani is a professor at Washington University School of Law and an expert in civil procedure and intellectual property law. As an academic expert, he has a strong interest in the sound development and application of law in these fields. He is concerned that the Ninth Circuit's application of the extrinsic/intrinsic test for assessing unlawful appropriation in copyright is inconsistent with fundamental principles of federal civil procedure. Specifically, this Court's holding that applying the intrinsic test is "exclusively" and "uniquely" the province of juries, *see, e.g., Sedlik v. Von Drachenberg*, 163 F.4th 667, 674 (9th Cir. 2026), falls into serious error. In federal civil procedure, there is no such thing as a question that is *exclusively* for the jury to decide; *any* question may, in appropriate circumstances, be decided by the court as a matter of law. This is true even of pure questions of fact, let alone a mixed question of law and fact like unlawful appropriation.

---

[1] No party or party's counsel has authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting the brief. No person has contributed money that was intended to fund preparing or submitting the brief, except that Washington University School of Law may pay the expenses involved in filing this brief.

*Amicus* is concerned that in leaving the application of the intrinsic test always to juries, the Ninth Circuit has both misunderstood basic civil procedure and injected unnecessary inconsistency and unpredictability into substantive copyright law. His interest in filing this *amicus* brief is to assist this Court in setting right the procedural dimension of the extrinsic/intrinsic test. He takes no position on the merits of the parties' claims, nor on the shape that the extrinsic/intrinsic test should take as a matter of substantive copyright doctrine. His sole interest in filing this brief is to help put Ninth Circuit copyright law on a sound procedural footing.

**INTRODUCTION**

The photographer Jeffrey Sedlik claims that the tattoo artist Katherine Von Drachenberg infringed his copyright in a photograph of Miles Davis by tattooing a reproduction of the photograph on a patron's arm. To prevail on such a claim, a plaintiff who owns a valid copyright must show both that the defendant copied the plaintiff's copyrighted work (the "copying" element) and that what the defendant copied was protectable expression (the "improper appropriation" or "unlawful appropriation" or "substantial similarity" element). *Skidmore as Tr. for Randy Craig Wolfe*

7

*Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). The first element ensures that defendant's work was not independently created (for in copyright, unlike in patent, independent creation is not a violation); the second element ensures that plaintiff's copyright is not effectively extended to uncopyrightable materials. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-46 (1991); *Skidmore*, 952 F.3d at 1064.

The second element is crucial because copyright protects only expression, not ideas or facts. 17 U.S.C. § 102(b); *Baker v. Selden*, 101 U.S. 99, 102 (1879); *Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Feist*, 499 U.S. at 344. Copying ideas or facts (unless protected by patents) is permissible—indeed, often beneficial and encouraged. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 159-60 (1989). So although copyright attaches to a *work*, a copyrightable work (be it a novel, movie, statue, or anything else) includes many things that are uncopyrightable, the copying of which is therefore perfectly lawful. *Feist*, 499 U.S. at 348.

Ninth Circuit caselaw establishes that to show unlawful appropriation, a plaintiff must satisfy both an "extrinsic" and an "intrinsic" test. *Skidmore*, 952 F.3d at 1064. The extrinsic test requires "compar[ing] the objective similarities of specific expressive elements in the two works," taking care to distinguish protectable expression from unprotectable materials like ideas, to determine whether the allegedly infringing work has taken enough protectable expression from the allegedly infringed work. *Id.* The intrinsic test considers the two works side by side to determine whether, from the standpoint of the "ordinary observer," they are substantially similar in "total concept and feel." *Sedlik*, 163 F.4th at 673-74.

As the concurring panel opinions in this case point out, the extrinsic/intrinsic test has been much criticized as a matter of substantive copyright doctrine. *See Sedlik*, 163 F.4th at 678 (Wardlaw, J., concurring); *id.* at 685 (Johnstone, J., concurring). This *amicus* brief takes no position on those substantive concerns, focusing exclusively on the *procedural* dimension of the test.

To wit, this Court has repeatedly held that although the extrinsic test may be decided by courts as a matter of law, involving as it does the legal question of separating copyrightable from uncopyrightable material, the

intrinsic test is "exclusively" and "uniquely" the province of juries because it entails the holistic, impressionistic factual determination of substantial similarity in total concept and feel. *See, e.g.*, *Sedlik*, 163 F.4th at 674; *Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022); *Funky Films, Inc. v. Time Warner Ent. Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006); *Shaw v. Lindheim*, 919 F.2d 1353, 1361 (9th Cir. 1990); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1166 (9th Cir. 1977).

The idea that the intrinsic test is exclusively for juries is not mere rhetoric. In case after case, this Court has applied the idea to render jury decisions under the intrinsic test unassailable, effectively insulating the issue from judicial determination. *See, e.g.*, *Shaw*, 919 F.2d at 1358, 1361; *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000); *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012).

In the case at bar, a panel of this Court affirmed the district court's judgment of no liability by deferring without analysis to the jury's finding of no substantial similarity under the intrinsic test. *Sedlik*, 163 F.4th at 675. The panel opinion engaged in no discussion of whether there was a

10

genuine dispute of material fact on intrinsic similarity—no discussion of whether the evidence was so one-sided that any reasonable jury would have to find for the plaintiff on his renewed motion for judgment as a matter of law—as well-established law requires. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Rather, the panel opinion's analysis in its entirety consists of saying that the intrinsic test is for the jury and the jury decided it, so we affirm. *See Sedlik*, 163 F.4th at 675. As the opinion concisely states at the outset, "the district court did not err in denying Sedlik's Rule 50(b) motion because the jury's verdict was based on an application of the intrinsic test." *Id.* at 671.

That was a grave error. The idea that a question is uniquely for juries, to the exclusion of courts, is contrary to elementary principles of federal civil procedure. There is no such thing as a question that is always for juries, never for courts. There is no such thing as an issue that is categorically immune to summary judgment and judgment as a matter of law. *Any* question may be decided by a court as a matter of law if the evidence is such that no reasonable jury could find for one party. This is true even of the purest of pure questions of fact, let alone a question like substantial

similarity, which mixes a heavy dose of legal judgment with factual determinations. This Court's holding that the intrinsic test is only for juries thus runs afoul of well-established principles of federal civil procedure. The consequence is a copyright-infringement test that is not only procedurally defunct but also unnecessarily unpredictable. To put Ninth Circuit copyright law on a sound procedural footing, this Court should disavow the idea that the intrinsic test is always for juries to apply.

## SUMMARY OF ARGUMENT[2]

This Court's longstanding holding that the intrinsic test is exclusively for juries contradicts fundamental principles of federal civil procedure. There is no such thing as a question that is always for juries, never for courts. The Federal Rules of Civil Procedure, as interpreted by the U.S. Supreme Court, establish beyond doubt that any question—even a pure question of act—may be decided by a court as a matter of law if the answer to the question is sufficiently clear.

---

[2] The arguments in this *amicus* brief draw on Sepehr Shahshahani, *Fact-Law Confusion* (unpublished manuscript), which contains a fuller exposition.

The meaning of "sufficiently clear" depends on the stage of litigation. At the pleading stage, prior to discovery, a judge may weigh in on a question of fact only if the answer is capable of judicial notice or if a factual allegation is so outlandish as to defy reality. *See* infra Section I.A. After discovery, a question of fact may be decided by a court, pursuant to a motion for summary judgment or a (renewed) motion for judgment as a matter of law, whenever the evidence bearing on it is so "one-sided" that any reasonable jury would have to answer the question one way and not the other. *See Anderson*, 477 U.S. at 251–52.

These are elementary principles of civil procedure. They apply regardless of the nature of the question—factual or legal—and in all areas of substantive civil law, as evidenced by numerous decisions of the Supreme Court and the U.S. Courts of Appeals, including this Court. *See* infra Section I.A. In preserving the intrinsic test as the exclusive domain of juries, this Court has effectively nullified well-established procedural law, especially Rules 50 and 56 of the Federal Rules of Civil Procedure.

This Court attempted to justify this anomaly in *Shaw v. Lindheim*, but none of its proffered justifications are persuasive. Namely, the availability of summary judgment on the extrinsic test cannot make up for its

13

unavailability on the intrinsic test, because the two tests are distinct requirements of unlawful appropriation. It does not make sense to say that the court's inability to decide one element of a claim is somehow cured by its ability to decide *another* element.

Moreover, given that both the extrinsic and intrinsic tests must be satisfied to show unlawful appropriation, the impossibility of judicial resolution of the intrinsic test deprives copyright plaintiffs of the ability to obtain summary judgment or judgment as a matter of law. This contradicts the elementary principle that such judgments are available to plaintiffs as well as defendants.

Nor can the exclusion of courts from the intrinsic test be justified by appealing to the statement in *Anderson* that "the judge's function is not . . . to weigh the evidence." *See Shaw*, 919 F.2d at 1359 (quoting *Anderson*, 477 U.S. at 249). Interpreting this statement as a categorical rule against the judicial weighing of evidence would contradict the text of Rule 56 by reading "genuine" out of "genuine dispute," requiring the submission of *any* dispute of material fact to the jury. It would also contradict *Anderson* itself, which explicitly cautions against such a reading. *See* 477

14

U.S. at 247–48, 252. Cases are legion in which courts have granted summary judgment or judgment as a matter of law after weighing evidence. *See* infra Sections I.A, I.C.

This Court's holding that the intrinsic test is incapable of judicial resolution deprives the judicial system of significant efficiencies. It also damages substantive copyright law by leaving an element of infringement entirely to the black box of jury decisionmaking, foreclosing judicial guidance and development.

These deleterious consequences do not necessarily require wholesale abandonment of the intrinsic test (a question on which this *amicus* brief does not take a position). They do, however, require a clear disavowal of the holding that the intrinsic test is the exclusive province of juries. This Court should overrule that holding and clarify that the intrinsic test—like any other question—may be decided by a court in appropriate circumstances.

15

## ARGUMENT

**I.  This Court's holding that the intrinsic test is the exclusive province of juries is contrary to fundamental principles of federal civil procedure and should be overruled**

**A. No question is exclusively for juries**

Begin with the basics. It is a commonplace that questions of law are for judges and questions of fact are for juries to decide. (In the context of allocating decisionmaking authority, this brief uses "judge(s)" and "court(s)" synonymously.) When it comes to pure questions of law, it is clear that they are *always* for judges. No one who knows the first thing about American civil procedure would doubt, for example, that it is for a court and not a jury to decide whether the Constitution permits public schools' segregation of schoolchildren by race, *see Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483 (1954), or whether the copyright "first sale" doctrine applies to copies of a copyrighted work lawfully made abroad, *see Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013).

It does not follow, however, that questions of fact are always for juries to decide. Rather, the truism that questions of fact are for juries means that questions of fact (unlike questions of law) *may* be decided by juries—but they may also be decided by courts, in appropriate circumstances.

16

Specifically, a question of fact may be decided by a court if the answer to the question is sufficiently clear. The meaning of "sufficiently clear" changes as a case progresses through the stages of litigation, with the court acquiring greater authority to weigh in on questions of fact in later stages.

At the pleading stage, the court must assume the truth of all properly pleaded factual allegations in a complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This presumption of truth guarantees that the judge will not weigh in on what the facts are—for now—leaving them to be determined later in litigation.

But even at this early stage, the court may find facts that are capable of judicial notice. *See, e.g., Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); 5B Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1357 (4th ed. 2026). This applies to facts that are "not subject to reasonable dispute" because they are "generally known" within the jurisdiction or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). As one court has explained, "the kinds of things about which courts ordinarily take judicial notice are (1)

17

scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).

Courts may also weigh in on the facts at the pleading stage by refusing to accept "allegations that are sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel." *Iqbal*, 556 U.S. at 696 (Souter, J., dissenting). Such "fantastic" factual allegations are not usually encountered in complaints, but courts readily reject them when they do appear, often in *pro se* pleadings, and often about mysterious mind control or suchlike. *See, e.g.*, *Lawrie v. Lemoore Air Force Base*, No. 1:12-CV-0091 AWI GSA, 2012 WL 2617601, at *1 (E.D. Cal. July 5, 2012); *Moyer v. IBM Corp.*, No. 02 CIV.8894 GEL, 2003 WL 256931, at *2 (S.D.N.Y. Feb. 3, 2003); *McLean v. Obama*, No. CIV.A. 15-8, 2015 WL 3966426, at *2 (E.D. La. June 30, 2015); *Aboussa v. New Hampshire*, 695 F. Supp. 3d 239, 242–44 (D.N.H. 2023).

Notice that the authority of courts to reject fantastic factual allegations is entirely distinct from the idea of plausibility pleading under

*Twombly* and *Iqbal*. The plausibility requirement targets the plausibility of *entitlement to relief*—assuming the factual allegations are true—not the plausibility of factual allegations. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678.

Indeed, some complaints that were dismissed as fantastic contained allegations that, if true, *do* show a plausible entitlement to relief. For example, one court dismissed a complaint alleging that the government "programmed" plaintiff and his family by "psychotronic remote mind control" and targeted him for such programming "because of racial animus" on the grounds that it was based on "fantastic or irrational allegations." *Aboussa*, 695 F. Supp. 3d at 242–44. But such allegations, if true, spell out a plausible claim of race discrimination. *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (holding that a claim of discrimination on the basis of age and national origin survived a motion to dismiss for failure to state a claim where the complaint alleged that the plaintiff was treated adversely compared to a less-qualified but younger employee of a different national origin). So the complaint's fatal defect was entirely factual, not legal. The problem was not that the claim is implausible assuming

19

the factual allegations are true; the problem was that the factual allegations cannot possibly be true.

The upshot is that, in most contexts, only judicial notice or fantastic allegations justify a court's foray into factfinding at the pleading stage.[3] When the case moves past pleadings and discovery to the summary judgment stage, though, courts acquire greater authority to weigh in on facts.

At this stage, the court is dealing not only with allegations but also with evidence, and there is no longer a presumption of truth accorded to (non-fantastic) factual allegations. Rather, the familiar standard is that the judge should let a question go to the jury only if it entails a "genuine dispute" of "material fact." Fed. R. Civ. P. 56(a).

The two key words here are "material" and "genuine." The Supreme Court elaborated their meaning in the famous 1986 trio of summary judgment decisions: *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A "material" fact is one that

---

[3] In other contexts, Congress has authorized greater pleading-stage judicial scrutiny of facts. *See, e.g.*, 28 U.S.C. § 1915; *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

More to the point for present purposes, a "genuine" dispute is one in which both sides have something substantial to say for themselves—a truly two-sided dispute, not a "one-sided" one. *Id.* at 248, 251–52. A dispute counts as genuine only if the evidence on both sides is sufficiently strong that a reasonable juror could find for either side (or, for purposes of one party's motion for summary judgment, if a reasonable jury could find for the nonmoving party). *Id.* at 248. The inquiry is the same when a judge rules on a motion (or renewed motion) for judgment as a matter of law under Rule 50: "In essence, . . . the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.[4]

---

[4] *See also id.* at 250–51 ("[T]his standard [for summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.") (citations omitted).

In light of this well-established law, the truism that questions of fact are for juries cannot possibly mean that questions of fact *must* be decided by juries *in every case*; it means, instead, that questions of fact *can* be decided by juries. What determines whether a question of fact is for the judge or jury to decide is not the nature of the *question* but how clear the *answer* to the question is. When the weight of considerations bearing on the answer is sufficiently one-sided, the judge may decide the question and take it away from the jury. The threshold of one-sidedness that is required for the judge to become the decider is lowered as a civil case moves forward: from "judicial notice" and "fantastic" in the pre-discovery stage to "no reasonable jury" post-discovery.

There are countless cases in which a court decided a question of fact and took it away from the jury. Take, for example, the canonical case of *New York Times Company v. Sullivan*, 376 U.S. 254 (1964). Although the Supreme Court's holding that the First Amendment requires a showing of "actual malice" for a public official to recover damages for defamation was a purely legal determination, its holding that the constitutionally required standard was not met in the case entailed substantial factfind-

22

ing and factual inference-drawing. The Court probed deeply into the factual record to assess individual defendants' knowledge or recklessness, as well as whether a Times official's belief about the veracity of an advertisement was "reasonable" and held in "good faith." *See id.* at 286–88.

Consider also the famous copyright case of *Sony Corporation of America v. Universal City Studios*, 464 U.S. 417 (1984). In holding that customers' use of VCRs to record television programs for later viewing ("time shifting") was a fair use, the Court made many findings and inferences of fact about the prevalence and economic impact of the practice—including whether time shifting suppressed demand for copyright owners' works, led to people watching less television, or decreased the value of copyrighted works, as well as the difficulty, extent, and impact of customers' fast-forwarding through commercials. *See id.* at 442–56.

More generally, deciding the question of fair use often entails factfinding (in addition to legal determinations) because it requires considering the particular nature of the allegedly infringing use and its effect on the market for the allegedly infringed work, among other considerations. *See* 17 U.S.C. § 107. But the presence of these factual questions has not prevented the Supreme Court or the U.S. Courts of Appeals, including this

23

Court, from routinely granting summary judgment or judgment as a matter of law on fair use. *See, e.g.*, *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985); *Sony, supra*; *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003); *Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015).

Even on questions implicating state of mind (intent, knowledge, scienter, good faith, and the like)—questions that are the traditional forte of juries—there are many examples of courts granting summary judgment or judgment as a matter of law after weighing the evidence and finding it so one-sided as to preclude reasonable disagreement. *See, e.g.*, *Sullivan,* 376 U.S. at 286–88 (granting judgment as a matter of law on the issue of knowledge or recklessness); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1412, 1424–28 (9th Cir. 1994) (affirming summary judgment on the issue of scienter while acknowledging it to be a "fact-specific issue[]"); *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 612 (6th Cir. 2013) (affirming summary judgment on whether defendant deliberately intended to injure plaintiff); *Solid 21, Inc. v. Breitling U.S.A., Inc.*, 96 F.4th 265, 279 (2d Cir. 2024) (affirming summary judgment on the issue of good faith).

24

Indeed, as the Second Circuit has affirmed, "[t]he summary judgment rule would be rendered sterile if mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Solid 21*, 96 F.4th at 279 (citations and quotation marks omitted). The same goes for any other issue, no matter how fact-intensive. This Court has put it best:

> The concurring opinion is incorrect in its suggestion that the case necessarily must go to trial because distinctiveness of a mark is a question of fact and defendants have contested the reliability of plaintiffs' survey evidence. *That conclusion flies in the face of the 1986 triumvirate of summary judgment cases. Regardless of whether questions are factual*, there is nothing to try unless there is a genuine issue of material fact.

*Grupo Gigante SA De CV v. Dallo & Co.*, 391 F.3d 1088, 1098–99 (9th Cir. 2004) (emphasis added).

To sum up, there is no such thing as a question that is "exclusively" and "uniquely" the province of juries, as *Sedlik* and other decisions of this Court have held of the intrinsic test. There is no issue that is immune to summary judgment or judgment as a matter of law. Even pure questions of fact may be decided by the court if the evidence on the question is so one-sided that a reasonable jury could answer it only one way. To hold that a question is *always* for juries blatantly contradicts fundamental

25

principles of federal civil procedure, especially the Supreme Court's 1986 trio of summary judgment decisions.

### B. The availability of a court decision on the extrinsic test does not cure the unavailability of a court decision on the intrinsic test

How could this Court not notice this blatant contradiction? Interestingly, it did. In *Shaw v. Lindheim*, decided four years after the 1986 trio, the court allowed itself to doubt whether Ninth Circuit precedent prohibiting summary judgment on intrinsic similarity can be squared with the principle that "[t]he test for summary judgment in a copyright case must comport with the standard applied to all civil actions." 919 F.2d at 1358–59. But it quickly banished all doubt and reaffirmed that the intrinsic test is always for juries. *Id.* at 1360.

The reasoning in *Shaw* is not always easy to follow, at points digressing into ruminations on "the subjective process of comprehension, reasoning, and understanding" buttressed by quotations from Coleridge and Shakespeare. *See id.* at 1360-61. But the core of the argument seems to be that the extrinsic test takes care of all that is "objective" in determining unlawful appropriation, leaving for the intrinsic test "a mere subjective judgment as to whether two . . . works are or are not similar." *Id.* at

1357. The intrinsic test is thus, by nature, incapable of being decided by a court, because such a decision would entail substituting a judge's "purely subjective determination" for the jury's. *Id.* at 1359-60. Ultimately, though, *Shaw* says that the unavailability of summary judgment on the intrinsic test is not a problem under *Anderson* or *Celotex* or Rule 56 because summary judgment on unlawful appropriation is available under the extrinsic test. *Id.* at 1355, 1359.

This reasoning totally fails. Recall that intrinsic similarity is an *element* of a copyright infringement claim under Ninth Circuit caselaw. *Skidmore*, 952 F.3d at 1064. Quite apart from the difficulty of erecting as an element of a cause of action a determination that is "purely subjective" and "virtually devoid of analysis," *Shaw*, 919 F.2d at 1359, 1357—that is to say, virtually outside rationality—it makes no sense to say that the unavailability of summary judgment on one element of a cause of action is cured by its availability on *another* element. It is as if a court were to say that the element of causation in tort requires satisfying the sub-elements of cause in fact and proximate cause, and only the latter can ever be decided by a court. It is absurd to say of a legally required showing

27

that it is "not a legal conclusion" that can ever be decided by a court. *See id.* at 1360.

Moreover, given that the extrinsic and intrinsic tests must *both* be satisfied to prevail on a claim of copyright infringement, the availability of summary judgment on the extrinsic test can help only a defendant, not a plaintiff. *See Sedlik*, 163 F.4th at 682 (Johnstone, J., concurring). But it is elementary that summary judgment and judgment as a matter of law are available to plaintiffs as well as defendants. *See* Fed. R. Civ. P. 50 (allowing judgment as a matter of law for "a party," without restriction to plaintiffs or defendants); Fed. R. Civ. P. 56 (ditto for summary judgment).

Underscoring this problem, Judge Johnstone's concurring opinion in *Sedlik* notes that the Ninth Circuit has granted summary judgment to a copyright plaintiff "in only one published opinion." *Sedlik*, 163 F.4th at 682 (Johnstone, J., concurring). That opinion is *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980 (2017). *Unicolors* affirmed the grant of summary judgment for plaintiff fabric designer on a claim of copyright infringement against defendant retail store, holding that the overwhelming similarities between the parties' fabric designs justified the district

28

court's decision to take the question away from the jury. *Id.* at 985-86. This sounds promising, until one notices that the court mixed up the elements of copyright infringement.

The culprit is a common confusion about the meaning of "substantial similarity." Copyright caselaw uses the term "substantial similarity" to mean two distinct things: (1) similarity that tends to dispel independent creation and strengthen the inference of copying (recall that copying is an element of copyright infringement, *see* supra Introduction), (2) similarity in protectable expression. To avoid confusion, it's preferable to use different terms to denote the two different meanings—such as "probative similarity" for the first and "unlawful appropriation" for the second—and textbooks warn students not to confuse them. *See, e.g.*, PETER S. MENELL ET AL., INTELLECTUAL PROPERTY IN THE NEW TECHNOLOGICAL AGE 665 (2023 ed.); JEANNE S. FROMER & CHRISTOPHER JON SPRIGMAN, COPYRIGHT LAW: CASES AND MATERIALS 222 (v7.0 2025). The Ninth Circuit itself has sounded the same warning. *See Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by Skidmore* ("Unfortunately, we have used the same term—'substantial similarity'—to describe both the degree of similarity relevant to proof of copying and the

degree of similarity necessary to establish unlawful appropriation. The term means different things in those two contexts.").

But the *Unicolors* court fell prey to just such a confusion: The defendant-appellant's argument that the district court improperly took the question of intrinsic similarity away from the jury speaks to the *second* sense of "substantial similarity" (unlawful appropriation), but in rejecting this argument the Ninth Circuit repeatedly stated that the similarities were so overwhelming as to exclude the possibility of copying, which speaks to the *first* sense (copying). *See Unicolors*, 853 F.3d at 985 ("Because substantial similarity is usually an extremely close issue of fact, summary judgment has been disfavored in cases involving intellectual property. However, a grant of summary judgment for the plaintiff is proper where works are *so overwhelmingly identical that the possibility of independent creation is precluded*.") (emphasis added, citations and quotation marks omitted); *id.* at 986 ("Urban argues that only a jury may apply the intrinsic test, and that because a plaintiff must satisfy both the extrinsic and intrinsic tests to prove copying [notice the mistaken linking of the extrinsic/intrinsic test to copying], copyright cases such as this one cannot be resolved at summary judgment. Its position has been adopted

30

by one district court [note that the court is missing *Shaw* and all the other Ninth Circuit cases that had adopted the same position]. But Urban's position cannot be reconciled with our prior recognition that, in exceptional cases, works may be so identical that summary judgment in favor of a plaintiff is warranted. . . . A grant of summary judgment for plaintiff is proper where works are *so overwhelmingly identical that the possibility of independent creation is precluded.*") (emphasis added, citations and quotation marks omitted); *accord id* at 987.

In short, *Unicolors* did the right thing for the wrong reason. The decision does not stand for a procedural course correction on the intrinsic test, but rather for confusing the elements of copyright infringement. That is probably why it has not been followed in subsequent Ninth Circuit jurisprudence, which continues to hold that the intrinsic test is categorically for juries. *See, e.g.*, *Sedlik*, 163 F.4th at 674; *Gray*, 28 F.4th at 97. This Court should overrule that holding.

### C. There is no categorical prohibition on a court's weighing of the evidence that would justify the unavailability of a court decision on the intrinsic test

In addition to the principal justification rebutted in the preceding Section, the court in *Shaw* justified its decision to keep judges out of the

31

intrinsic test by alluding in passing to the statement in *Anderson* that "at the summary judgment stage, the judge's function is not . . . to weigh the evidence." *Shaw*, 919 F.2d at 1359 (quoting *Anderson*, 477 U.S. at 249). Though this is no more than a throwaway line in *Shaw*, it merits addressing for the sake of completeness.

It is true that the Supreme Court in *Anderson* said that "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." 477 U.S. at 255. But it would be an elementary mistake to read that statement as requiring the submission of a dispute to a jury whenever it involves any "weighing of the evidence"—that is, whenever there is *some* evidence on both sides of the dispute. Such an interpretation would read "genuine" out of "genuine dispute" in the text of Rule 56(a), requiring the submission of *any* dispute of material fact to the jury.

And it would clearly contradict *Anderson* itself, which affirms, "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." 477 U.S. at 252. *See also id.* at 247–48

32

("By its very terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphases in original). Indeed, *Anderson* quoted with approval a long passage from an 1871 opinion debunking the idea that the mere existence of "some evidence" or "a *scintilla* of evidence" on the nonmovant's side is sufficient to require a jury trial. *Id.* at 251 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1871)).

The Supreme Court has subsequently reaffirmed that feeble evidence on one side of a dispute, such as evidence contradicted by unimpeachably accurate evidence on the other side, is not sufficient to avoid summary judgment: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Indeed, it is quite rare on summary judgment for one party to have *no* evidence supporting its position; the question, almost always, is whether

33

the evidence is enough to convince a reasonable jury, which requires the judge to "weigh the evidence." Many decisions cited in Section I.A serve as examples of such judicial weighing of evidence.

Therefore, the right reading of the sentence "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" cannot be a blanket no-weighing-of-evidence rule. The right reading, consistent with other passages in *Anderson,* is that—once the judge has determined that there is sufficient evidence for a reasonable jury to rule in favor of either party—it's not the judge's job to go further and decide who should win. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); *id.* at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."). This is consistent with the familiar requirement that courts must construe the evidence in

34

the light most favorable to the nonmovant and draw "all justifiable inferences" in the nonmovant's favor. *Id.* at 255.

In sum, preserving the intrinsic test as the exclusive domain of juries cannot be justified by a categorical rule that judges should never weigh evidence. There is no such rule.

### D. This Court's procedural error has deleterious administrative and substantive effects

This Court's decision to keep the intrinsic test exclusively to juries imposes unnecessary costs on the judicial system. Decisionmaking by a jury is substantially costlier than decisionmaking by a judge. There is the lengthy process of *voir dire* and jury empanelment. Then there is the substantial work of ruling on the admissibility of evidence, preparing jury instructions, and holding jurors' hands through myriad technicalities and questions of law to arrive at the precise questions of fact which they are supposed to answer—work that is obviated when the court itself renders a decision. In addition to these burdens on the judicial system, there is the burden on jurors themselves, who are pulled away from their daily lives into unfamiliar territory; the added burden on a judge is much lighter, since deciding disputes is the judge's full-time job.

35

Given this substantial cost differential, juries should be called upon only when their comparative advantage (if any) in deciding questions of fact is likely to bite. The system should incur the extra cost of drawing on laypeople's greater expertise in answering a question of fact only if the question is close enough for the expertise differential to matter. If the question has a clear answer, such that any reasonable factfinder would decide it the same way, the extra cost is not worth bearing. So, by requiring a jury decision on the intrinsic test regardless of how close the question is, this Court denies the benefits of greater administrative efficiency to the judicial system and potential jurors.

But that is not the only cost of this Court's procedural error. The error also infects substantive copyright law. As discussed, the principle that questions of fact may be decided by courts when their answer is sufficiently clear applies even to the purest of pure questions of fact. But unlawful appropriation is far from such a pure question: It requires determining whether substantial similarity covers copyrightable expression, which inescapably involves legal judgment. Leaving the question entirely

36

to the black box of jury decisionmaking thus injects unwelcome uncertainty and unpredictability into copyright law. *See Sedlik*, 163 F.4th at 676 (Wardlaw, J., concurring); *id.* at 682–84 (Johnstone, J., concurring).

It is no answer to say, as the court in *Shaw* did, that the extrinsic test takes care of all that is "objective," leaving for the intrinsic test only a "subjective" determination that is by nature incapable of considered legal judgment. *See Shaw*, 919 F.2d at 1357. As discussed, the intrinsic test cannot simultaneously be both an element of a copyright infringement claim and "not a legal conclusion" capable of judicial resolution. *See id.* at 1360.

None of this is to say, however, that the intrinsic test is intrinsically flawed. To be sure, *Shaw* did not inspire confidence in the substantive merits of the intrinsic test by describing it as "purely subjective" and "virtually devoid of analysis." *Id.* at 1359, 1357. If that is so, then Ninth Circuit copyright doctrine has a big problem. *See, e.g.*, Bruce E. Boyden, *The Grapes of Roth*, 99 WASH. L. REV. 1093, 1098 (2024) ("[W]hen substantial similarity cases go to the jury, a panel of non-experts is asked to apply an empty standard, with no reasonable probability that the resulting decision will be based on protected material.").

37

But it may be possible to develop an intrinsic test that is not wholly irrational. After all, the principle that originally inspired the idea of "total concept and feel"—that one should not be able to escape liability for copyright infringement by dissecting a copyrightable work into constituent pieces that are each, standing alone, uncopyrightable—is not unsound. *See Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109–10 (9th Cir. 1970). A similar anti-dissection rule enjoys wide support in trademark law. *See* Sepehr Shahshahani & Maggie Wittlin, *The Missing Element in Trademark Infringement*, 110 IOWA L. REV. 1247, 1259 (2025). That rule, when well-applied, requires the plaintiff to show what it is in the combination of individually unprotectable parts that makes the whole protectable, and to prove that the allegedly infringed and infringing marks are confusingly similar with respect to protectable features. *See id.* at 1259–60, 1264–65.

But even if it's possible to (re)construct a version of the intrinsic test that fixes its substantive problems—a question on which this *amicus* brief takes no position—that would not fix its *procedural* infirmity. Even if the intrinsic test were to incorporate articulable standards that form the basis of meaningful jury instructions, and even if applying those

standards would often entail factfinding, the test cannot be always for juries, never for courts. A question that is always for juries is not a thing.

## CONCLUSION

This Court's holding that the intrinsic test is exclusively for juries to decide flies in the face of elementary and fundamental principles of federal civil procedure. This Court should overrule that holding and clarify that the question of unlawful appropriation—like any other question— may be decided by a court as a matter of law if the answer to the question is sufficiently clear.

Respectfully Submitted,

s/ Sepehr Shahshahani_____

Attorney for *Amicus Curiae*

Professor Sepehr Shahshahani
Washington University School of Law
1 Brookings Dr.
St. Louis, MO 63130
(314) 935-6495
sepehrs@wustl.edu
(Affiliation for addressing and identification purposes only)

39

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-3367

I am the attorney or self-represented party.

**This brief contains** 6,997 **words, including** 0 **words**

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  ☐ it is a joint brief submitted by separately represented parties.
  ☐ a party or parties are filing a single brief in response to multiple briefs.
  ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Sepehr Shahshahani **Date** June 30, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief *Amicus Curiae* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 30, 2026. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: June 30, 2026

s/ Sepehr Shahshahani
Attorney for *Amicus Curiae*

—
Professor Sepehr Shahshahani
Washington University School of Law
1 Brookings Dr.
St. Louis, MO 63130
(314) 935-6495
sepehrs@wustl.edu
(Affiliation for addressing and identifi-
cation purposes only)

41