# No. 24-3367

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JEFFREY B. SEDLIK, an individual,

*Plaintiff-Appellant*,

v.

KATHERINE VON DRACHENBERG (A/K/A "KAT VON D"), an individual;
KAT VON D., INC., a California corporation; and
HIGH VOLTAGE TATTOO, INC., a California corporation,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 2:21-cv-01102 (Hon. Dale S. Fischer)

## BRIEF OF *AMICI CURIAE* BRUCE BOYDEN AND ZAHR SAID
## IN SUPPORT OF NEITHER PARTY

ZAHR K. SAID
Professor of Law
Santa Clara University School
   of Law
500 El Camino Real
Santa Clara, CA  95053

BRUCE E. BOYDEN
Associate Professor of Law
Marquette University Law School
P.O. Box 1881
Milwaukee, WI  53201-1881
(414) 288-5492
bruce.boyden@marquette.edu
*Attorney for Amici Curiae*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................................iv

STATEMENT OF INTEREST .............................................................................1

SUMMARY OF ARGUMENT...............................................................................1

ARGUMENT..........................................................................................................4

I.    The Ninth Circuit's Infringement Test Needs Further Reform........5

    A.    There Is a Well-Established Series of Requirements for a Copyright Infringement Claim ...................................................5

    B.    The Current Ninth Circuit Framework for Infringement Unnecessarily and Unhelpfully Departs from the Standard Test ...................................................................................10

    1.    The Wrong Turn of *Sid & Marty Krofft v. McDonald's*............10

    2.    *Rentmeester* and *Skidmore* Failed to Fully Correct Course .....14

II.    This Court Should Conform Its Test for Infringement to the *Arnstein* Framework ................................................................................15

    A.    The Test Should Continue to Require Both Actual Copying and Wrongful Appropriation .................................16

    B.    Wrongful Appropriation Requires Proof of Both Protected Expression and Substantial Similarity ...................18

    C.    The Court Should Take Care Not to Replicate the Errors of the *Krofft* Framework in a Reformulated Test....................23

    1.    Abandon the Terms "Extrinsic" and "Intrinsic" ....................24

    2.    Use "Objective" and "Subjective" Consistently.....................26

3.      Refrain from Artificially Limiting the Scope of the Wrongful Appropriation Inquiry ...............................................................27

4.      Clarify "Substantial" and "Similar" in the Context of Wrongful Appropriation ...........................................................31

5.      Ensure the Proper Roles of Judge and Jury............................33

CONCLUSION ....................................................................................34

# TABLE OF AUTHORITIES

Page

## CASES

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020) ................................................................. 7

*Ambrosetti v. Oregon Cath. Press*,
   151 F.4th 1211 (9th Cir. 2025) ......................................................... 17

*Arnstein v. Edward B. Marks Music Corp.*,
   82 F.2d 275 (2d Cir. 1936) ................................................................. 6

*Arnstein v. Porter*,
   154 F.2d 464 (2d Cir. 1946) ......................................................Passim

*Attia v. Soc'y of New York Hosp.*,
   201 F.3d 50 (2d Cir. 1999) ................................................................. 7

*Biani v. Showtime Networks, Inc.*,
   153 F.4th 957 (9th Cir. 2025) ........................................................... 28

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2002) .................................................. 7, 19, 20

*Dellar v. Samuel Goldwyn, Inc.*,
   104 F.2d 661 (2d Cir. 1939) ............................................................. 21

*Gray v. Hudson*,
   28 F.4th 87 (9th Cir. 2022) .............................................................. 21

*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) ................................................................. 8

*Hanagami v. Epic Games, Inc.*,
   85 F.4th 931 (9th Cir. 2023) ............................................................. 28

*Harold Lloyd Corp. v. Witwer*,
   65 F.2d 1 (9th Cir. 1933) .................................................................. 22

*Hobbs v. John*,
   722 F.3d 1089 (7th Cir. 2013) .......................................................... 20

*Int'l Luggage Registry v. Avery Prods. Corp.,*
  541 F.2d 830 (9th Cir. 1976) ........................................................ 10

*Kouf v. Walt Disney Pictures,*
  16 F.3d 1042 (9th Cir. 1994) ....................................................... 26

*Kumar v. Ovonic Battery Co.,*
  351 F.3d 1364 (Fed. Cir. 2003) ................................................... 25

*La Resolana Architects, PA v. Reno, Inc.,*
  555 F.3d 1171 (10th Cir. 2009) ................................................... 27

*Laureyssens v. Idea Group, Inc.,*
  964 F.2d 131 (2d Cir. 1992) ........................................................... 8

*Mattel, Inc. v. MGA Ent., Inc.,*
  616 F.3d 904 (9th Cir. 2010) ............................................. 6, 8, 32

*Narell v. Freeman,*
  872 F.2d 907 (9th Cir. 1989) ....................................................... 28

*Nash v. CBS, Inc.,*
  899 F.2d 1537 (7th Cir. 1990) ..................................................... 22

*Nichols v. Universal Pictures Corp.,*
  45 F.2d 119 (2d Cir. 1930) ............................................................. 6

*Nobile v. Watts,*
  289 F. Supp. 3d 527 (S.D.N.Y. 2017)......................................... 20

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
  602 F.3d 57 (2d Cir. 2010) ............................................................. 8

*Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,*
  274 F.2d 487 (2d Cir. 1960) ........................................................... 9

*Rentmeester v. Nike, Inc.,*
  883 F.3d 1111 (9th Cir. 2018) ..........................................Passim

*Ringgold v. Black Entertainment Television, Inc.,*
  126 F.3d 70 (2d Cir. 1997) ............................................................. 8

*Roth Greeting Cards v. United Card Co.,*
  429 F.2d 1106 (9th Cir. 1970) ..................................................... 13

*Sedlik v. Von Drachenberg,*
  163 F.4th 667 (9th Cir.) .............................................................. 30

*Shaw v. Lindheim,*
  919 F.2d 1353 (9th Cir. 1990) ..................................................... 11

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,*
 562 F.2d 1157 (9th Cir. 1977) ..................................................................Passim

*Skidmore v. Led Zeppelin,*
 952 F.3d 1051 (9th Cir. 2020) ..................................................................Passim

*Tangle, Inc. v. Aritzia, Inc.,*
 125 F.4th 991 (9th Cir. 2025) ........................................................................ 34

*Tanksley v. Daniels,*
 259 F. Supp. 3d 271 (E.D. Pa. 2017) ............................................................. 21

*Tanksley v. Daniels,*
 902 F.3d 165 (3d Cir. 2018) ..................................................................... 13, 22

*Three Boys Music Corp. v. Bolton,*
 212 F.3d 477 (9th Cir. 2000) ..................................................................... 6, 19

*Twentieth Century-Fox Film Corp. v. Stonesifer,*
 140 F.2d 579 (9th Cir. 1944) ......................................................................... 11

*U.S. v. Asarco Inc.,*
 430 F.3d 972 (9th Cir. 2005) ......................................................................... 25

*U.S. v. Park,*
 536 F.3d 1058 (9th Cir. 2008) ....................................................................... 25

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.,*
 52 F.4th 1054 (9th Cir. 2022) ........................................................................ 17

*Unicolors, Inc. v. Urban Outfitters, Inc.,*
 853 F.3d 980 (9th Cir. 2017) ......................................................................... 26

*Williams v. Crichton,*
 84 F.3d 581 (2d Cir. 1996) ............................................................................ 13

## STATUTES

17 U.S.C. § 106.............................................................................................. 22

## OTHER AUTHORITIES

Shyamkrishna Balganesh, Irina D. Manta & Tess Wilkinson-Ryan, *Judging
 Similarity*, 100 Iowa L. Rev. 267 (2014) ...................................................... 34

Bruce E. Boyden, Daly v. Palmer, *or the Melodramatic Origins of the Ordinary Observer*, 68 Syracuse L. Rev. 147 (2018) .......................................................... 9

Bruce E. Boyden, *The Grapes of Roth*, 99 Wash. L. Rev. 1093 (2024)..................................................................... 14, 23

Paul Goldstein, *Goldstein on Copyright* (2026) ........................................ 7, 18, 23

Alan Latman,*"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement*, 90 Colum. L. Rev. 1187 (1990)....... 10

William F. Patry, *Patry on Copyright* § 9:69 (2026) ............................................ 9

Zahr K. Said, *Jury-Related Errors in Copyright*, 98 Ind. L.J. 749 (2023) ...................................................................... 24

Zahr K. Said, *Reforming Copyright Interpretation*, 28 Harv. J.L. & Tech. 469 (2015) ...................................................................... 28

Pamela Samuelson, *A Fresh Look at Tests for Nonliteral Copyright Infringement*, 107 Nw. U. L. Rev. 1821 (2013).............................................................. 25

## STATEMENT OF INTEREST

Bruce Boyden is an Associate Professor of Law at Marquette University Law School. Zahr Said is a Professor of Law at Santa Clara University School of Law. Professors Boyden and Said teach and write about copyright law, and each has published multiple articles on the development and interpretation of the test for infringement, including substantial similarity. Their sole interest in this case lies in helping to ensure that copyright infringement doctrine furthers the goals of the Copyright Act.[1]

## SUMMARY OF ARGUMENT

The Court should take this opportunity to abandon its nearly fifty-year-old "extrinsic" and "intrinsic" tests. Established in *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), this bifurcated framework unhelpfully departs from standard copyright infringement tests. *Krofft* profoundly misread the foundational framework from *Arn-*

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person other than *amici* contributed money intended to fund preparing or submitting the brief.

*stein v. Porter*, 154 F.2d 464 (2d Cir. 1946), by conflating probative similarity, used to prove actual copying, with substantial similarity, used to prove wrongful appropriation. By merging these concepts into a single substantial similarity inquiry, *Krofft* effectively eliminated the determination of actual copying while also introducing conceptually empty benchmarks like shared "total concept and feel." While this Court's subsequent decisions in *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), and *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), laudably revived the separate requirement to show actual copying, they failed to fully correct course. Instead of simplifying the analysis, they grafted *Krofft*'s extrinsic and intrinsic tests onto the restored *Arnstein* framework. Consequently, the Ninth Circuit now confusingly requires up to three separate demonstrations of similarity—probative, extrinsic, and intrinsic—creating artificial channeling that confuses courts, juries, and litigants; obscures the steps of the analysis; and results in unhelpful jury instructions.

To address this problem, the Court should thoroughly recalibrate its test to require two straightforward elements: actual copying and wrongful appropriation. First, a plaintiff must prove the defendant factually copied from the work, established via direct evidence or circumstantial proof of ac-

cess and "probative" similarities, carefully avoiding the word "substantial" at this stage to prevent confusion. Once actual copying is proven, the inquiry moves to wrongfulness, which should be evaluated by reviewing the claimed similarities for protected expression and determining whether the ordinary audience for the plaintiff's work would perceive the copied expression as appropriating a substantial portion of its aesthetic appeal.

In implementing a reformulated infringement framework, the Court should take five measures to clarify the test. First, the Court should abandon the "extrinsic" and "intrinsic" labels. Second, the Court should avoid *Krofft*'s mischaracterization of the wrongful appropriation tests as either objective or subjective. Third, the Court should remove *Krofft*'s rigid and artificial constraints on the method and content of the wrongful appropriation test, which discourage viewing a work holistically during filtration or analytically during the audience test. Fourth, due to its tendency to be misused or misunderstood, the phrase "substantial similarity" should be isolated strictly to the wrongful appropriation analysis regarding audience impact. Fifth, the Court should preserve the judge's vital gatekeeping role in conducting the protected expression test and abandon the requirement that the audience test

3

must always go to a jury, permitting judges to decide the issue as a matter of law when appropriate.

## ARGUMENT

This case presents the Court with an opportunity to correct a wrong turn taken almost fifty years ago, one that added unnecessary complexity to the already difficult journey to a copyright infringement decision. But it also presents the Court with an opportunity to achieve the goal that drove that mistake: more clearly defining infringement in a way that allows both jurors and judges to proceed through the waypoints of the analysis without losing sight of either the limitations on the plaintiff's copyright or harmful nonliteral appropriation by the defendant. *See Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1163-64 (9th Cir. 1977). Now that jury trials are commonly requested in copyright infringement cases, it is more important than ever to clearly identify those waypoints, how they can be reached, and the purpose of each one. As set forth below, this Court should abandon the "extrinsic" and "intrinsic" terminology and reformulate its infringement test to require the plaintiff to prove, first, actual copying by the defendant from the plaintiff's work, and second, wrongful appropriation, by

4

showing that the defendant has taken protected expression to an extent that is "substantial," as determined by the audience test.

## I.   The Ninth Circuit's Infringement Test Needs Further Reform

### A.   There Is a Well-Established Series of Requirements for a Copyright Infringement Claim

The basic framework for proving copyright infringement through reproduction in copies has been more or less settled since 1946. That framework requires the plaintiff to prove two main elements: first, that the plaintiff owns a valid copyright, and second, that the defendant infringed on the copyright by copying substantial protected material from that work. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). As Judges Jerome Frank and Learned Hand famously held in *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946), the second part of that test itself requires demonstration of two sub-elements: that the defendant actually copied material from the plaintiff's work, and that the copying "went so far as to constitute improper appropriation." *Id*. at 468; *see also Skidmore*, 952 F.3d at 1064.

The two sub-elements of infringement are, as this Court has recognized, both distinct in purpose and crucially important. *See Skidmore*, 952 F.3d at 1064. Copyright infringement requires copying, so the plaintiff must

first prove that the defendant actually copied something from the plaintiff's work. *See Arnstein v. Edward B. Marks Music Corp.*, 82 F.2d 275, 275 (2d Cir. 1936). Although sometimes described as a "defense," independent creation rebuts this element of the plaintiff's claim. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000). Actual copying is often proven with a further two-part showing of circumstantial evidence that can establish a presumption of copying: namely, that the defendant had access to the plaintiff's work, and that there are sufficient similarities between the two to support an inference of copying, often called "probative" similarities. *See Skidmore*, 952 F.3d at 1064.

But copying alone is not and has never been the test. *See* Eaton S. Drone, *A Treatise on the Law of Property in Intellectual Productions in Great Britain and the United States* (1879) ("substantial identity" required). There are two further requirements: the copying must be of protected expression, and it must be substantial enough to be wrongful. Proof that the copying included protected expression is necessary because every work includes both protected and unprotected material. *See Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930); *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 913 (9th Cir. 2010). And proof of substantial appropriation is necessary because

6

copying immaterial expression from a plaintiff's work does not infringe on the plaintiff's rights. *See Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (cognizable similarity only when "the ordinary observer … would … regard [the] aesthetic appeal as the same").

Both of these critical determinations, protectability and substantiality, are to some degree commonly made in this Circuit and others during the second sub-element of infringement, wrongful appropriation. *See* Paul Goldstein, *Goldstein on Copyright* § 9.3.1 (2026) ("Goldstein"). In this Circuit, the extrinsic test provides an opportunity for a court on a pre-trial motion to "filter out and disregard the non-protectible elements in making its substantial similarity determination." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822-23 (9th Cir. 2002). In the Second Circuit, on the other hand, there is often no clear point in the infringement test at which unprotected material is filtered out. Courts in the Second Circuit inconsistently refer to the need to consider only protectable material in determining infringement, sometimes filtering unprotected material while determining actual copying, other times filtering unprotected material at the same time as comparing the two works, and still other times not filtering at all. *Compare Attia v. Soc'y of New York Hosp.*, 201 F.3d 50, 55 (2d Cir. 1999) (filtering while determining actual cop-

ying) *with Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 68 (2d Cir. 2010) (filtering while determining substantial similarity) *and Hamil Am. Inc. v. GFI*, 193 F.3d 92, 101 (2d Cir. 1999) (declining to filter). Because, tautologically, only protectable material is protected, the better view is the one taken by this Court that only substantial appropriation of protected expression should result in liability.

The final step of wrongful appropriation is a determination that the defendant's taking is substantial. While at times the term "substantial similarity" has been used to refer to the task of filtering considered above, *see Mattel*, 616 F.3d at 913; *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992), it is clear that a determination must also be made that the defendant's copying of protected expression has exceeded some threshold that triggers liability. As the Second Circuit observed in *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70 (2d Cir. 1997), the term "'substantial similarity' is more properly used … as the threshold for determining that the degree of similarity suffices to demonstrate actionable infringement." *Id*. at 74. The substantial nature of the appropriation is to be determined from the perspective of, not the judge or the jury, but the ordinary audience for the plaintiff's work. *See* Goldstein § 9.3.1.2; William F. Patry, *Patry on Copyright* § 9:69

8

(2026) ("Patry"); Bruce E. Boyden, Daly v. Palmer, *or the Melodramatic Origins of the Ordinary Observer*, 68 Syracuse L. Rev. 147, 172-74 (2018). Thus, even intentionally copied expression does not infringe unless it would appear to the ordinary observer of the plaintiff's work to have taken a substantial or material portion of what is "pleasing" or "aesthetic[ally] appeal[ing]" about that work. *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946); *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).

To summarize, under the standard framework for proving copyright infringement, there are two main elements, ownership and infringement. Infringement (by reproduction) requires proof of actual copying that is wrongful. Actual copying can be shown by establishing access and probative similarity; wrongfulness requires showing that the copying is of protected expression that has been substantially appropriated. Proof of substantial appropriation requires showing that the ordinary audience for the work would perceive the copied expression as taking a substantial portion of its aesthetic appeal.

B. **The Current Ninth Circuit Framework for Infringement Unnecessarily and Unhelpfully Departs from the Standard Test**

1. <u>The Wrong Turn of *Sid & Marty Krofft v. McDonald's*</u>

The problem the Second Circuit faces today—inconsistency in its caselaw about where, or even if, there is a point in the infringement test for determining whether the allegedly copied material consists of protectable expression—was widespread in 1977. Courts regularly failed to "filter" the allegedly copied material to ensure that at least some of the complained similarities were in fact actionable. *See, e.g.*, *Int'l Luggage Registry v. Avery Prods. Corp.*, 541 F.2d 830, 831 (9th Cir. 1976). Even worse, 1970s courts thoroughly conflated *probative* similarity, necessary to show actual copying, with *substantial* similarity, necessary to show wrongful appropriation. *See* Alan Latman, *"Probative Similarity" as Proof of Copying: Toward Dispelling Some Myths in Copyright Infringement*, 90 Colum. L. Rev. 1187, 1188 (1990) (noting problem as of 1984). A panel of this Court took aim at the first problem, filtering, in *Sid & Marty Krofft TV Productions v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), but unfortunately fumbled its attempt by failing to appreciate the significance of the second problem, the two types of similarity.

10

In *Krofft*, the panel wisely recognized that the failure to explicitly require filtration of unprotected material from the claimed similarities risked over-enforcement; thus, the court concluded that a "limiting principle" was needed, lest defendants be held liable for similarity of unprotected ideas. *Krofft*, 562 F.2d at 1163. The solution, the court held, was to announce a new, "bifurcated test" for substantial similarity, which the *Krofft* court labeled the "extrinsic" test and the "intrinsic" test. *Id*. at 1164. The "extrinsic" test was defined as objective in nature, based "on specific criteria which can be listed and analyzed." *Krofft*, 562 F.2d at 1164; *see also Shaw v. Lindheim*, 919 F.2d 1353, 1357 (9th Cir. 1990) (reclassifying extrinsic test as an "objective … analys[i]s of expression"). Dissection of the work into its component parts was therefore appropriate, as was expert testimony, and the test could "often be decided as a matter of law." *Krofft*, 562 F.2d at 1164. By contrast, *Krofft* defined the "intrinsic" test as depending not on "hypercritical[ ] or … meticulous scrutiny, but [on] the observations and impressions of the average reasonable reader and spectator." *Id*. (quoting *Twentieth Century-Fox Film Corp. v. Stonesifer*, 140 F.2d 579, 582 (9th Cir. 1944)). Analytic dissection and expert testimony were *not* appropriate for the intrinsic test, which was described as "uniquely suited for determination by the trier of fact." *Id*. at 1164, 1166.

It is clear that *Krofft*'s creation of its two-part test for substantial similarity was based on a profound misreading of *Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946). What *Krofft* characterized as two tests for substantial similarity were in fact two *different* tests for distinct sub-elements of the infringement inquiry. *Krofft*'s "intrinsic" test sounds a lot like *Arnstein*'s description of "wrongful" or "unlawful" appropriation: "the test is the response of the ordinary lay hearer; accordingly, on that issue, 'dissection' and expert testimony are irrelevant." *Id*. at 468. And *Krofft*'s "extrinsic" test is reminiscent of what is now called "probative similarity." According to *Arnstein*, probative similarity, like the extrinsic test, may be determined with the aid of analytic dissection and expert testimony. *Id*. at 468. But, critically, *unlike* the extrinsic test, probative similarity is not a test for wrongful appropriation; it is circumstantial evidence of actual copying, along with access. By combining probative similarity and wrongful appropriation as two parts of a single determination, *Krofft* essentially eliminated a distinct and necessary determination of actual copying from the infringement inquiry.

*Krofft*'s reconfiguration of the *Arnstein* framework had another flaw. Requiring two showings of substantial similarity transmogrifies the single test for wrongful appropriation by requiring similarities *both* as to particular

12

identifiable elements and as to the works as a whole. The test for wrongful appropriation in other circuits, by contrast, requires only that, "in the eyes of the average lay observer," the defendant's work is "substantially similar to the protectible expression" in the plaintiff's work. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). That inquiry can focus either on the work's constituent elements or on the sum of its parts, or both, *see Tanksley v. Daniels*, 902 F.3d 165, 175 (3d Cir. 2018), but it is a single test that considers multiple ways in which an audience might find copied expression substantial, not a pair of tests that artificially channels the analysis down two different paths.

Worse still, in striving to express the required level of substantial similarity needed for the intrinsic test, the *Krofft* court landed on a conceptually empty phrase: shared "total concept and feel." *Krofft*, 562 F.2d at 1167 (quoting *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970)). "Total concept and feel" is, at best, a placeholder used in the 1970s and 1980s for judges to perform the admittedly difficult mental gymnastics that the wrongful appropriation test requires. *See* Bruce E. Boyden, *The Grapes of Roth*, 99 Wash. L. Rev. 1093, 1138-39 (2024). Like "make a white sauce," "total concept and feel" does not impart any useful information to someone who is not already familiar with the task to be performed.

13

### 2. *Rentmeester* and *Skidmore* Failed to Fully Correct Course

In 2018, another panel of this Court addressed one of *Krofft*'s more glaring lapses: the mangling of the *Arnstein* framework by effectively eliminating the requirement to establish actual copying. In *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018), the Court adopted the basic *Arnstein* framework and clearly separated the element of infringement into "two distinct components: 'copying' and 'unlawful appropriation.'" "Unlawful appropriation" required showing that "the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Id*. at 1117. This Court in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), confirmed that approach. *Id.* at 1064.

But *Rentmeester* and *Skidmore* did not go far enough. In elaborating on the wrongful appropriation prong, *Rentmeester* grafted the extrinsic and intrinsic tests onto what *Arnstein* treats as a single substantial similarity inquiry. *See Rentmeester*, 883 F.3d at 1118. *Skidmore* confirmed this aspect of *Rentmeester* as well. *Skidmore*, 952 F.3d at 1064. As a result, the test for infringement in the Ninth Circuit now requires up to *three* demonstrations of similarity: probative similarity, extrinsic similarity, and intrinsic similarity.

14

This makes little sense, as "extrinsic" similarity was originally *Krofft*'s misunderstanding of probative similarity in *Arnstein*. Returning probative similarity to the fold eliminates any need for a bifurcated substantial similarity test.

The time has come to finish the job that *Rentmeester* and *Skidmore* started and thoroughly recalibrate this Court's infringement test.

## II. This Court Should Conform Its Test for Infringement to the *Arnstein* Framework

*Skidmore*'s adoption of a clear requirement to show actual copying is laudable and should be reinforced. However, the division of wrongful appropriation into an extrinsic test and an intrinsic test has several problems. First, it is unnecessary now that the Court has incorporated an actual copying step into the infringement determination. Second, as explained below, the extrinsic and intrinsic tests do not fully capture the two inquiries that need to be made to determine wrongful appropriation: that the material copied by the defendant constitutes protected expression, and that the ordinary audience for the work would perceive the copied expression as taking a substantial portion of its aesthetic appeal to that audience. Finally, much of the terminology used in the infringement test is confusing to judges, jurors, and

15

commentators alike, and everything that can be should be done to make the test clear.

## A.    The Test Should Continue to Require Both Actual Copying and Wrongful Appropriation

*Rentmeester* and *Skidmore*'s division of the infringement inquiry into proof of actual copying and proof of wrongful appropriation is a welcome development that goes far to put the Ninth Circuit framework on a stable foundation. But more should be done to reinforce it, because an improved test is only effective if it is actually used. Plaintiffs should be required to prove, *before* proceeding to wrongful appropriation, that the defendant actually copied from their work, at least in cases where copying is a contested issue. And in order to avoid confusion, when considering the circumstantial case for actual copying, the inquiry should be described as whether there are "sufficient similarities to conclude that the defendant copied from the plaintiff," or "similarities probative of copying," *not* "substantial similarities," since "substantial similarity" is part of the inquiry for wrongful appropriation. Even after this Court's decision in *Skidmore*, the actual copying step of the test is still being elided in many cases. *See, e.g.*, *Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1219 (9th Cir. 2025); *Unicolors, Inc. v. H&M Hennes &*

16

*Mauritz, L.P.*, 52 F.4th 1054, 1084 (9th Cir. 2022). Similarly, juries are continuing to be instructed with the *Krofft* version of the test for infringement, access plus substantial similarity, *see* Ninth Circuit Jury Instructions Committee, *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit* § 17.17 (Mar. 2026), including in the trial below, *see* 1-ER-38 (Instr. No. 18).

The distinction between actual copying and wrongful appropriation is crucially important and should be clearly drawn. First, failing to clearly require a showing of actual copying risks a finding of infringement based only on access plus accidental similarities. The court or jury must conclude that, based either on access and probative similarities or on direct evidence, the defendant actually copied material from the plaintiff. The wrongful appropriation inquiry, including *substantial* similarity, is irrelevant if the defendant did not copy anything from the plaintiff's work. Second, using "substantial similarity" to determine actual copying not only abbreviates the actual copying step, it also obscures the purpose of the substantial similarity inquiry. Proof of substantial similarity is *not* about whether the defendant copied from the plaintiff; by the time the substantial similarity inquiry is reached, copying has already been determined. "Substantial similarity" is a

17

core component of establishing wrongful appropriation. Wrongful appropriation requires, again, a showing that what the defendant copied from the plaintiff constitutes protected expression, and that the taking is substantial. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018); *see also* Goldstein § 9.3.1 (2026) (describing protected expression and audience reaction tests for "improper appropriation"); Patry § 9:59 (2026) (describing two parts of final stage of test: materiality and expression). "Substantial similarity" describes that last inquiry: whether the audience for the plaintiff's work would perceive the copied expression as taking a substantial portion of its aesthetic appeal, thus reducing the plaintiff's exclusive market for its work. *See Goldstein on Copyright* § 9.3.1.

### B. Wrongful Appropriation Requires Proof of Both Protected Expression and Substantial Similarity

Proof of wrongful appropriation requires the plaintiff to demonstrate two things: that the similarities claimed by the plaintiff constitute protected expression, and that the defendant's appropriation of such expression is substantial enough to be wrongful. Both of these inquiries are necessary in order to determine that the defendant has not only copied, but has infringed on the plaintiff's copyright. Neither is directly assessed under the Ninth Cir-

cuit's current extrinsic/intrinsic analysis, which as argued further below should be replaced.

First, the plaintiff must demonstrate that the claimed similarities in the defendant's work constitute protected expression copied from the plaintiff's work. As this Court has noted in connection with the extrinsic test, it is the plaintiff's initial burden to identify protected expression that is common between the two works. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000). But reviewing for protected expression is a different inquiry from the extrinsic test. The extrinsic test asks the court or jury to evaluate only "specific expressive elements" of the two works, *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002), in an attempt to determine whether the works are substantially similar, *see Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1121 (9th Cir. 2018). The standard used to determine substantial similarity under the extrinsic test is unclear, *see id.*, but evidently is not the audience test, which is instead used for the intrinsic test, *see Cavalier*, 297 F.3d at 822.

This distinction may appear subtle, but it is important. A review for protected expression examines *all* of the plaintiff's claimed similarities to determine which of them, if any, involve protected expression. The plaintiff is

19

thus permitted to argue copyrightable expression in the works as dissected into discrete elements, or in the works viewed holistically, or both. *See, e.g.,* *Nobile v. Watts*, 289 F. Supp. 3d 527, 534-35 (S.D.N.Y. 2017), *aff'd*, 747 Fed. Appx. 879 (2d Cir. 2018) (reviewing plaintiff's claimed similar elements as well as "total concept and feel"); *Hobbs v. John*, 722 F.3d 1089, 1092-93 (7th Cir. 2013) (considering plaintiff's list of allegedly similar elements individually and in combination). Since the line between idea and expression is often a matter of law, this review can often be performed at a preliminary stage of the litigation. The protected expression inquiry works best when the plaintiff is tasked with producing a list of claimed similarities between the plaintiff's and defendant's works, *see, e.g.*, *Nobile*, 289 F. Supp. 3d at 534-37 (list of similarities in complaint); *Hobbs*, 722 F.3d at 1092 (list produced in opposing motion to dismiss). But even in the absence of a list, courts can also review the two works on their own. *See Rentmeester*, 883 F.3d at 1121-23; *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 280 & n.4 (E.D. Pa. 2017), *aff'd*, 902 F.3d 165 (3d Cir. 2018). The protected expression inquiry thus allows courts to better serve their "important gatekeeping role in applying the law," *Gray v. Hudson*, 28 F.4th 87, 97 (9th Cir. 2022), than the extrinsic test permits.

What remains after determining how much of the claimed similarities are protected expression is a determination of whether the defendant's appropriation from the plaintiff is substantial, often referred to as "substantial similarity." This has justly been called "the most troublesome [issue] in the whole law of copyright." *Dellar v. Samuel Goldwyn, Inc.*, 104 F.2d 661, 662 (2d Cir. 1939) (referring to "fair use," but clearly discussing substantial similarity). Substantial similarity is necessary because, as courts have recognized for at least two centuries, only appropriation of protected material that goes so far as to invade the plaintiff's "legally protected interest" in conveying the expression in the work to an audience constitutes infringement. *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946); *see also D'Almaine v. Boosey*, 160 Eng. Rep. 117, 123 (Eng. Exch. 1835) (copying of melody from opera for dance music infringing where "[t]he ear tells you that it is the same").

As a result, the test for substantial similarity properly focuses not on how the judge or jury would react to the two works, but how the ordinary reasonable audience for the plaintiff's work would view the appropriated protected expression in the defendant's work. *See Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 27–28 (9th Cir. 1933). As explained further below, substantial similarity is thus an *objective* test, not, as is often claimed, a subjective test.

21

*See Nash v. CBS, Inc.*, 899 F.2d 1537, 1540 (7th Cir. 1990) ("Ordinary observers, like reasonable [persons] in torts, are fictitious characters of the law, reminders that judges must apply objective tests rather than examine their own perceptions."). The test determines infringement by reference to an audience because that is what copyright protects: acts that communicate the author's expression to others, by reproducing in copies, public distribution, public performance, or public displays. 17 U.S.C. § 106.

Applying the substantial similarity test, however, requires a difficult balancing act. An infringement determination requires comparing the defendant's work to the plaintiff's, identifying the similarities, mentally filtering out what is unprotected, assessing the impact of what remains on a hypothetical audience member, and deciding whether that impact would be "substantial," itself a nebulous term, as discussed below. *See Tanksley v. Daniels*, 902 F.3d 165, 175 (3d Cir. 2018) (noting tension between filtering and holistic assessment); Bruce E. Boyden, *The Grapes of Roth*, 99 Wash. L. Rev. 1093, 1101-03 (2024) (discussing "tangled web of three issues"); Goldstein § 9.3.1.2 (determination requires "keep[ing] at least four objects in mind simultaneously"). It is a complicated test and judges and juries need all the help

22

they can get. *See* Goldstein § 9.3.1 ("There is probably no judicial task more delicate—or occasionally confounding….").

But despite these difficulties the audience test for substantial similarity is unavoidable. It would be a grievous mistake to abandon it. Wrongful appropriation of protected expression *must* be measured by its impact on the audience for the work; to strip away the audience perspective would be to instead ask if the appropriation is substantial in some abstract philosophical sense. Such a test would be unrelated to real-world audience impact and would likely result in a truly subjective determination of the sort that gave the panel's concurring judges pause.

## C. The Court Should Take Care Not to Replicate the Errors of the *Krofft* Framework in a Reformulated Test

Copyright law is notoriously difficult: it is highly technical, rapidly changing, and replete with metaphysical questions regarding the scope of what is actually owned by a rights holder and the limits on those rights. Copyright is also predictably confusing because it often runs counter to ordinary, lay intuitions about moral norms. *See* Zahr K. Said, *Jury-Related Errors in Copyright*, 98 Ind. L.J. 749, 762-765 (2023). In implementing the framework set forth above, the Court should take steps to avoid replicating *Krofft's*

errors and ensure that the terminology and concepts used in the infringement inquiry are as transparent as possible to judges and juries alike. There are five measures the Court can take.

### 1. Abandon the Terms "Extrinsic" and "Intrinsic"

First, in reconsidering its copyright infringement framework, the Court should dispense with the "grandiloquent names" of "extrinsic" and "intrinsic," which are confusing in both terminology and operation. *Krofft*'s test was announced in an opinion that has been aptly described as "a grand, and grandly unnecessary, exposition of principles intended to set the law for all ages." 3 Patry § 9:236. The new terminology was not just "grandly unnecessary"; it worsened the state of confusion that has continued to perturb the Ninth Circuit's contemporary copyright jurisprudence leading up to this en banc rehearing. Both the extrinsic and intrinsic tests are labeled and described in ways that unnecessarily complicate and distort copyright infringement.

The "extrinsic test" is misnamed: the test is unrelated to either the lay or legal meanings of the word "extrinsic." Lay people typically use "extrinsic" to mean something coming from the outside, something extraneous or

external. *See* Pamela Samuelson, *A Fresh Look at Tests for Nonliteral Copyright Infringement,* 107 Nw. U. L. Rev. 1821, 1829 (2013). Similarly, lawyers use "extrinsic" as a term of art that refers to the body of evidence that lies *outside* the four corners of the contract or property deed. *U.S. v. Asarco Inc.,* 430 F.3d 972, 980 (9th Cir. 2005); *U.S. v. Park,* 536 F.3d 1058, 1061 (9th Cir. 2008). Yet *Krofft* and its progeny use "extrinsic" in almost exactly the opposite way, namely, to refer to "specific criteria," formal elements capable of being identified and verified *within* a work. *Krofft,* 562 F.2d at 1164; *Rentmeester v. Nike, Inc.,* 883 F.3d 1111, 1118 (9th Cir. 2018).

Likewise, the "intrinsic test" is also misnamed. The ordinary understanding of "intrinsic" is something internal or innate. Lawyers use "intrinsic" to refer to a body of evidence *within* a document. *See Kumar v. Ovonic Battery Co.,* 351 F.3d 1364, 1368 (Fed. Cir. 2003). As applied to copyright infringement, one would therefore reasonably expect "intrinsic similarity" to be based on elements that can be discerned *within* the "four corners" of the competing works themselves and arising independently of external criteria or validation outside those works. Yet on the contrary, *Krofft's* test for intrinsic similarity gauges the *external* reception of the works, evaluating whether the "ordinary, reasonable audience" finds the works substantially similar, or

25

recognizes that the works share a "total concept and feel." *Kouf v. Walt Disney Pictures*, 16 F.3d 1042, 1045 (9th Cir. 1994) (cleaned up). Because *Krofft*'s terminology diverges from both lay and legal understandings, a newly reformulated infringement inquiry should refrain from using not only the tests but the labels as well.

### 2. Use "Objective" and "Subjective" Consistently

Second, the Court should clarify use of the terms "objective" and "subjective."

Courts have repeatedly characterized the extrinsic test as "objective" and the intrinsic test as "subjective." *See Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017). But these characterizations should be resisted; they are misleading not only for the *Krofft* test but also as applied to a reformulated test for wrongful appropriation. For instance, the extrinsic test, and likewise the test for protected expression, are only potentially "objective" in the lay sense of relating to verifiable facts or provable observations, not in the legal sense of assessing what a hypothetical reasonable person would do or know. Similarly, although it is routinely called "subjective," the intrinsic test is explicitly based on an *objective* standard, "the ordinary

26

observer test," which resembles the reasonable person standard in tort law. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1180 (10th Cir. 2009).

This error is consequential and should be avoided. "Objective" inquiries, in the lay sense, tend to concern questions of fact, but both the extrinsic test and the protected expression inquiry focus on a question that is largely legal: the division between protected and unprotected material. Likewise, portraying the intrinsic test or the audience test for substantial similarity as "subjective" implies that it is determined by some unknowable mental response internal to each trier of fact, when in reality it is a legal test that can, in appropriate cases, be determined as a matter of law.

### 3. Refrain from Artificially Limiting the Scope of the Wrongful Appropriation Inquiry

Third, in reformulating the infringement test, the Court should avoid the artificial and unworkable limitations *Krofft* established. To understand why, it is critical to disaggregate three questions: *how* to consider works during the infringement analysis, *what* to consider, and *who* should do it. *See* Zahr K. Said, *Reforming Copyright Interpretation*, 28 Harv. J.L. & Tech. 469, 480, 483-88, 491-501 (2015) (framing choices in substantial similarity analysis along an analysis/intuition axis and a text/context axis). On *what* to consider,

27

*Krofft* sharply divided the inquiry between the extrinsic test, which examines discrete elements that vary depending on the type of work, *see Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 942-44 (9th Cir. 2023), and the intrinsic test, which is associated with assessing the work as a whole and its impact (its "total concept and feel"), *see Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 963 (9th Cir. 2025). On *how* to consider the works, the extrinsic test proceeds via granular analysis and dissection, and it is applied to parts or details of the work, whereas the intrinsic test relies on intuition, holistic perception, or subjective (in the lay sense) impressions, and it considers the work as a whole. *See Narell v. Freeman*, 872 F.2d 907, 912-913 (9th Cir. 1989). And on *who* should be tasked with which parts of the infringement determination, *Krofft*'s legacy has been to rigidify the jury's role in the intrinsic test without sufficiently clarifying the judge's role in the extrinsic test. Interpretive choices exist throughout copyright's infringement analysis, and highlighting them illustrates how *Krofft* has imposed burdensome limitations that have painted courts into a corner.

This artificial division of the wrongful appropriation inquiry creates more constriction than structure. It would be better to divide the inquiry into a filtering step and a liability step, and allow the relevant interpretive choices

(how to consider the works, what to consider, and who should do it) to flow from the task rather than the label. There is no natural or necessary reason for the test for protected expression to focus on discrete elements alone without permitting consideration of the work as a whole (as the extrinsic test does). Nor is there any necessary reason to evaluate the substantiality of appropriation only via the work's "total concept and feel" at the expense of looking analytically at the works in cases where that would assist the determination.

Courts have struggled against these constraints. As Judge Johnstone recognized, the expansion of the extrinsic test to include what essentially amounts to the entire work has reduced the substantive contribution of the intrinsic test. *Sedlik v. Von Drachenberg*, 163 F.4th 667, 682 (9th Cir.) (Johnstone, J., concurring), *vacated*, 177 F.4th 964 (9th Cir. 2026). Additionally, some courts confuse matters by including in their list of extrinsically analyzed elements the "total concept and feel" of the work, which mistakes a mode of assessing the works for infringement under the intrinsic test for an element potentially discernible within a work. *See* Said, *supra*, at 487. Further, the collapse between the two tests has made it impossible in some instances to know whether a jury decided a case under the extrinsic or the intrinsic

29

test, which has created the perception that the intrinsic test is unreviewable. The extrinsic test should be a threshold inquiry, so theoretically a jury will not be deciding the case at all if the extrinsic test has not been met. However, the jury is also tasked with deciding the question of extrinsic similarity along with intrinsic similarity and instructed that a liability determination requires satisfaction of both tests. Thus when rendering a general verdict, the jury makes a decision that is not necessarily attributable to one or the other test. Finally, on the question of *who* decides, the Court should preserve the judicial ability to act as a gatekeeper on the issue of protected expression, but abandon *Krofft*'s consignment of the audience test solely to the jury's determination.

Filtering for protected expression must be primarily guided by legal principles and relevant authorities even if subsidiary questions of fact are also present. But analysis, intuition, or both could be relevant to the audience test's post-filtering determination of wrongful appropriation under the ordinary observer standard. The audience test, unlike the intrinsic test, should allow the trier of fact to look either at details or at the whole. *Krofft*'s intrinsic test was created for the important purpose of preventing defendants from strategically emphasizing dissimilarities to defeat a claim, and the extrinsic

30

test correctly insists that only copying of protected expression may be considered as substantial appropriation. Any reformulation needs to be robust enough to allow parties arguing in either direction to advance their claims fairly. The protected expression and audience tests would allow the Court to clarify the operation of infringement analysis and heed *Krofft*'s concerns while avoiding its rigid constraints.

### 4. Clarify "Substantial" and "Similar" in the Context of Wrongful Appropriation

Fourth, in adopting a reformulated infringement test, courts should anticipate and correct for the recurring risks of misunderstanding posed by copyright's core terms. Copyright's recursive structure means that certain doctrinal terms arise repeatedly during the analysis, serving different roles each time. For example, the question of the plaintiff's work's originality is relevant to assessing validity, infringement, and certain defenses. The terms most vulnerable to conflation and misunderstanding may also be the two most important: "substantial" and "similar."

If not used carefully, "similarity" can produce confusion because it means different things depending on whether it is used to assess *actual copying* or *wrongful appropriation*. Probative similarities sufficient to demonstrate

31

actual copying can arise from any common material, but that can be misleading when it comes to determining wrongful appropriation because only protected expression will count. Even extensive similarities resulting from common use of public-domain sources or shared unprotectable material will fail to prove infringement. *Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916–17 (9th Cir. 2010). Not only must there be similar protected expression to prove wrongful appropriation, but it must be substantial.

Yet, like "similarity," the term "substantial" is also used in a wide variety of ways. Courts sometimes use "substantial" to characterize the amount or nature of "access," "copying," "copied material," "similarity," "evidence," "appropriation," or "harm." In all of these contexts, "substantial" is by design indeterminate; like the words "reasonable," "sufficient," and "appropriate," it is a term that represents the outcome of legal reasoning rather than serving as a yardstick that helps produce that outcome. Given its criticality to the outcome of the infringement test, "substantial similarity" should be used only for the wrongful appropriation determination and only with reference to its impact on the ordinary audience. Otherwise, it runs the risk of doing both too little and too much: too little in the sense that it is not

32

an analytical determinant and too much in that it can refer to either an amount, an extent, a degree, or a level, and can apply to different things.

### 5. Ensure the Proper Roles of Judge and Jury

Fifth, given the inherent difficulties of the wrongful appropriation analysis, *see* Goldstein § 9.3.3.2, the Court should ensure that a reformulated test properly filters unprotected material from being considered for substantial similarity and avoids rigidifying the role of the jury. As this Court has recognized, review of the claimed similarities for protected expression serves an important gatekeeping function, and this should be preserved. *See Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025) ("The extrinsic test … serves to screen out objectively meritless claims, so courts can apply it as a matter of law."). That review will often be more properly accomplished by the court, as distinguishing expression from unprotected material depends on the scope of copyright law. Much hangs in the balance for copyright's stakeholders if inexperienced lay people misunderstand copyright law or are swayed by distortionary moral intuitions. *See* Shyamkrishna Balganesh, Irina D. Manta & Tess Wilkinson-Ryan, *Judging Similarity*, 100 Iowa L. Rev. 267, 284 (2014). Thus, the protected expression test, as a threshold

33

inquiry for wrongful appropriation, should continue to be one performed by the court.

The audience test for substantial similarity, however, should not be so balkanized as the intrinsic test is currently understood. While the audience test is presently treated as an obligatory jury question, it need not be. While the perspective of the ordinary observer required by the audience test may be applied by a jury, this common occurrence should not be rigidified into a requirement that the jury must always decide the question. In other areas of civil litigation, judges may at times decide questions of fact when no reasonable jury could do otherwise. Copyright is no different.

## CONCLUSION

This Court should conform its test for copyright infringement to the standard framework embraced in most courts. In addition to proof of ownership of a valid copyright, infringement by reproduction should require proof of actual copying that is wrongful. Actual copying can be shown by establishing access and probative similarity, and wrongfulness requires satisfaction of the protected expression test and the audience test, which re-

34

quires proof that the ordinary audience for the work would perceive the copied expression as taking a substantial portion of its aesthetic appeal.

Dated: June 30, 2026                    Respectfully submitted,


                                         s/ Bruce E. Boyden

                                        _____

                                        BRUCE E. BOYDEN
                                        Marquette University Law School
                                        P.O. Box 1881
                                        Milwaukee, WI  53201-1881
                                        (414) 288-5492
                                        bruce.boyden
                                        *Attorney for Amici Curiae*

35