No. 24-3367

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JEFFREY B. SEDLIK, an individual,
Plaintiff-Appellant,

-v-

KATHERINE
VON DRACHENBERG, an individual;
AKA Kat Von D; KAT VON D, INC., a California corporation;
HIGH VOLTAGE TATOO, INC., a California corporation,
Defendants-Appellees.

On Appeal from the U.S. District Court for the Central District of California
D.C. No. 2:21-CV-01102, Hon. Dale S. Fischer

## PROPOSED BRIEF OF *AMICI* COPYRIGHT SCHOLARS ON REHEARING IN SUPPORT OF APPELLEES

Dated: July 14, 2026

REBECCA TUSHNET
Harvard Law School
1575 Massachusetts Avenue
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu
Counsel for *Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, amici are individuals.

Dated: July 14, 2026

By: /s/ Rebecca Tushnet
Rebecca Tushnet
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu
Counsel for *Amici Curiae*

# TABLE OF CONTENTS

Page

PROPOSED BRIEF OF *AMICI* COPYRIGHT SCHOLARS ON REHEARING IN SUPPORT OF APPELLEES ....... 1

CORPORATE DISCLOSURE STATEMENT ....... 1

TABLE OF CONTENTS ....... i

TABLE OF AUTHORITIES ....... iii

STATEMENT OF INTEREST OF *AMICI* ....... 1

SUMMARY OF ARGUMENT ....... 1

ARGUMENT ....... 2

I. Every Word of "Substantial Similarity of Protectable Expression" Matters for a Definition of Infringement ....... 2

A. Copying in Fact Isn't Enough. ....... 2

B. Recognizable Similarity Is Not a Shortcut for Substantial Similarity ....... 9

C. Fair Use Is No Substitute for Proper Consideration of Substantial Similarity ....... 13

D. The Derivative Works Right Does Not Change the Analysis. ....... 16

II. The District Court Was Within Its Discretion to Submit Extrinsic Similarity to the Jury. ....... 18

A. The Portrait Here Has Many Unprotectable Elements That May Freely Be Copied. ....... 20

B. Rejection Submission of Extrinsic Similarity to the Jury Would Contradict Decades of Case Law. ....... 24

CONCLUSION ....... 32

APPENDIX ....... 33

CERTIFICATE OF COMPLIANCE ....... 34

CERTIFICATE OF SERVICE      36

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946) ....................................................2-3

*Atkins v. Fischer*, 331 F.3d 988 (D.C. Cir. 2003) ................................................. 17

*Berkic v. Crichto*n, 761 F.2d 1289 (9th Cir. 1985) .............................................16-17

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ................................ 13, 15

*Cohen v. U.S.*, 105 Fed. Cl. 733 (2012)............................................................... 10

*Culver Franchising System, Inc. v. Steak N Shake Inc.*, 119 U.S.P.Q.2d 1808 (N.D. Ill. 2016)..............................................................................................................8

*Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548 (3d Cir. 2002) ......... 17

*Dyer v. Napier,* No. CIV 04-0408-PHX-SMM, 2006 WL 2730747 (D. Ariz. Sept. 25, 2006) .............................................................................................................27-29

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)............................23, 29

*Freeman v. Deebs-Elkenaney*, --- F.Supp.3d ----, 2026 WL 733891 (S.D.N.Y. Mar. 16, 2026)..............................................................................................................6

*Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62 (3d Cir. 1978) ...... 20

*Google LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021)...................................15, 24

*Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173 (1st Cir. 2013)..................25-26

*Hogan v. DC Comics*, 48 F. Supp. 2d 298 (S.D.N.Y. 1999)......................................8

*Kohus v. Mariol*, 328 F.3d 848 (6th Cir. 2003)...................................................... 17

*Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109 (2d Cir. 1998)......................... 21

*Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) ........................................... 17

*Lotus Development Corp. v. Borland Intern., Inc.*, 788 F. Supp. 78 (D. Mass. 1992) . 10

*Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444 (S.D.N.Y. 2005)...................... 29

*Mattel, Inc. v. MGA Entertainment, Inc.*, 616 F.3d 904............................................ 14

*Matthew Bender & Co., Inc. v. West Publ'g Co.*, 158 F.3d 693 (2d Cir. 1998).......13-14

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65 (2d Cir. 1999) ...................................................................................................................9-10

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527 (5th Cir. 2015) 10

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287 (11th Cir. 2008) .............................................................................................. 10, 17

*Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268 (S.D.N.Y. 2005)................ 20

*Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw...........26-27

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) ................................... passim

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191 (7th Cir.1987). 14

*Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255 (5th Cir. 1988)............................ 17

*Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 654 F.2d 204 (2d Cir. 1981). 6, 26

*Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231 (2d Cir. 1983)

.............................................................................................................. passim

*Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112 (2d Cir. 2003) ............ 17

*Williams v. Crichton,* 84 F.3d 581 (2d Cir. 1996) .......................................................... 3

**Statutes**

17 U.S.C. § 102.………………………………………………………………………..1

**Other Authorities**

Oren Bracha, Not De Minimis: (Improper) Appropriation in Copyrigh*t*, 68 Am. U. L. Rev. 139, 180 (2018) ........................................................................................... 9, 26

Oren Bracha & John M. Golden, Redundancy and Anti-Redundancy in Copyright, 51 Conn. L. Rev. 247 (2019) ........................................................................................ 15

Joseph P. Liu, Copyright and Breathing Space, 30 Colum. J.L. & Arts 429 (2007) .... 16

Drew M. Morris & Carter J. Alvey, Knowledge and the Perceived Value of Paintings: The Role of Time, Presence, and the Contagion Effect on Art Evaluation, 18 Psychol. of Aesthetics, Creativity, and the Arts 269, 272, 277 (2024) ..................... 22

Jessica Silbey & Eva Subotnik, What the Warhol Court Got Wrong: Use as an Artist Reference and the Derivative Work Doctrine , 47 Columbia Journal of Law & the Arts 353 (2024) ……………………………………………………………………. 21

The Silence, Joseph Ducreux, 1790, https://www.arthistoryproject.com/artists/joseph-ducreux/the-silence/..................................................................................................21

Rebecca Tushnet, Worth a Thousand Words: The Images of Copyright Law, 125 Harv. L. Rev. 683 (2012).………………………………………………………………1

Melville B. Nimmer & David Nimmer, Nimmer on Copyright (1983) ................... 14, 20

## STATEMENT OF INTEREST OF *AMICI*

Amici are scholars whose research and teaching focus include copyright law.[1] They have no direct interest in the outcome of this litigation, but is interested in the proper development of coherent and manageable copyright law.[2] Based in part on prior work on images and substantial similarity,[2] this amicus argues for maintaining a strong extrinsic test, including for images.

## SUMMARY OF ARGUMENT

The substantial similarity test merits serious scrutiny, but that should not come at the cost of discarding the proper scope of copyright.

There are two implications: First, in considering what to do with the "intrinsic" test, copyright's core distinctions between protectable expression and unprotectable facts, ideas, or systems, 17 U.S.C. §102, require this Court to take care not to conflate copying in fact—the fact that one work is based on another—with infringing similarity, especially when many of the work's observable characteristics come from depicting unprotectable subject matter.

---

[1] Pursuant to Federal Rule of Appellate Procedure 29(c)(5), no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund the preparation or submission of this brief; and no person — other than the *amici* — contributed money that was intended to fund the preparation or submission of this brief. F.R.A.P. 29(a).

[2] See Rebecca Tushnet, Worth a Thousand Words: The Images of Copyright Law, 125 Harv. L. Rev. 683 (2012).

Second, this Court should not ignore that the district court correctly found that there was a triable issue of fact on the "extrinsic" test for copying of protectable elements. *Sedlik v. Von Drachenberg*, 163 F.4th 667, 673 (9th Cir. 2026) (recounting procedural history).

As a result, the jury properly heard extensive testimony, argument, and instructions on whether the similarities between these works[3] resulted from unprotected elements such as Miles Davis's appearance. It could reasonably have resolved the *extrinsic* test in favor of Appellant, finding insufficient copying of protectable material. This case is not and never has been solely about the intrinsic test, and, to the extent that the panel concurrences assert that the verdict must have rested on the intrinsic test, this conclusion lacks a basis in the record.

## ARGUMENT

I.      Every Word of "Substantial Similarity of Protectable Expression" Matters for a Definition of Infringement.

A. Copying in Fact Isn't Enough.

There can be copying without infringement. *Arnstein v. Porter*, 154 F.2d 464, 472 (2d Cir. 1946) ("Assuming that adequate proof is made of copying, that is not

---

[3] Defendants conceded substantial similarity as to social media posts that included prominent display of the Sedlik photo. This issue concerns the other works in suit— the Tattoo, the Sketch, and related social media posts.

enough; for there can be 'permissible copying.'"). Thus, "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." *Warner Bros. Inc. v. American Broadcasting Cos., Inc.*, 720 F.2d 231, 241 (2d Cir. 1983) ("*Warner Bros. II*") (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B] (1983)).

If it were otherwise, absent another defense, *Jurassic Park* might infringe upon a story involving shenanigans on a dinosaur island, the copyright holders of the character Superman could prevent others from creating a superhero who is super strong and flies around in a cape and primary-colored suit, and no one else could take a photograph of Michael Jordan leaping without Jacob Rentmeester's permission. *See Williams v. Crichton,* 84 F.3d 581 (2d Cir. 1996); *Warner Bros. II*, 720 F.2d 231; *Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018).

Thus, this Court found no substantial similarity as a matter of law between two photographs, one "obviously inspired" by the other, of Michael Jordan dunking a basketball in an unnatural ballet-esque leap pose. *Rentmeester*, 883 F.3d at 1116.



*Rentmeester's photo and accused photo*

Despite finding that Jordan's pose was "fanciful" and "highly original," this Court held that it was not protectable as such, and therefore the original photographer could not stop others from taking photographs of Jordan in a similar pose. *Id.* at 1121. Importantly, the court noted a lack of similarity between the protectable elements — the combination of the lighting, background, and overall aesthetic of the photographs. *Id.* at 1121-23. The respective creative choices of Rentmeester and Nike produced images that were "unmistakably different . . . in material details." *Id.* at 1122.

*Rentmeester* properly insisted on the requirement of substantial similarity of protectable expression, not merely any similarity: "To infringe, the defendant must also copy enough of the *plaintiff's expression* of those ideas or concepts to render the two works 'substantially similar.'" *Id.* at 1117 (emphasis added) (cleaned up). Regardless of copying in fact, "the plaintiff must still show copying of protected expression *that amounts to unlawful appropriation.*" *Rentmeester*, 883 F.3d at 1124

4

(emphasis added).

Crucially, the test is not satisfied merely by any "copying of protected expression"—the copying must be too much of plaintiff's original contribution. *Rentmeester* attempted to clear up past confusion—reflected in many cases cited by Sedlik and his *amici*—that came from using "copying" in two different senses ("copying in fact" and infringing copying). Unfortunately, as this case shows, it is still too easy for litigants to argue that all recognizable copying in fact is infringing copying by mis-citing Ninth Circuit law.

The standard that this Court—like every other court of appeals— has set forth is "substantial" similarity. What is required is not just *any* similarity in protectable expression, nor even *recognizable* similarity in protectable expression, but a similarity that substantially duplicates the aesthetic appeal of the protected elements of the original. *Warner Bros. II*, 720 F.2d at 240 (explaining that a defendant can prevail if either it copies only non-copyrightable elements *or* if there is no substantial similarity). That is, not all copying of protectable expression constitutes substantial similarity—otherwise, the test would ask a jury whether *any* protectable expression had been copied, rather than a "substantial" amount.

Another way to say it is that the "substantial" in "substantial similarity" is a meaningful adjective: not every similarity in protectable expression rises to the level

5

of infringement.[4] What is required is not any similarity in expression, nor even recognizable similarity in expression, but a similarity that substantially duplicates the aesthetic appeal of the protected elements of the original.  For example, in *Warner Bros. II v. American Broadcasting Cos.*,[5] the Second Circuit recognized that Ralph Hinkley's character in the TV show "The Greatest American Hero" was recognizably based on Superman: the show's premise was literally "what happens when you [the average person] become Superman."[6]

---

[4] Warner Bros. II, 720 F.2d at 240 (explaining that a defendant can prevail if either it copies only non-copyrightable elements or if there is no substantial similarity); *see also Freeman v. Deebs-Elkenaney*, --- F.Supp.3d ----, 2026 WL 733891, at *24 (S.D.N.Y. Mar. 16, 2026) ("It is precisely on the distinction between 'somewhat similar' and 'substantially similar' characters that Freeman's argument falters.").
[5] 654 F.2d 204, 209 (2d Cir. 1981) ("Warner Bros. I").
[6] Id. at 236.



*Superman and Ralph Hinkley*

Despite the deliberate copying, the two characters were not substantially similar, because the other features ABC introduced were combined with the copied features in a way that changed the overall aesthetic impression of the work. And this was true even though those copied features could still be separately identified in ABC's work by a list of shared characteristics. In subsequent decades, many other works have explored the superhero genre using characters with similar origin stories and powers to Superman, including Homelander in *The Boys*, *Astro City*'s Samaritan, Brandon in *Brightburn* (2019), Hyperion from *Squadron Supreme*, Goku in *Dragon Ball Z*, Apollo in *The Authority*, and many others. By mixing and matching characteristics, they create new characters who are distinct from Superman,

7

allowing exploration of what it is we find appealing or frightening, or both, about the concept of superpowers. They don't need to rely on fair use because their differences create distinct characters despite the overlaps.

Character traits and backstories are probably the best example of how copying some elements of an existing work can produce a new work that is not substantially similar to a source work. This is where "look and feel" as a test reflects a real insight: Individual creative elements may have a completely different expressive function depending on what else they are juxtaposed with. Ralph Hinkley shares many features with Superman, but is still not substantially similar to him because of all his other hapless traits that Superman does not share.

This inquiry into the substantiality of similarities is why courts rejecting infringement claims for lack of substantial similarity regularly point to the differences between two works: it's not just because the differences reflect added material, but because the differences reflect the fact that the works are creatively distinct.[7]

_____

[7] *E.g.*, *Culver Franchising System, Inc. v. Steak N Shake Inc.*, 119 U.S.P.Q.2d 1808 (N.D. Ill. 2016) (acknowledging similarities but explaining that the works "differ in certain significant respects" in rejecting substantial similarity); *Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (two half-human, half-vampire characters named Nicholas Gaunt, white males in their early twenties with similar builds, pale skin, dark hair, and a messy appearance, were somewhat similar, but not substantially similar, because their narrative similarities came from unprotectable

The substantial similarity requirement preserves subsequent creators' freedom to draw on the existing world. As such, it is "the main doctrinal safeguard against copyright becoming a drag on the creative innovation it was meant to promote."[8] In *Warner Bros. II*, as Bracha explains, "[t]he improper appropriation analysis required comparing the expressive content of the two works and discerning the material differences in their meaning, notwithstanding the technical similarities. This relatively simple analysis tracked well the underlying policy question."[9]

## B. Recognizable Similarity Is Not a Shortcut for Substantial Similarity.

If, contrary to the case law above, mere recognizability of copying is enough to create substantial similarity, then every time someone writes "Use the Force, Luke," then they are infringing *Star Wars*, because that phrase is expressive and recognizable. If the infringement test is only about whether copyrightable material has been copied, then a four-word quote will force courts to skip straight to fair use.

But infringement has always included a quantitative element, which means more than taking a nonzero amount of expression—the similarity must be "substantial" as well as expressive. *See, e.g., Nihon Keizai Shimbun, Inc. v. Comline*

---

ideas; their appearances were similar but distinguishable; and they interacted with other characters in different ways).

[8] Oren Bracha, Not De Minimis: (Improper) Appropriation in Copyright, 68 Am. U. L. Rev. 139, 180 (2018).

[9] Id. at 194.

*Business Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999) (requiring both qualitative and quantitative analysis to determine substantial similarity); *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1307 (11th Cir. 2008) (same); *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 552 (5th Cir. 2015) (substantial similarity asks "whether the defendants have misappropriated *substantial* elements of the plaintiff's work") (cleaned up) (emphasis in original); *Cohen v. U.S.*, 105 Fed. Cl. 733, 747 (2012) (rejecting claim based on copying one sentence of a book for want of substantial similarity). The correct standard is whether the defendant took too much protected expression, not whether the defendant took any protected expression at all. As another court perceptively explained:

> [T]he copying must be extensive enough to be "substantial." This is "substantial similarity" in a mixed law-fact evaluative sense. Thus, the test for determining whether there is "substantial similarity" in this sense involves not merely a ministerial task of measuring by a yardstick or word count, but a judgmental task of weighing the quantitative measurements along with other relevant factors and coming to an overall evaluation that applies a legal test for "unlawful appropriation" to the facts.

*Lotus Development Corp. v. Borland Intern., Inc.*, 788 F. Supp. 78, 84 (D. Mass. 1992). A jury is well positioned to decide substantiality in a case like this, where the contribution of protectable elements to the overall appearance of different works is hotly contested.

Especially when a visual work is made up of common elements and its

10

creativity comes from choosing specific details, e.g., a photograph's lighting, it is easy to skip from copying in fact to infringement because the accused work looks so much like the plaintiff's. But courts don't make that mistake with books or filmed narratives, where it's clear that two works based on the same unprotected facts or ideas will have similarities in other unprotectable elements, including aspects of how those elements are arranged (e.g., chronologically, with flashbacks, etc.). It should not be enough that, where two works' similarities come overwhelmingly from unprotectable aspects, a factfinder can see fragments of protectability in both works and find infringement. It can't be, for example, that if Michael Jordan had managed to execute his jeté with his legs at the exact same angle in both jumping images, Nike would have infringed, even though one could say that the initial decision to picture him at precisely that instant was Rentmeester's; the photo's protectability came only from the *combination* of decisions, not the choice of moment alone.

Whether this principle is called substantial similarity, "thin" copyright, or something else, the infringement test must not be reduced to copying in fact. If it were, then owners of the "thinnest" copyrights—those whose works should only be protected against, essentially, exact copying—would paradoxically have the strongest rights against small amounts of copying.

This means that even if the extrinsic test was satisfied here (which the jury plausibly found it was *not*), the result would still not inevitably be a finding of

infringement (subject to available defenses such as fair use), because skipping the next fact-intensive jury question wrongly removes "substantial" from substantial similarity.[10]

The district court correctly understood that, with each of the accused works at issue here, substantial similarity was a contested issue of material fact both with respect to the ordinary extrinsic test and the substantiality of the taking of protectable elements. A reasonable jury could have found that the elements common to the Sedlik photo and these works—a tattoo, a tracing, and an image where Sedlik's photo was blurred behind tracing paper—were based on what Davis looked like with his finger at his lips. Those similarities, the jury could reasonably have found, came from unprotectable facts captured by a protectable photo, not from the specific details of lighting, framing, and timing that produced the protectability of the photo as a whole.

Thus, whatever test this Court applies, it should not rely on the premise that the issue of extrinsic similarity should have been taken away from the jury—a question separate from what the test for "intrinsic" similarity, if any, should be, and to whom it should be committed. Nor should it ignore that the requisite similarity

---

[10] *See also Sedlik*, at 163 F.4th at 678 (Wardlaw, J., concurring) (worrying that "[a]n ordinary observer, untrained in both media, 'may fail to note similarities that, if analyzed and dissected, would be only too apparent,'" although the jury here was neither left to spontaneous detection nor given no guidance on the affordances of different media—the copying-in-fact was obvious and the jury heard extensive testimony about the photograph and the tattoo process).

12

must be "substantial"—fragmentary overlaps in protectable elements may not be substantial, as this Court has long recognized with respect to other media.

### C. Fair Use Is No Substitute for Proper Consideration of Substantial Similarity.

Sedlik and his amici's position would find infringement and thus require a fair use analysis for every recognizable quote, no matter how small, that can be characterized as expressive. This both strains fair use and encourages strike suits to suppress expression. Although *Amici* agree with the jury that defendant also engaged in fair use, many aspects of this case would be better resolved through application of the substantial similarity doctrine.

Deciding fair use requires a multifactor test, with attendant risks of factual error and overcomplication of doctrine. In fair use analysis, courts consider whether a use is "transformative" because it "adds something new . . . altering the first with new expression, meaning or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). In contrast, works that are not substantially similar do not have to be transformative.

Likewise, if a user did not create a substantially similar work, the degree of commerciality of her work has no effect on her legal status. And, absent substantial similarity, creators are perfectly free to compete with and even destroy the market for other works, including works on the same subject. *Matthew Bender & Co., Inc. v.*

13

*West Publ'g Co.*, 158 F.3d 693, 708 (2d Cir. 1998) (holding that market-supplanting effect is only relevant if infringement of protectable elements has already been established; market harm done by works that aren't substantially similar is "not cognizable under the Copyright Act"); *cf. Mattel, Inc.* v. *MGA Entm't, Inc.*, 616 F.3d 904 (9th Cir. 2010) (allowing competitor to do billions of dollars of damage to plaintiff with competing dolls, in the absence of substantial similarity).[11] *Rentmeester* is a good example of a case where a similar-in-unprotectable-ways photo would fare badly on factors one and four—both photos of Michael Jordan depicted him as a player of almost unearthly talent, and both would be fine illustrations for articles about him.

Resolving this type of case on substantial similarity grounds therefore provides greater certainty for later authors and facilitates lawful creativity inspired by or created with reference to other creative works. Where the defendant engaged in copying in fact, but did not copy substantial amounts of protectable expression, using fair use to resolve such cases encourages future plaintiffs to assert an expansive

---

[11] *See also Saturday Evening Post Co.* v. *Rumbleseat Press, Inc.*, 816 F.2d 1191, 1198-99 (7th Cir.1987) ("[A copyright] forbids copying the copyrighted work without the copyright holder's permission, but it does not forbid the making of close substitutes. So long as the second comer creates a work that is not substantially similar to the copyrighted features of the first work, there is no infringement."); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][1][b] (same; collecting cases).

claim in the hope that the first and especially the fourth fair use factors will weigh against the use despite the lack of substantial similarity in protectable expression. *Cf. Warner Bros. II*, 720 F.2d at 240.

Retaining substantiality and the extrinsic test as a real constraint on the scope of copyright furthers the ultimate constitutional purpose of copyright, "to promote science and the arts," *Campbell*, 510 U.S. at 579, as it clarifies to users that the scope of copyright is based on substantial similarity of creative expression, rather than requiring a fair use analysis in every case of copying in fact.

Resolving cases on traditional infringement analysis before engaging in the fair use inquiry may also lessen the burden on noninfringing defendants who cannot afford to mount a lengthy legal defense. *See* Oren Bracha & John M. Golden, *Redundancy and Anti-Redundancy in Copyright*, 51 Conn. L. Rev. 247, 279 (2019). Proving fair use can be expensive and time-consuming. Although sometimes transformativeness is evident given the nature of the defendant's use, showing that a use is transformative under factor one might require establishing facts about the purpose and meaning of the works. Similarly, proving that there is no market harm could require extensive discovery to unveil the extent of the claimant's development of the market and derivative markets. *See* Bracha & Golden, *supra*, at 268-70 (discussing the lengthy fair use battle in *Google LLC v. Oracle America, Inc.*, 593 U.S. 1 (2021). This sometimes difficult and costly process disproportionately

impacts smaller and less resourced parties. *Id*.; Bracha, *supra* at 195. This doctrinal

uncertainty and the disproportionate effects on less-resourced parties can lead to

aggressive copyright claims and a reciprocal chilling effect on creative expression.

*See* Joseph P. Liu, *Copyright and Breathing Space*, 30 Colum. J.L. & Arts 429, 433-

34 (2007) (discussing the overly cautious posture taken by parties who believe they

may be subject to copyright claims).

Artists should be free to use reference images of real subjects. This freedom

requires courts to be attentive to the difference between copying alone and copying

substantial amounts of protected expression.

D. The Derivative Works Right Does Not Change the Analysis.

Sedlik and his *amici* largely reject the cases cited above and conflate copying

in fact with substantial similarity. They argue that this rule is necessary, among other

things, to protect the derivative works right. This is wrong as a matter of black-letter

law. The derivative works right ensures that, *when there is substantial similarity of*

*protectable expression*, a change in medium—from book to movie, for example—

does not avoid infringement.

There is an unbroken consensus on this point, including in this Court. *See, e.g.*,

*Berkic v. Crichton*, 761 F.2d 1289, 1291 n.1 (9th Cir. 1985) ("[T]he plaintiff's

16

argument that his 'derivative work' copyright claim presents issues separable from his main copyright claim is frivolous. If the plaintiff cannot show a substantial similarity between the defendants' work and his own, he cannot prevail on a claim for alleged violations of his right to prepare derivative works."); *Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (derivative works right does not cover "any work based on a copyrighted work"; "a work is not derivative unless it has been substantially copied from the prior work").[12]

The book/movie example shows the error of Sedlik's logic: a movie based on a book is not visually similar to the book. It is substantially similar in narrative—the selection and sequencing of events, situations, and/or characters. Those elements are protectable parts of a book, beyond the literal words themselves, and narrative can be substantially similar across media. However, when a photo's creativity stems from specific features that are part of the photographic process—particular choice of angle, lighting/reflections, and cropping—then those specific features may not be substantially present when the same subject is portrayed in a different medium. Here, the jury could reasonably decide that they were not.

This rule is an important one, because it prevents plaintiffs in cases like

---

[12] *See also Peter Letterese*, 533 F.3d at 1297 n.8 (same in 11th Circuit); *Kohus v. Mariol*, 328 F.3d 848, 858 (6th Cir. 2003) (same); *Well–Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112, 117 (2d Cir. 2003) (same); *Atkins v. Fischer*, 331 F.3d 988, 993 (D.C. Cir. 2003) (same); *Dam Things from Denmark v. Russ Berrie & Co.*, 290 F.3d 548, 565 (3d Cir. 2002) (same); *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255, 267 (5th Cir. 1988) (same).

17

*Litchfield* from recasting a failed claim of substantial similarity into a derivative works claim even in the absence of similarity of protectable expression. Without the substantial similarity limitation, the derivative works right would encompass many of the sorts of claims this court rejected above, such as the claim that getting the idea of a superhero who can fly from Superman makes the defendant's superhero infringing despite lacking any protectable similarity.

II.     The District Court Was Within Its Discretion to Submit Extrinsic Similarity to the Jury.

The judges who encouraged this Court to grant rehearing understandably focused on the visual similarities between the Sedlik Photo and the Tattoo (though not on the Sketch or the obscured image in the videos). But, as one court put it:

> [T]he suggested type of side-by-side comparison is really not the right one to make. Rather the trick is to begin with the allegedly aggrieved work in one hand and nothing in the other hand and ask, "Is it copyrightable? And if so, in what respects? To what extent?" Those limiting questions define whether a comparison needs to be made at all and, if so, also define the universe for such a comparison."

*Sassafras Enterprises v. Roshco, Inc.*, 889 F. Supp. 343, 348 (N.D. Ill. 1995). The question for the jury here was whether the visual similarities here constituted copying of a substantial amount of the creative elements of the photo, or whether

18

the tattoo and the preparatory images instead reflected von D's own interpretation of the facts recorded by that photo: Davis's own features.

As noted above, the district court specifically found a triable issue of fact on whether Appellees copied protectable elements of the photo, or only unprotectable elements. Appellees' closing argument emphasized to the jury that Sedlik needed to prove *both* tests for every work allegedly infringed. Trial Transcript at 660, 663, *Sedlik v. Von Drachenberg*, No. 2:21-cv-01102-DSF-MRWx (C.D. Cal. Jan. 26, 2024) ("When you look at those, you will see that the total concept and feel is not similar [intrinsic]. But *more importantly*, once again, this combination of elements is not the same [extrinsic].") (emphasis added). The jury was instructed accordingly and must be presumed to have followed its instructions.[13]

Indeed, in response to Sedlik's motion for judgment of law and for a new trial, the district court, with its familiarity with the record, was compelled to "draw the reasonable inference that the jury found that it was the unprotected elements … that were copied." *Sedlik v. Von Drachenberg*, No. CV 21-1102 DSF (MRWX), 2024 WL 4327404, at *3 (C.D. Cal. May 3, 2024).

---

[13] Instruction 19 states in relevant part: "Substantial similarity is determined by an extrinsic and intrinsic test, and the plaintiff must satisfy both tests to meet his burden." Jury Instructions, *Sedlik v. Von Drachenberg*, No. 2:21-cv-01102-DSF-MRW (C.D. Cal. Jan. 26, 2024), ECF No. 219.

19

A. The Portrait Here Has Many Unprotectable Elements That May Freely Be Copied.

The fact that Miles Davis was an unprotectable-by-copyright human being is highly significant. While Sedlik's photo was undoubtedly copyrightable because of Sedlik's choices about how to take the picture, its copyright did not extend to Davis's own features, the primary focus of the photo. Thus, as the tattoo artist described in her testimony, a tracing, or a tattoo altering features of the photo such as lighting, shading, and background, could reasonably be found not substantially similar to the photo's protectable elements once the fact that the subject was uncopyrightable was taken into account. *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005) ("A copyright in a photograph derives from the photographer's original conception of his subject, not the subject itself.") (citation omitted); *Franklin Mint Corp. v. Nat'l Wildlife Art Exch., Inc.*, 575 F.2d 62, 65 (3d Cir. 1978) (artists have a "weak" copyright claim when the "reality of [their] subject matter" is not easily separable from their artistic expression of it); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2][b] (2019) (noting that appearance of objects in the public domain or as they occur in nature is not protected by copyright). Subsequent creators rarely have access to the people depicted in photos; they can lawfully use references rather than in-person inspection

20

to make their own creative works.[14]

Davis's pose alone, to the extent that it is a product of Sedlik's creative direction, is not protectable. The "shhh" pose, like Michael Jordan's jeté in *Rentmeester*, is hardly uncommon and is a scène à faire.[15] Judge Owens has explained that to protect human appearance "in isolation" would grant photographers "a broad copyright over photos of human movements, including facial expressions," working "a radical change in our intellectual property laws." *Rentmeester*, 883 F.3d at 1128 (Owens, J., concurring in part).

Sedlik does have a copyright in the product of the artistic choices he made. Depending on the content of a given photograph, these may include originality in "such artistic elements as the particular lighting, the resulting skin tone of the subject, and the camera angle." *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 116 (2d Cir. 1998). It is the selection and arrangement of these artistic choices that is protectable, "not any of the individual elements standing alone." *Rentmeester*, 883 F.3d at 1119. A subject's facial expression is not the same thing as the protectable combination of lighting, camera, and angle depicting that expression.

---

[14] *See* Jessica Silbey & Eva Subotnik, What the *Warhol* Court Got Wrong: Use as an Artist Reference and the Derivative Work Doctrine , 47 Columbia Journal of Law & the Arts 353, 381-393 (2024) (recounting long history of use of artists references as consistent with promoting "progress of science" and copyrighted works).

[15] See, e.g., The Silence, Joseph Ducreux, 1790, https://www.arthistoryproject.com/artists/joseph-ducreux/the-silence/.

21

Given the mix of protectable and unprotectable material in the photograph, the court was correct to allow the jury to evaluate the qualitative and quantitative significance of the copying here. Both parties submitted extensive testimony, including testimony from both artists about their creative processes, and the jury examined the works in suit, including the tattoo itself; it was better positioned to evaluate it than an appellate panel. *See* Drew M. Morris & Carter J. Alvey, *Knowledge and the Perceived Value of Paintings: The Role of Time, Presence, and the Contagion Effect on Art Evaluation*, 18 Psychol. of Aesthetics, Creativity, and the Arts 269, 272, 277 (2024) (finding that in-person evaluations of paintings differed from evaluations of digital images of paintings).

At trial, the jury heard testimony about, and was asked to consider, the aesthetic effects of differences in shading, lighting, hair lines, cropping, density of image, size and proportionality in the tattoo. E.g., Tr. Jan. 24, 2024, at 418-20, 424, 427, 431, 489, 491-92 (von D discussing her free-hand shading of "99 percent of the tattoo" (431), addition of texture and movement, changes to hairline, changes in highlights or reflections, changes in spatial composition, simplification, and changes in jawline); Tr. Jan. 25, 2024, at 517 (same). This evidence was well within the jury's competence to consider and evaluate. The "line drawing," the "messy progress" post, and the post showing Appellee at a light box show even less overlap that could be deemed expressive.

22

The Sedlik Photo — in which the subject is posed in a traditional manner for portraiture, with a black background — can claim, at most, a thin level of creativity in composition.[16] In taking the picture, Sedlik made a variety of creative decisions, including cropping of the image to include the head and shoulders, lighting, exposure, and angle. However, Davis's natural appearance—including the pose of holding a finger up to the lips—is not protectable by copyright. (Although faces have expressions, facial expressions alone are not "copyrightable expression"—otherwise the first director to get Hugh Grant to make a specific moue would be able to prevent him from doing so in a different movie, and Disney could bar Mark Hamill from posing as Luke Skywalker in photos with fans. Sedlik conflates the two different meanings of "expression" in claiming otherwise.)

The jury heard testimony about relevant differences in the accused works, including in hairline, background, cropping the image, and highlighting/shading within the image, all of which Kat von D explained at length at trial in terms of her own artistic choices and processes. The jury also had first-hand close-up access to the actual tattoo itself, allowing it to see the tattoo on the recipient's arm and compare it to the photo in evidence.

Given the evidence in suit, the district court judge properly left the extrinsic

---

[16] Substantial skill and effort was required to pose Davis against a black background. However, a black background is standard portrait fare, and skilled work is not itself expressive or protectable by copyright. *Feist*, 499 U.S. at 353, 364.

23

inquiry—and, to the extent it differs, the question of whether there was "substantial" similarity of protectable expression—to the jury. *Cf. Google.*, 593 U.S. at 24 ("subsidiary factual questions" such as "how much of the copyrighted work was copied" are for the jury in fair use determinations).

B. Rejecting Submission of Extrinsic Similarity to the Jury Would Contradict Decades of Case Law.

This Court has already, en banc, reiterated the importance of substantial similarity of protectable expression to the extrinsic test, which "compares the objective similarities of specific expressive elements in the two works. Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) (cleaned up).

In *Rentmeester, supra*, the court found the images were not substantially similar as a matter of law. But not all extrinsic similarity questions may be resolved as a matter of law in favor of one side or another: in a given dispute, reasonable minds may differ about whether expression was copied and whether it was substantial. The trial court here properly determined there was a triable issue of fact

24

on all elements of the infringement claim, including extrinsic similarity, for the Tattoo, the Sketch and the blurred social media images.[17]

A survey of other cases demonstrates that courts regularly and correctly refuse to find substantial similarity in protectable expression where a work copies primarily unprotectable elements. For example, the First Circuit affirmed a finding of no substantial similarity as a matter of law between an "iconic" photograph and an image that sought to recreate it. *Harney v. Sony Pictures Television, Inc.*, 704 F.3d 173, 177 (1st Cir. 2013).

 

*Defendant's Photo. Id.* at 189.                    *Plaintiff's Photo. Id.*

---

[17] The Sketch and the blurred social media images less plausibly replicate the protectable elements of a portrait photograph, but the district court understandably chose to submit them all to the jury.

Both images "share several important features": pose, angle, and framing *Id.* at 177. But almost none of these overlapping features are protectable. Those that were, such as the placement of the father/daughter duo in the center of the photograph, only had "minimal originality and [provided] an insufficient basis, without more, to find substantial similarity." *Id.* at 187.

*Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw. 2006), involved transferring an image of a hula dancer from photograph to abstracted stained glass. The court found there was no substantial similarity of protectable expression despite the strong visual similarity. *Id.* at 1206-08.

 

*Plaintiff's Photograph*        *Defendant's Stained-Glass Window*

Permanent Injunction and Order of Dismissal with Prejudice at EX. B-C, *Reece v.*

26

*Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197 (D. Haw. 2006) (No. 06-0049), ECF No. 96.

The *Reece* court based its decision on, among other things, the small difference in the images' *protectable* elements — the dancers' angles, *id.* at 1207; the differing backgrounds, *id.*; and the lighting effects that were "unique" to the photo, which created a contrast between dark and light and resulted in sepia shading "absent" from the stained glass, *id.* at 1208. Ultimately, the "absence of detail" in the stained glass, the differing backgrounds, differing hairstyles, and "marked[] contrast" between the sepia photo and vibrant colors of the stained glass precluded substantial similarity as a matter of law. *Id.*

In *Dyer v. Napier,* No. CIV 04-0408-PHX-SMM, 2006 WL 2730747 (D. Ariz. Sept. 25, 2006), the court held that no reasonable jury could find substantial similarity between a photograph and a more stylized sculpture concededly based on that photo. This was so even though the plaintiff posed the subject and chose the time of day, cameras, lenses, angle, and film to use. *Id.* at *1- 2.

27

 

*Kent Dyer, Mother Mountain Lion with Baby in Mouth     photo of Jason Napier, Precious Cargo*

Statement of Facts Supp. Def.'s Mot. summ. J., Ex. 8-9, *Dyer v. Napier,* No. CIV 04-0408-PHX-SMM, 2006 WL 2730747 (D. Ariz. Sept. 25, 2006). As the court explained, the scope of copyright in realistic depictions of living beings is narrow. *Id.* at *8. The plaintiff's undoubted skill with animal wrangling, and substantial efforts to set up the shot, did not justify extending control over the photograph to control over the pose depicted therein.

In light of this (and other) case law finding lack of substantial similarity as a matter of law, the district court's treatment of extrinsic similarity was fully justified: While there are plainly overlapping visual elements between the Sedlik Photo and the accused works, these elements are largely derived from Miles Davis's physical appearance and should not be considered in the substantial similarity analysis.

*Mannion v. Coors Brewing Co.*, 377 F. Supp. 2d 444, 462 (S.D.N.Y. 2005).

The jury could reasonably find, after considering the facts and evidence, including direct testimony from the artists and first-hand inspection of the Tattoo, that most or all of the similarity in the accused works comes from Davis's uncopyrightable appearance. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991) (recognizing that copyright does not protect labor, but rather expression); *cf. Dyer*, 2006 WL 2730747, at *9 (rejecting the argument that the work required to get subjects into the "ideal pose" was protectable).

For example, a shifting side view in a video of a tracing-paper-covered photo on a lightbox obscures the protectable details of a photo, as shown in defendant's YouTube video of the design process:


[18]

---

[18] Doc. 50-5, Mar. 29, 2022, at 10 (Declaration of J. Sedlik, Exh. A).

29

The sketch itself makes a strikingly different visual impression, as it lacks the

lighting and other key expressive aspects of the photo:



And the use of the human body as a medium also changes the visual

---

[19] Id. at 12.

impression of a tattoo, which would have been more visible to the jury in the video than in a static image:



[20]

These kinds of differences, described at length at trial as part of the many stages of making tattoo art, distinguish works that are based on the same subject. Indeed, Judge Johnstone's panel concurrence acknowledged that the Tattoo

> "added shading, highlights, and texture to several parts of Miles Davis's face";
> altered waves and highlights in his hair to "creat[e] a kind of 'visual noise'
> that flies all around the tattoo and gives the sense of movement," as well as

---

[20] Doc. 237-1, at 56.

leaving room for additional tattoos; and left out certain details of the photograph, like Sedlik's reflection in Davis's eyes, part of Davis's wrist and his clothing, and the photograph's black background.

*Sedlik*, 163 F.4th at 679 (Johnstone, J., concurring). That is, von D altered the elements that the concurrence identified as creative, other than Davis's physical appearance. This was certainly enough to avoid judgment as a matter of law and create a jury issue on substantial similarity on the extrinsic test.

## CONCLUSION

*Substantial* similarity of *protectable* expression is the proper test for infringement, not recognizable copying of any expression. No rule this Court adopts should neglect those key terms, either for this specific case or for the future.

Dated: July 14, 2026

Respectfully submitted,
Rebecca Tushnet

/s/ Rebecca Tushnet
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu
Counsel for *Amici Curiae*

32

# APPENDIX[21]

Mark Bartholomew, Professor of Law, University at Buffalo School of Law, The State University of New York

James Grimmelmann, Tessler Family Professor of Digital and Information Law, Cornell Law School and Cornell Tech

Mark A. Lemley, William H. Neukom Professor of Law, Stanford Law School

Amanda Reid, University of North Carolina at Chapel Hill, Associate Professor at Hussman School of Journalism and Media

Betsy Rosenblatt, Tom J.E. and Bette Lou Walker Professor of Law, Case Western Reserve Law School

Jessica Silbey, Professor and Honorable Frank H. Kenison Distinguished Scholar in Law, Boston University School of Law.

---

[21] Institutional affiliations are provided for purposes of identification only.

## <u>CERTIFICATE OF COMPLIANCE</u>

**9th Cir. Case Number 24-3367**

I am the attorney or self-represented party.

**This brief contains 6463 words,** including no words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief. [ ] complies with the length limit designated by court order dated

_____

. [ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated: July 14, 2026

/s/ Rebecca Tushnet

34

Rebecca Tushnet
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(703) 593-6759
rtushnet@law.harvard.edu
Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief of *Amici Curiae* in Support of Appellees with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 14, 2026. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECC system.

/s/ Rebecca Tushnet
    Rebecca Tushnet
    Harvard Law School
    1575 Massachusetts Ave.
    Cambridge, MA 02138
    (703) 593-6759
    rtushnet@law.harvard.edu
Counsel for *Amici Curiae*