**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| JEFFREY B. SEDLIK,<br>*Appellant*,<br>v.<br>KATHERINE VON DRACHENBERG, et al.,<br>*Appellee*. | Appeal No. 24-3367 |

## ***AMICI* TATTOO ARTISTS' MOTION FOR CLARIFICATION AND, IN THE ALTERNATIVE, FOR LEAVE TO RE-FILE *AMICUS* BRIEF**

*Amici* Ross C. Berg, Jonny Gomez, and Maxime Plesciabuchi[1] are professional tattoo artists who submitted their Tattoo Artists' *Amicus* Brief in support of Petitioner Jeffrey Sedlik, and reversal, during initial consideration of this appeal on the merits. 9th Cir. Dkt. 22.1.

This Tattoo Artists' *Amicus* Brief discussed numerous topics relevant to the disposition of this appeal.

---

[1] *Amici* re-certify as follows:

(i) No party's counsel authored their *amicus* brief in whole or in part.

(ii) No party or party's counsel contributed money intended to fund the preparing or submitting their *amicus* brief.

(iii) No person – other than the *amici* or their counsel – contributed money intended to fund preparing or submitting the *amicus* brief.

These topics included, *inter alia*, the importance of copyright markets and copyright licensing to tattoo artists and the pervasive harm and disruption that Appellee's litigation positions pose to tattoo artists, including harm to tattoo artists' economic, professional, and dignitary interests.

*Amici* Tattoo Artists have much appreciated the opportunity to present their views to this Court and believe their views were helpful to the Panel that initially heard this appeal. See Panel Op., 9th Cir. Dkt. 93.1, at 23, 34 (JOHNSTONE, J., joined by WARDLAW, J, concurring) (citing Tattoo Artists' *Amicus* Brief).

*Amici* Tattoo Artists continue to be interested in the outcome of this appeal and continue to believe that their submission would again prove to be helpful and relevant to the Court, now rehearing the case En Banc. To that end, *amici* respectfully request clarification that their Tattoo Artists' *Amicus* Brief, properly and timely submitted during initial consideration of this appeal, is still part of the appellate record and presently submitted before the En Banc Court. They seek clarification and assurance that no further action on their part is necessary. In the alternative, and if re-submission is required, *Amici* Tattoo Artists ask the Court to construe this submission as a motion for leave to re-file their Tattoo Artists' *Amicus* Brief before the En Banc Court.

*****

This Court appears to grant clarification of its rules and orders when warranted and upon request. See, e.g., Powers v. McDonough, 2025 WL 2948626, at *1 (9th Cir. June 30, 2025) (order) (stating "motion for clarification (Dkt No. 68) is GRANTED").

To see why clarification is warranted here requires some discussion of the evolution of *amicus* practice.

Prior to the adoption of the Federal Rules of Appellate Procedure, the Ninth Circuit regulated the submission of *amicus* briefs and other matters of *amicus* practice via its own rules. See Notes of the Advisory on Rules to Rule 29 (1967) ("Only five circuits presently regulate the filing of the brief of an amicus curiae. See D.C. Cir. Rule 18(j); 1st Cir. Rule 23(10); 6th Cir. Rule 17(4); 9th Cir. Rule 18(9); 10th Cir. Rule 20.").

Yet, when first adopted, the Federal Rules of Appellate Procedure did not address the procedure for *amicus* briefs related to rehearing. The rule pertinent to the submission of *amicus* briefs, Rule 29, only initially addressed *amicus* briefs submitted during initial consideration on an appeal on the merits but did not address rehearing.

Some Circuits interpreted Rule 29's silence as to *amicus* briefs submitted during rehearing to indicate that *amicus* briefs submitted after initial consideration of an appeal were disfavored.

For example, the Fourth Circuit opined that waiting until after initial consideration to submit an *amicus* brief was a "disfavored litigation tactic." See, e.g., LaRue v. DeWolff, Boberg & Assocs., Inc., 458 F.3d 359, 360-361 (4th Cir. 2006) ("While a court is not precluded from granting leave to file an amicus brief in other circumstances, waiting until a petition for rehearing has been filed is a disfavored litigation tactic and fails to serve the litigants' interest in having all views considered thoroughly at the initial briefing and argument stage."); see also Fry v. Exelon Corp. Cash Balance Pension Plan, 576 F.3d 723, 724-725 (7th Cir. 2009) (EASTERBROOK, J., in chambers) (Rule 29 authorized submission only during initial consideration on the merits, such that leave was required for *amicus* briefs filed in support of rehearing and leave would be permitted only if the *amicus* filed the same day of the petition).

In 2016, Rule 29 was amended to address the procedure for filing *amicus* briefs submitted in connection with *seeking* rehearing. See, e.g., Fed. R. App. P. 29(b) ("**During Consideration of Whether to Grant Rehearing**."); Committee Notes on Rules to Rule 29 – 2016 Amendment ("Existing Rule 29 is renumbered Rule 29(a), and language is added to that subdivision (a) to state that its provisions apply to amicus filings during the court's initial consideration of a case on the merits. […] New subdivision (b) is added to address amicus filings in connection with a petition for panel rehearing or rehearing en banc.").

Yet, gaps in Rule 29's *amicus* procedure remain even after amendment because Rule 29 still does not address the correct procedure for *amicus* briefs *after* rehearing has been granted by the Court, whether En Banc or Panel. More pertinent here, Rule 29 does not address whether an *amicus* brief submitted as part of the initial consideration on the merits either (A) remains part of the appellate record and is still before by the En Banc Court upon rehearing or (B) must be resubmitted to be before the En Banc Court.

Ninth Circuit Rule 29-2 addresses many of the questions related to *amicus* briefs, both in seeking rehearing and after rehearing has been granted. However, Ninth Circuit Rule 29-2 does not appear to address the present issue, *i.e.*, whether a brief submitted during initial consideration must be in some fashion resubmitted when a case is reheard En Banc.

The Ninth Circuit Advisory Committee Notes to Rule 29-2 instruct that *amicus* briefs filed when *seeking* rehearing should not be re-filed. Circuit Advisory Committee Note to Rule 29-2 ("Amicus briefs filed to support or oppose a rehearing petition should not be re-filed if rehearing is granted."). Yet, neither Ninth Circuit Rule 29-2 nor the Circuit Advisory Committee Note to Rule 29-2 appear to address what happens to an *amicus* brief, which was filed during initial consideration, after rehearing is granted.

Notably, Appellee took the position in her response to the petition for rehearing that the lack of re-filing and re-submission of an *amicus* brief should be taken as an indication that there is no longer such support. Petition Response, 9th Cir. Dkt. 103.1, at 7 (asserting "that no industry groups or copyright organizations found this issue important enough to file amicus briefs").

Her view is incorrect; the position of *Amici* Tattoo Artists has not changed. Yet, rather, it is the view of *Amici* Tattoo Artists, via counsel, that an *amicus* brief submitted during initial consideration remains part of the appellate record upon rehearing, just as merits briefing does. It is their view that they remain *amici* even though rehearing was granted. On this view, unless an *amicus* brief is stricken due to a conflict, an *amicus* brief properly submitted during initial consideration of an appeal is also properly before the En Banc Court.

No re-filing necessary.

Yet, because the governing rules do not clarify this aspect of practice, *Amici* Tattoo Artists respectfully request clarification. They think that requiring re-submission is unnecessary, is potentially burdensome to the Court, and would create a procedural trap for the unwary. Moreover, in the rare instance where an *amicus* changes their mind or position after submitting a brief, they could simply seek leave to withdraw or amend their brief. For example, governmental *amici* will sometimes do so when there is a change in administrations.

For these reasons, *Amici* Tattoo Artists wish to affirmatively register that they continue to hold the positions and views they presented alongside initial consideration on the merits and respectfully seek clarification that no re-filing is necessary such that their Tattoo Artists' *Amicus* Brief is properly before the En Banc Court.

In the alternative, if re-filing is somehow necessary in the instant situation, the Court is requested to so clarify for the benefit of all *amicus* counsel going forward and, further, to construe this motion as a motion for leave to file, and to grant leave to re-submit.

*****

Insofar as this Motion is also construed as a motion for leave, leave should be granted.

The Tattoo Artists' *Amicus* Brief is already on the docket submitted in favor of Appellant Jeffrey Sedlik by the *Amici* Tattoo Artists. 9th Cir. Dkt. 22.1. The proper *amicus* disclosures required by Rule 29(a)(4)(E)(i)-(iii) are made in both the brief and are again made in the first footnote of this Motion. The brief was timely submitted.

*Amici* Tattoo Artists are professional tattoo artists and, given that this case involves infringement by a prominent tattoo artist herself, they have a significant and meaningful interest in the case.

Their interests are described in some detail in their brief. 9th Cir. Dkt. 22.1, at 4-7. In short, *Amici* Tattoo Artists have created and inked thousands of tattoos. E.g., 9th Cir. Dkt. 22.1, at 14 ("[T]he *amici* have collectively created thousands of tattoos in their careers, and they have reviewed and evaluated countless more."). Therefore, they can explain that what happened here is deeply contrary to industry practice and that Appellee would have known that what she was doing was wrong. See 9th Cir. Dkt. 22.1, at 16 ("There are photorealist tattooers who make deliberate artistic changes to the underlying photo when they apply it to their subject. They might add different coloring, additional features, or other elements that give the work a new expression, meaning or message. Others will be content to leave things as they are — a knock-off unchanged except for its underlying medium. Kat Von D fell squarely into the latter category.").

*Amici* Tattoo Artists further respectfully submit that their brief is relevant. Therein, they give perspective on topics directly relevant to this appeal, including the tattoo industry, the methods of tattoo artists like themselves, tattoo industry norms, tattoo-industry licensing practices, and the downstream policy implications at issue. E.g., 9th Cir. Dkt. 22.1, at 22 ("The doctrine that inevitably arises from this decision [below] is this: Any artist can take someone else's work, replicate it as identically as humanly possible on the flesh of another subject, distribute it to millions of eager followers on social media, and still face no consequences.").

*Amici* Tattoo Artists respectfully submit that their brief is helpful and desirable. It was referenced by the Panel Concurrence. See Panel Op., 9th Cir. Dkt. 93.1, at 23, 34 (JOHNSTONE, J., joined by WARDLAW, J, concurring). Their observation and insights as professional tattoo artists are more fully laid out in the brief and offer helpful perspective.

Moreover, they submit that their contributions are unique, not duplicative. Not all lawyers and judges are tattoo artists. Not even all have tattoos. Accordingly, those deciding this appeal may not know that what Appellee did here is sharply against standard industry practices, harms the rights and interests of tattoo artists writ large, and disrupts the licensing markets that exist to permit tattoo artists to collaborate, rather than litigate. E.g., 9th Cir. Dkt. 22.1, at 9 ("Modern-day tattooers have grown up in a world in which licensed work is readily available in the form of published catalogues, flash art, and other widespread resources and publications. And the internet and social media make it even easier to identify new sources for tattoo inspiration and to reach out and obtain permission—in some cases, with the payment of a token license—before using someone else's work. A growing number of tattooers are making use of these resources to do just that. But the decision below threatens that evolution in its tracks.").

Simply put: the "*decision below harms everyone in the tattoo industry*." Id. at 23.

What Appellee did threatens both the reliance interests of tattoo artists upon the law and the legitimacy of their art form. And, *Amici* Tattoo Artists are deeply concerned that Appellee's kind of behavior introduces antagonism into the artistic community and harms tattoo artists in their ability to collaborate and build working relationships with other artists like photographers. E.g., 9th Cir. Dkt. 22.1 at 10 ("Tattoo artists and photographers need each other. They share a creative ecosystem and they build off of the works of each other. Neither can flourish if the other is impoverished.").

Thus, although Appellee would naturally wish to preserve her deeply flawed victory below in order to serve her own interests, the ultimate result of the decision below is harm to *both* tattoo artists and photographers – indeed, artists of all types as well as the public that benefits from them. Id. at 25 ("The decision is not merely a loss for creators. It is also a lost opportunity for anyone who interacts with the visual arts.").

*Amici* hope to share their important perspective, to inform the Court En Banc, and to suggest guidance toward a balanced copyright law that protects the interests of tattoo artists, that protects and augments a thriving market for tattoos, and that supports the public interest.

*****

For the above reasons, *Amici* Tattoo Artists respectfully request clarification that their Tattoo Artists' *Amicus* Brief, submitted during initial consideration on the merits, remains part of the appellate record and is properly before the En Banc Court, such that no re-filing or re-submission is required. In the alternative, if re-submission is required, *Amici* Tattoo Artists respectfully move for leave to re-submit.

Date: August 15, 2026

Respectfully submitted,

*/s/ Ryan Hamilton*
Ryan Hamilton
HAMILTON LAW LLC
5125 South Durango, Suite C
Las Vegas, Nevada 89113
(702) 818-1818
Ryan@HamLegal.com

*Attorney for Amici*

## CERTIFICATE OF COMPLIANCE

This filing contains **2,368** words.

This filing was prepared in Microsoft Word using Times New Roman 14-point font.

Date: August 15, 2026 Respectfully submitted,

*/s/ Ryan Hamilton*
Ryan Hamilton

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using appellate CM/ECF.

Date: August 15, 2026 Respectfully submitted,

*/s/ Ryan Hamilton*
Ryan Hamilton